or information which Bombardier, Inc., provides to the Amtrak OIG in response to the subpoenas, both material marked confidential or proprietary as well as that which is not designated as such. In connection with any disclosure to the entities identified in this paragraph, the OIG will make them aware of the terms of the Confidentiality Agreement.

8.  This Agreement is not in derogation of any rights, obligations or responsibilities which the Amtrak OIG has under the Inspector General's Act, including the right to seek information in connection with the audit or subpoena and right or obligation to provide information to the United States Department of Justice and Congress.

9.  The exclusive jurisdiction for the enforcement of this confidentiality agreement shall lie in the Federal Court for the District of Columbia.

National Railroad Passenger Corporation      Bombardier Corporation
Office of Inspector General

By: _____            By: _____

Title: _____         Title: _____

Dated: _____                 Dated: _____



Pillsbury
Winthrop
Shaw
Pittman...

WINSTON & STRAWN LLP

**Confidential Investigative Communication**
**Disclosure Restricted to Head of Designated**
**Federal Entity Pursuant to 5 U.S.C. App. 3 § 8G(d)**

June 20, 2005

**BY FAX**

Colin C. Carriere, Esq.
Counsel to the Inspector General
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E.
Suite 3E-400
Washington, D.C. 20002

Re:   OIG Subpoena to NeCMSC (No. 05-05)

Dear Mr. Carriere:

As you know, the undersigned represent the separate interests of Alstom Transportation ("Alstom") and Bombardier Inc. ("Bombardier") in the Northeast Corridor Maintenance Services Company ("NeCMSC"). During our June 8, 2005 meeting with you, David Sadoff and Special Agent Renee Jackson-Dixon, you asked that we write a letter identifying those portions of the subpoena served on NeCMSC on May 10, 2005 (the "Subpoena") that we find to be ambiguous, overbroad or otherwise objectionable. You also asked that we propose search terms to be used to locate potentially responsive information in NeCMSC's databases. The information you asked for is set forth below.

**Cover Letter Requests**

The OIG's May 4, 2005 letter enclosing the subpoena contains certain requests to which we respond as follows:

300179737v5

EXHIBIT
15

June 20, 2005
Page 2

1.  Defective Brake Parts

You ask for voluntary production of "all Acela brake parts which have been returned to you as having cracks, deficiencies or deformities." We believe that the issue of access to, and ultimately custody of, all defective brake parts is best resolved by the FRA and those responsible for Amtrak's high-speed program. For example, the transfer to OIG of over a thousand cracked brake discs, many of which remain attached to axels, would completely disrupt the agreed plan to return Acela trainsets to service. In any event, as written, this request would call for components that have nothing to do with the subject of your investigation. If OIG wishes to inspect on site a particular cracked friction brake disc from an Acela trailer car, we are willing to make arrangements provided that any such inspection does not interfere with the timely return of the Acela to full service.

2.  Delivery of Records

As requested, we will respond to all proper document requests by delivering responsive, non-privileged materials to your custody. Inasmuch as the first production will occur no later than June 24, 2005, please advise us to whom those materials should be delivered.

**General Objections**

The following objections are incorporated into each of the responses set forth below:

1.  NeCMSC objects to the Subpoena insofar as it calls for the production of documents subject to the attorney-client privilege, the work product immunity doctrine, the joint or common defense privilege, or other privileges whether based upon statute or common law. In the event any such document is produced by NeCMSC, its production is inadvertent and does not constitute a waiver of any privilege or immunity.

2.  NeCMSC objects to the Subpoena insofar as it seeks documents not in NeCMSC's possession, custody, or control.

3.  The Subpoena itself requests that responsive "materials . . . be accompanied by an index identifying the item(s) of the subpoena to which the documents are responsive." For the reasons stated at our meeting on June 8, 2005, we object to this request. NeCMSC reserves the right to produce responsive records by any method

300179737v5

June 20, 2005
Page 3

authorized under FRCP 34, and in accordance with your own Instruction No. 7. Indeed, because the Subpoena, in any event, will require the production of thousands of records, any attempt to comply with this request would be prohibitively expensive and would delay your investigation indefinitely.

4.  NeCMSC objects to any document request that does not limit the time period in which otherwise responsive documents were created. Accordingly, NeCMSC will only produce responsive, non-privileged documents created in the period January 1, 2000 through May 10, 2005.

5.  Even as so limited by this letter, the costs of complying with the Subpoena will be prohibitive. NeCMSC therefore reserves the right to demand that OIG pay for all associated costs. *E.g., United States v. Friedman,* 532 F.2d 928, 936-38 (3d Cir. 1976); *United States v. Davey,* 426 F.2d 842, 845 (2d Cir. 1970).

### Reservation of Rights

1.  The fact that NeCMSC is willing to produce any particular document or provide responsive information does not constitute an admission that the request is proper, that the information it seeks is within the statutory of the Office of Inspector General ("OIG") as reasonably relevant to the present inquiry or that requests for similar information will be treated in a similar fashion.

2.  NeCMSC's agreement to produce documents in response to any specific request in the Subpoena is made without waiving, and NeCMSC expressly reserves, any and all rights and objections to the disclosure of such documents or the information contained therein in response to a Freedom of Information Act ("FOIA") request.

3.  NeCMSC reserves the right, in its discretion, to redact information from otherwise responsive documents prior to production that is:

    (a)  protected under any exemption to FOIA, 5 U.S.C. 552(b), including, but not limited to, commercial or financial information that may be protected from disclosure under Exemption 4 of the FOIA;

    (b)  non-responsive;

300179737v5

June 20, 2005
Page 4

    (c)    protected by the work product doctrine, the attorney-client privilege or any other applicable privilege or protection, including that for trial preparation materials; or

    (d)    otherwise non-producible.

4.    By undertaking to produce documents in response to any specific request, NeCMSC is not representing that such documents exist.

5.    To the extent practicable, documents will be produced as they were maintained in the regular course of NeCMSC's business.

6.    NeCMSC reserves the right to amend and supplement its Answers, Responses and Objections to the Subpoena, and to produce additional documents, as it obtains further information through investigation and discovery.

**Instructions (Attachment "A")**

Instruction No. 1

NeCMSC objects to Instruction No. 1 as vague, overbroad and unduly burdensome. Without waiving the foregoing objection, NeCMSC is willing to search electronically stored information that is kept in the ordinary course of NeCMSC's business in accessible format (*i.e.*, on servers and the hard drives of the personal computers of those employees who were substantively involved in the Acela brake issue that is the subject of the Subpoena), using agreed-upon search terms[1], for Documents and Communications (as those terms are defined in the Subpoena) responsive to the Subpoena. NeCMSC will produce such responsive Documents and Communications in PDF format on compact discs or DVDs.

---

[1] NeCMSC proposes to use the following text search terms (both in English and French): brake, disc, disk, web, spoke, crack, fissure, hairline, hair line, Knorr, KB, Wabco, Wabtec, Faively, and ORX. Please let us know if you do not agree with these terms, or if you would like to add other terms. This search will be conducted only once. Therefore, it is important that OIG provide any additional search terms no later than June 27, 2005.

300179737v5

June 20, 2005
Page 5

Instructions Nos. 2 and 7

For the reasons stated above, NeCMSC respectfully declines your request that "[f]or each document produced, identify the document request(s) to which it is responsive." In addition, Instruction No. 2 conflicts with Instruction No. 7. NeCMSC agrees to comply with Instruction No. 7.

Instruction No. 4

In this letter, NeCMSC sets forth those aspects of the Subpoena that are believed to be vague or ambiguous.

Instruction No. 5

NeCMSC objects to the production of original documents to the extent such a production would duplicate the production of identical copies, violate existing contractual or regulatory requirements or disrupt NeCMSC's business. Originals will be preserved.

Instruction No. 6

NeCMSC objects to Instruction No. 6 as unduly burdensome but will produce responsive, non-privileged materials in the same order in which they have been kept in the usual course of NeCMSC's business.

Instruction No. 9

NeCMSC will comply with Instruction No. 9 to the extent the requested information can be obtained without unreasonable effort or cost.

Instruction No. 10

NeCMSC objects to instruction No. 10 because it would create an unlimited ongoing obligation to supply records to the Office of Inspector General. Accordingly, as noted above, NeCMSC objects to the production of records created after May 10, 2005.

**Requested Documents (Attachment "A")**

1. NeCMSC objects to Request No. 1 as overbroad, vague and ambiguous. NeCMSC will produce responsive documents to the extent they relate to friction brakes

300179737v5

June 20, 2005
Page 6

on Acela trailer cars. In addition, NeCMSC demands confidential treatment for commercially sensitive material, including subcontract pricing information.

2.    NeCMSC objects to Request No. 2 as overbroad to the extent it calls for manuals that do not relate to the friction brakes on Acela trailer cars. Because the phrase "operation and technical service manuals" is vague, NeCMSC will limit its production to maintenance manuals and service bulletins.

3.    NeCMSC will produce the documents sought in Request No. 3 to the extent they exist.

4.    NeCMSC objects to Request No. 4 as overbroad to the extent it seeks documents other than responsive documents relating to the friction brakes on the Acela trailer cars. NeCMSC also objects to the phrase "engineering reports" as vague and ambiguous but will produce any failure analysis regarding cracks discovered in the friction brakes of the Acela trailer cars.

5.    NeCMSC objects to Request No. 5 as overbroad to the extent it calls for documents other than responsive documents relating to the friction brakes on Acela trailer cars.

6.    NeCMSC objects to Request No. 6 as overbroad to the extent it calls for documents other than service bulletins and technical bulletins relating to the friction brakes on the Acela trailer cars.

7.    NeCMSC objects to Request No. 7 as overbroad to the extent it calls for documents other than responsive documents relating to the friction brakes on the Acela trailer cars. We also object to the phrase "identification of quality control pertaining to braking discrepancies, malfunctions and/or defects" as vague and ambiguous. NeCMSC, therefore, will limit its production of responsive documents, if any, to those prepared in the course of inspecting and maintaining the friction brakes on the Acela trailer cars.

8.    NeCMSC objects to Request No. 8 as overbroad to the extent it calls for documents other than responsive documents relating to the friction brakes on the Acela trailer cars.

9.    NeCMSC objects to Request No. 9 as overbroad to the extent that it calls for documents other than responsive documents relating to the friction brakes on the Acela trailer cars. We also object to the demand that "[i]n the event that the reports/logs

300179737v5

June 20, 2005
Page 7

do not clearly identify the parties in attendance, please provide pertinent identifying information, including name, telephone number, etc.", as an interrogatory that is beyond the OIG's statutory authority under 5 U.S.C. App. 3, Sec. 6(a)(4).

10. NeCMSC objects to Request No. 10 as overbroad, vague and ambiguous to the extent it calls for documents other than Quality Assurance conformity or non-conformity reports regarding friction brakes on the Acela trailer cars.

11. NeCMSC objects to Request No. 11 as overbroad, vague and ambiguous to the extent it calls for documents other than those that describe or discuss the process of manufacturing the friction brakes for the Acela trailer cars.

12. NeCMSC objects to Request No. 12 as overbroad to the extent it calls for documents other than those prepared by NeCMSC relating to inspection and testing manuals and procedures for the friction brakes on the Acela trailer cars.

13. NeCMSC objects to Request No. 13 as overbroad to the extent it calls for documents other than those responsive documents relating to the friction brakes on the Acela trailer cars.

### Production Timetable

As we discussed at our meetings and in Mr. Broas' telephone discussion with Mr. Sadoff, Bombardier and Alstom, as equal owners of NeCMSC, intend to commence production of NeCMSC documents during the week of June 20, 2005. In accordance with your request to review certain categories of documents on a priority basis, NeCMSC will first produce the following categories of documents:

1. Contracts (Request No. 1)

2. Daily Maintenance Records

3. Corrective Work Orders

300179737v5

June 20, 2005
Page 8

      Production of these three categories of records will begin this week and will be completed by June 30, 2005. Please feel free to call if you wish to discuss any part of this letter or any other matters.

Very truly yours,

Philip Le B. Douglas
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036-4039
(212) 858-1704

Timothy M. Broas
Winston & Strawn LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
(202) 282-5750

300179737v5



**Pillsbury**
**Winthrop**
**Shaw**
**Pittman** LLP

1540 Broadway
New York, NY 10036-4039

Tel 212.858.1000
Fax 212.858.1500
www.pillsburylaw.com

June 20, 2005

Eric Fishman
Phone: 212.858.1704
Eric.fishman@pillsburylaw.com

<u>Via Federal Express</u>

Colin C. Carriere, Esq.
Counsel to the Inspector General
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E.
Suite 3E-400
Washington, D.C. 20002

Re:  Subpoena Issued by the Office of Inspector General to Bombardier Inc., dated May 4, 2005, No. 05-05 (the "Subpoena")

Dear Mr. Carriere:

This firm represents Bombardier Inc. in connection with the Subpoena.

Enclosed please find a CD containing scanned copies of certain contracts responsive to the Subpoena, bates stamped BBD0000001 through BBD0000949. We have redacted certain commercially sensitive pricing information contained in the contracts.

Sincerely,

Eric Fishman

Enclosure

cc:   Marc-Andre Raymond (w/o attachments)

EXHIBIT 16

300180768v1

**NATIONAL RAILROAD PASSENGER CORPORATION**
Inspector General, Investigations, 10 G Street, NE, Suite 3E-400, Washington, DC 20002



VIA FACSIMILE AND FIRST-CLASS MAIL

June 20, 2005

Tim M. Broas, Esquire
Winston & Strawn
1700 K Street, N.W.
Washington, D.C. 20006-3817

RE: Amtrak OIG Subpoena to Alstom (Nos. 05-07)

Dear Mr. Broas:

    This is a courtesy notice to you that the Amtrak Inspector General is issuing a second subpoena to your client, Alstom. If you will be representing Alstom with respect to the second subpoena, if you wish we will provide you with a courtesy copy. You may contact Angel Taylor at 202 906-4934 for that copy.

Sincerely,

Colin C. Carriere
Counsel to Amtrak Inspector General

cc: David Sadoff
    Fred Weiderhold
    John Grimes

EXHIBIT 17



**Pillsbury
Winthrop
Shaw
Pittman**

1540 Broadway
New York,
NY 10036-4039

Tel 212.858.1000
Fax 212.858.1500
www.pillsburylaw.com

**Confidential Investigative Communication
Disclosure Restricted to Head of Designated
Federal Entity Pursuant to 5 U.S.C. App. 3 § 8G(d)**

June 23, 2005

Philip Le B. Douglas
Phone: 212.858.1704
philip.douglas@pillsburylaw.com

**BY FAX**

Colin C. Carriere, Esq.
Counsel to the Inspector General
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E.
Suite 3E-400
Washington, D.C. 20002

Re:  Office of Inspector General ("OIG") Subpoena to
     Bombardier (No. 05-05)

Dear Mr. Carriere:

As you know, the undersigned represents Bombardier Inc. ("Bombardier"). During our June 8, 2005 meeting with you, David Sadoff and Special Agent Renee Jackson-Dixon, you asked that we write a letter identifying those portions of the two subpoenas received by Bombardier on May 12, 2005 and May 19, 2005 (collectively the "Subpoena") that we find to be ambiguous, overbroad or otherwise objectionable.[1] You also asked that we propose search terms to be used to locate potentially responsive information in Bombardier's databases. The information you asked for is set forth below.

---

[1] The May 12 subpoena is addressed to "Bombardier [sic]" in Barre, Vermont. The May 19 subpoena is addressed to "Bombardier [sic]" in Montreal, Quebec. Because these subpoenas contain identical instructions and requests, we will not distinguish between them.

EXHIBIT 18

300181006v2

June 23, 2005
Page 2

### Cover Letter Requests

The OIG's May 4, 2005 letter enclosing the subpoena contains certain requests to which we respond as follows:

1. **Defective Brake Parts**

You ask for voluntary production of "all Acela brake parts which have been returned to you as having cracks, deficiencies or deformities." We believe that the issue of access to, and ultimately custody of, all defective brake parts is best resolved by the FRA and those responsible for Amtrak's high-speed program. For example, the transfer to OIG of over a thousand cracked brake discs, many of which remain attached to axels, would completely disrupt the agreed plan to return Acela trainsets to service. In any event, as written, this request would call for components that have nothing to do with the subject of your investigation. If OIG wishes to inspect on site a particular cracked friction brake disc from an Acela trailer car, we are willing to make arrangements provided that any such inspection does not interfere with the timely return of the Acela to full service.

2. **Delivery of Records**

As requested, we will respond to all proper document requests by delivering responsive, non-privileged materials to your custody. We commenced production of documents on June 20, 2005, with scanned documents directed to your attention, but please advise us if we should be directing future productions to another individual in your office.

### General Objections

The following objections are incorporated into each of the responses set forth below:

1. Bombardier objects to the Subpoena insofar as it calls for the production of documents subject to the attorney-client privilege, the work product immunity doctrine, the joint or common defense privilege, or other privileges whether based upon statute or common law. In the event any such document is produced by Bombardier, its production is inadvertent and does not constitute a waiver of any privilege or immunity.

300181006v2

June 23, 2005
Page 3

2. Bombardier objects to the Subpoena insofar as it seeks documents not in Bombardier's possession, custody, or control.

3. The Subpoena itself requests that responsive "materials . . . be accompanied by an index identifying the item(s) of the subpoena to which the documents are responsive." For the reasons stated at our meeting on June 8, 2005, we object to this request. Bombardier reserves the right to produce responsive records by any method authorized under FRCP 34, and in accordance with your own Instruction No. 7. Indeed, because the Subpoena, in any event, will require the production of thousands of records, any attempt to comply with this request would be prohibitively expensive and would delay your investigation indefinitely.

4. Bombardier objects to any document request that does not limit the time period in which otherwise responsive documents were created. Accordingly, Bombardier will only endeavor to produce responsive, non-privileged documents created in the period January 1, 1994 through May 4, 2005.

5. Even as so limited by this letter, the costs of complying with the Subpoena will be prohibitive. Bombardier therefore reserves the right to demand that OIG pay for all associated costs. *E.g., United States v. Friedman*, 532 F.2d 928, 936-38 (3d Cir. 1976); *United States v. Davey*, 426 F.2d 842, 845 (2d Cir. 1970).

## Reservation of Rights

1. The fact that Bombardier is willing to produce any particular document or provide responsive information does not constitute an admission that the request is proper, that the information it seeks is within the statutory mandate of OIG as reasonably relevant to the present inquiry or that requests for similar information will be treated in a similar fashion.

2. Bombardier's agreement to produce documents in response to any specific request in the Subpoena is made without waiving, and Bombardier expressly reserves, any and all rights and objections to the disclosure of such documents or the information contained therein in response to a Freedom of Information Act ("FOIA") request.

3. Bombardier reserves the right, in its discretion, to redact information from otherwise responsive documents prior to production that is:

300181006v2

June 23, 2005
Page 4

    (a)    protected under any exemption to FOIA, 5 U.S.C. 552(b), including, but not limited to, commercial or financial information that may be protected from disclosure under Exemption 4 of the FOIA;

    (b)    non-responsive;

    (c)    protected by the work product doctrine, the attorney-client privilege or any other applicable privilege or protection, including that for trial preparation materials; or

    (d)    otherwise non-producible.

4.    By undertaking to produce documents in response to any specific request, Bombardier is not representing that such documents exist.

5.    To the extent practicable, documents will be produced as they were maintained in the regular course of Bombardier's business.

6.    Bombardier reserves the right to amend and supplement its Answers, Responses and Objections to the Subpoena, and to produce additional documents, as it obtains further information through investigation and discovery.

### Instructions (Attachment "A")

Instruction No. 1

Bombardier objects to Instruction No. 1 as vague, overbroad and unduly burdensome. Without waiving the foregoing objection, Bombardier is willing to search electronically stored information that is kept in the ordinary course of Bombardier's business in accessible format (*i.e.*, on servers and the hard drives of the personal computers of those employees who were substantively involved in the Acela brake issue

300181006v2