June 23, 2005
Page 5

that is the subject of the Subpoena), using agreed-upon search terms[2], for Documents and Communications (as those terms are defined in the Subpoena) responsive to the Subpoena. Bombardier will produce such responsive Documents and Communications in PDF format on compact discs or DVDs.

### Instructions Nos. 2 and 7

For the reasons stated above, Bombardier respectfully declines your request that "[f]or each document produced, identify the document request(s) to which it is responsive." In addition, Instruction No. 2 conflicts with Instruction No. 7. Bombardier agrees to comply with Instruction No. 7.

### Instruction No. 4

In this letter, Bombardier sets forth those aspects of the Subpoena that are believed to be vague or ambiguous.

### Instruction No. 5

Bombardier objects to the production of original documents to the extent such a production would duplicate the production of identical copies, violate existing contractual or regulatory requirements or disrupt Bombardier's business. Originals will be preserved.

### Instruction No. 6

Bombardier objects to Instruction No. 6 as unduly burdensome but will produce responsive, non-privileged materials in the same order in which they have been kept in the usual course of Bombardier's business.

---

[2] Bombardier proposes to use the following text search terms (both in English and French): brake, disc, disk, web, spoke, crack, fissure, hairline, hair line, Knorr, KB, Wabco, Wabtec, Faively, and ORX. Please let us know if you do not agree with these terms, or if you would like to add other terms. This search will be conducted only once. Therefore, it is important that OIG provide any additional search terms no later than June 27, 2005.

300181006v2

June 23, 2005
Page 6

Instruction No. 9

Bombardier will comply with Instruction No. 9 to the extent the requested information can be obtained without unreasonable effort or cost.

Instruction No. 10

Bombardier objects to instruction No. 10 because it would create an unlimited ongoing obligation to supply records to the Office of Inspector General. Accordingly, as noted above, Bombardier objects to the production of records created after May 4, 2005.

**Requested Documents (Attachment "A")**

1.     Bombardier objects to Request No. 1 as overbroad, vague and ambiguous. Bombardier will produce responsive documents to the extent they relate to friction brakes on Acela trailer cars. In addition, Bombardier demands confidential treatment for commercially sensitive material, including subcontract pricing information.

2.     Bombardier objects to Request No. 2 as overbroad to the extent it calls for manuals that do not relate to the friction brakes on Acela trailer cars. Because the phrase "operation and technical service manuals" is vague, Bombardier will limit its production to maintenance manuals and service bulletins.

3.     Bombardier will produce the documents sought in Request No. 3 to the extent they exist.

4.     Bombardier objects to Request No. 4 as overbroad to the extent it seeks documents other than responsive documents relating to the friction brakes on the Acela trailer cars. Bombardier also objects to the phrase "engineering reports" as vague and ambiguous but will produce any failure analysis from Bombardier's engineering department regarding cracks discovered in the friction brakes of the Acela trailer cars.

5.     Bombardier objects to Request No. 5 as overbroad to the extent it calls for documents other than responsive documents relating to the friction brakes on Acela trailer cars.

300181006v2

June 23, 2005
Page 7

6.     Bombardier objects to Request No. 6 as overbroad to the extent it calls for documents other than service bulletins and technical bulletins relating to the friction brakes on the Acela trailer cars.

7.     Bombardier objects to Request No. 7 as overbroad to the extent it calls for documents other than responsive documents relating to the friction brakes on the Acela trailer cars.  We also object to the phrase "identification of quality control pertaining to braking discrepancies, malfunctions and/or defects" as vague and ambiguous. Bombardier, therefore, will limit its production of responsive documents, if any, to those prepared in the course of inspecting and maintaining the friction brakes on the Acela trailer cars.

8.     Bombardier objects to Request No. 8 as overbroad to the extent it calls for documents other than responsive documents relating to the friction brakes on the Acela trailer cars.

9.     Bombardier objects to Request No. 9 as overbroad to the extent that it calls for documents other than responsive documents relating to the friction brakes on the Acela trailer cars.  We also object to the demand that "[i]n the event that the reports/logs do not clearly identify the parties in attendance, please provide pertinent identifying information, including name, telephone number, etc.", as an interrogatory that is beyond the OIG's statutory authority under 5 U.S.C. App. 3, Sec. 6(a)(4).

10.     Bombardier objects to Request No. 10 as overbroad, vague and ambiguous to the extent it calls for documents other than Quality Assurance conformity or non-conformity reports regarding friction brakes on the Acela trailer cars.

11.     Bombardier objects to Request No. 11 as overbroad, vague and ambiguous to the extent it calls for documents other than those that describe or discuss the process of manufacturing the friction brakes for the Acela trailer cars.

12.     Bombardier objects to Request No. 12 as overbroad to the extent it calls for documents other than those prepared by Bombardier relating to inspection and testing manuals and procedures for the friction brakes on the Acela trailer cars.

June 23, 2005
Page 8


## Production Timetable

     Bombardier commenced production of responsive documents on June 20, 2005, and will make supplemental productions as expeditiously as possible on a rolling basis.

     Please feel free to call if you wish to discuss any part of this letter or any other matters.

Very truly yours,

Philip Le B. Douglas



**Pillsbury**
**Winthrop**
**Shaw**
**Pittman** ᴸᴸᴾ

1540 Broadway
New York, NY 10036-4039

Tel 212.858.1000
Fax 212.858.1500
www.pillsburylaw.com

June 23, 2005

Daniel Z. Mollin
Phone: 212.858.1668
daniel.mollin@pillsburylaw.com

<u>Via Federal Express</u>

Colin C. Carriere, Esq.
Counsel to the Inspector General
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E.
Suite 3E-400
Washington, D.C. 20002

Re:    Subpoena Issued by the Office of Inspector General to Bombardier Inc.,
       <u>dated May 4, 2005, No. 05-05 (the "Subpoena")</u>

Dear Mr. Carriere:

This firm represents Bombardier Inc. in connection with the Subpoena.

Enclosed please find a CD containing scanned copies of certain contracts responsive to
the Subpoena, bates stamped BBD0000950 through BBD0001264. We have redacted
certain commercially sensitive pricing information contained in the contracts.

Sincerely,

Daniel Z. Mollin

Enclosure

cc:    Marc-Andre Raymond (w/o attachments)

EXHIBIT
19

300181218v1



Pillsbury
Winthrop
Shaw
Pittman.

1540 Broadway
New York, NY 10036-4039

Tel 212.858.1000
Fax 212.858.1500
www.pillsburylaw.com

June 24, 2005

Daniel Z. Mollin
Phone: 212.858.1668
daniel.mollin@pillsburylaw.com

<u>Via Federal Express</u>

Colin C. Carriere, Esq.
Counsel to the Inspector General
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E.
Suite 3E-400
Washington, D.C. 20002

Re:     Subpoena Issued by the Office of Inspector General to Bombardier Inc.,
        <u>dated May 4, 2005, No. 05-05 (the "Subpoena")</u>

Dear Mr. Carriere:

This firm represents Bombardier Inc. in connection with the Subpoena.

Enclosed please find a CD containing a scanned copy of the Amtrak/Bombardier
settlement agreement (with exhibits) dated March 16, 2004, bates stamped BBD0001265
through BBD0001820.

Sincerely,

Daniel Z. Mollin

Enclosure

cc:     Marc-Andre Raymond (w/o attachments)

EXHIBIT
20

JTS ✓



Pillsbury
Winthrop
Shaw
Pittman..

WINSTON & STRAWN LLP

Confidential Investigative Communication
Disclosure Restricted to Head of Designated
Federal Entity Pursuant to 5 U.S.C. App. 3 § 8G(d)

June 24, 2005

**BY FEDERAL EXPRESS**

Colin C. Carriere, Esq.
Counsel to the Inspector General
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E.
Suite 3E-400
Washington, D.C. 20002

Re:    OIG Subpoena to NeCMSC (No. 05-05)

Dear Mr. Carriere:

As you know, the undersigned represent the separate interests of Alstom Transportation ("Alstom") and Bombardier Inc. ("Bombardier") in the Northeast Corridor Maintenance Services Company ("NeCMSC").

Subject to the conditions and objections set forth in our June 20, 2005 letter, we enclose for production 26 disks containing the first phase of NeCMSC's production of Daily Inspection Reports in response to the subpoena served on NeCMSC on May 10, 2005 (the "Subpoena"). These records have been scanned and bates stamped NEC0000001 through NEC0226982. We are advised that the enclosed Daily Inspection Reports were generated at all three NeCMSC maintenance facilities from the commencement of NeCMSC's operations through approximately April 1, 2003 (although, due to the way the records were stored, this first phase includes some Daily Inspection Records dated after April 1, 2003).

EXHIBIT

21

ALL-STATE LEGAL®

300181235v1

June 24, 2005
Page 2

We anticipate that the second phase of NeCMSC's production of Daily Inspection Reports (covering April 1, 2003 through May 10, 2005) will follow next week.

Please feel free to call if you wish to discuss any part of this letter or any other matters.

Very truly yours,

Philip Le B. Douglas
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036-4039
(212) 858-1704

Timothy Broas
Winston & Strawn LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
(202) 282-5750

Enclosures

300181235v1

Jun. 27. 2005  8:41AM                    .                              No. 4910   P. 2

NATIONAL RAILROAD PASSENGER CORPORATION
Inspector General, Legal Counsel's Office, 10 G Street, NE, Suite 3E400, Washington, DC 20002



*VIA FACSIMILE AND FIRST-CLASS MAIL*

June 27, 2005

Phillip Le B. Douglas, Esquire                    Timothy Broas, Esquire
Pillsbury Winthrop Shaw Pittman                   Winston & Strawn, LLP
1540 Broadway                                     1700 K Street, N.W.
New York, New York10036-4039                      Washington, D.C. 20006-3817


RE: Amtrak OIG Subpoenas to NECMSC  (No 05-09)


Dear Messrs Douglas and Broas:


     I am responding to your letter, dated June 20, 2005, with respect to the above listed subpoena which the Amtrak Inspector General issued to your client, Northeast Corridor Maintenance Services Company ("NeCMSC").

     When we met on June 8, 2005 we discussed the aforementioned subpoenas and what we perceived as NeCMSC's alteration of its position regarding complying with the IG's subpoena. I will not discuss all of the items or issues discussed therein, but will discuss the matters most pertinent to NeCMSC complying with the subpoena in a reasonably expeditious manner.[1] We had offered in our previous meetings with you to work on methods or ways to accommodate NeCMSC so that the documents could be produced in a layered fashion and to gain a greater understanding of the document population possibly to narrow certain of the subpoena subparts. It is apparent that we have not reached such understanding.

     Because of the positions which you were taking with respect to compliance, at the June 8 meeting, I requested that you set forth in writing: (1) the extent to which NeCMSC was willing to comply with the subpoena (2) the suggested deadlines regarding when it expected that it could complete production for each subpoena subpart,[2] (3) subpoena language which you believed required clarification, and (4) memorialization of what you described as the electronic files which were destroyed or lost as a result of the server

---

[1] Please do not imply or infer from my decision to not specifically addressing certain issues, objections or matters set forth in your letter that the OIG accepts or agrees with your statements.

[2] We have informed you on several occasions that we did not want delay with respect to the production. The OIG proposed item 2 because it was willing to <u>consider</u> NeCMSC's representations concerning how long production of responsive documents would take.

EXHIBIT
22
ALL-STATE LEGAL®

Jun. 27. 2005  8:41AM                                    No. 4910   P. 3

Page 2 of 3.
June 27, 2005


malfunction.[3] You informed us that you expected to submit such written document on June 13.[4]

Your June 20 letter does not respond fully to the issues noted in the preceding paragraph, nor allay our concerns with respect to undue delay in responding to the subpoena. First, you state (at 2) that the "first production will occur no later than June 24, 2005." As the OIG emphasized on several occasions at the June 8 meeting, providing dates upon which NeCMSC can commence production is meaningless. We requested that you identify with respect to each subpart when you could reasonably complete production. NeCMSC has failed or refused to so in the June 20 letter.[5]

Moreover, your letter "reserves the right, in [NeCMSC's] discretion to redact" information that, inter alia, constitutes commercial or financial information or "otherwise non-producible". We disagree with this position. It is not appropriate to withhold data responsive to this subpoena if you believe that it is financial or commercial. In this regard we have offered protection of proprietary data under a confidentiality agreement, which we have provided to you. We are unsure of what you mean or intend by the term "non-producible" and the types of documents which would be encompassed within this category.

With regards to several subpoena subparts, NeCMSC states that it intends to limit its production of responsive documents to those "relating to the friction brakes on the Acela trailer cars" or those "prepared in the course of inspecting and maintaining the friction brakes on the Acela trailer cars". The OIG has never agreed to such limitations and we are not clear concerning the ramifications of your unilateral attempt to read the subpoena language.

---

[3] Your letter does not appear to address the issue of the alleged mishap concerning the server.

[4] You have captioned your letter with a heading which reads: "Confidential Investigative Communication Disclosure Restricted to head of Designated Federal Entity Pursuant to 5 U.S.C. App. 3 § 8G(d)". It is unclear what you intend by such designation, and we never agreed to such terms. Section 8G(d) states: Each Inspector General shall report to and be under the general supervision of the head of the designated Federal entity, but shall not report to, or be subject to supervision by, any other officer or employee of such designated Federal entity. The head of the designated Federal entity shall not prevent or prohibit the Inspector General from initiating, carrying out, or completing any audit or investigation, or from issuing any subpoena during the course of any audit or investigation." This provision does not address confidentiality and does not restrict the OIG in its dissemination of information.

[5] Only with regard to certain documents, does NeCMSC state a completion date for completing production.

Page 3 of 3.
June 27, 2005

     Given those circumstances, the Amtrak Inspector General has established the following with regards to NeCMSC's response to the subpoena:[6]

     (1) Please comply fully with the terms and conditions of the May 15 subpoena, except as altered or carved out by the IG's subpoena to NeCMSC, dated June 24, 2005.

     (2) Even though you may layer your response, provide the full and complete response to the subpoena no later than July 28, 2005.

     (3) Specifically identify the subpoena portions to which each document or generic category of documents is responsive or produced the documents in such a manner that the OIG can determine the link between the documents produced and the subpart which requests their production.

     (4) On the date set forth above for full compliance, please provide a *Vaughn* privilege index.

Sincerely,

Colin C. Carriere
Counsel to Amtrak Inspector General

cc:  David Sadoff
     Fred Weiderhold
     John Grimes

---

[6] As you are aware, the subpoena requests electronic and paper documents and records.



**Pillsbury**
**Winthrop**
**Shaw**
**Pittman** LLP

1540 Broadway          Tel 212.858.1000
New York,              Fax 212.858.1500
NY 10036-4039          www.pillsburylaw.com


**CONFIDENTIAL INVESTIGATIVE COMMUNICATION**
**DISCLOSURE RESTRICTED TO HEAD OF DESIGNATED**
**FEDERAL ENTITY PURSUANT TO 5 U.S.C. APP. 3 § 8G(d)**


June 28, 2005

Philip Le B. Douglas
Phone: 212.858.1704
philip.douglas@pillsburylaw.com


**BY FAX**


Colin C. Carriere, Esq.
Counsel to the Inspector General
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E.
Suite 3E-400
Washington, D.C. 20002


Re:    OIG Subpoenas to Bombardier Inc. (No. 05-05 and 05-09)

Dear Mr. Carriere:

On behalf of Bombardier Inc., we respond to your June 16, 2005 letter.

**Bombardier Subpoenas**

You write that my June 8 letter's reference to this firm's representation of
Bombardier's "interests in the three subpoenas is confusing and appears inconsistent with
[the OIG's] understanding of [Bombardier's] statements at the [June 8, 2005] meeting."
We indeed represent Bombardier's interests in connection with the three subpoenas
served by your office to date:

**EXHIBIT**
**23**
ALL-STATE LEGAL®

June 28, 2005
Page 2

| Subpoena Addressee | Service Date |
|---|---|
| NeCMSC[1] | May 10, 2005 |
| "Bombardier [sic]" (Barre, Vermont) | May 12, 2005 |
| "Bombardier [sic]" (Montreal, Canada) | May 19, 2005 |

Your letter states that on June 16, 2005 OIG issued "a second [actually the fourth] subpoena for certain 'notice records'." Bombardier has yet to receive that fourth subpoena. Once it has been served, we will represent Bombardier in that matter.[2]

## "Lay-of-the Land" Information

You complain that Bombardier did not produce its "lay-of the-land" description of Bombardier records until May 31, 2005, 13 days after you first asked for it. This outline, however, was the product of considerable effort, including interviews we conducted in Canada. We believe, moreover, that Bombardier and NeCMSC may be the only subpoena recipients in the current investigation to have produced this type of information.

As your letter acknowledges, we undertook this effort at OIG's request in order "to possibly narrow the scope of documents which Bombardier would be required to produce." Even though you have now had Bombardier's and NeCMSC's "lay-of-the-land" documents for a month (and we have repeatedly offered to meet with you to discuss ways to narrow these three extremely broad subpoenas), OIG has yet to proffer to Bombardier a single reduction in the subpoenas' scope. Instead, you have stated that you intend to issue a fourth subpoena to Bombardier-related entities. We again invite you to use our "lay-of-the-land" outline to discuss reasonable limitations on these very broad and burdensome subpoenas.

---

[1]   As you acknowledge, we represent Bombardier's 50% interest in NeCMSC.

[2]   Contrary to your letter, my June 8 letter does not state that OIG "is carrying Amtrak's water on conflicts issues." Rather, our letter states "[i]n short, there are a variety of reasons why the Inspector General should not carry Amtrak's water on conflicts issues." (Emphasis added). Nevertheless, we agree with you that the alleged conflict is a matter between Bombardier and Amtrak's General Counsel, a person to whom OIG should not report. 5 U.S.C. App. 3 § 8G(d).

June 28, 2005
Page 3

**OIG's Request that Bombardier**
**Segregate "Notice" Records**

We continue to disagree with your request that Bombardier search the vast field of potentially responsive files in order to segregate and immediately produce " 'notice records' – those documents and records which discuss or pertain to any information or notice with respect to deficiencies or problems with the Acela brakes." Although you claim that "[t]hese documents are responsive to subparts 7 and 8 of the subpoena," neither subpart contains the request quoted above.

In any event, in order to comply with such a request, Bombardier would have to search through design, manufacturing and maintenance records going back more than a decade. We estimate that the field of potentially responsive files consists of hundreds of thousands of pages of potentially responsive documents and electronic files. To segregate from these files only those records that disclose potential and actual "deficiencies or problems with the Acela brakes" would require the expenditure of many thousands of lawyer hours over and above the time required simply to produce all files in which any such "notice" records could reasonably be expected to be found. The legal fees involved in segregating "notice" files, therefore, would greatly increase the already high costs of subpoena compliance. Moreover, most of the Acela brake "problems" over the past five years have nothing to do with the carrier car friction brakes at issue in your investigation. The "notice" exercise you have requested would therefore have to be paid for by OIG. *E.g., United States v. Friedman*, 537 F.2d 928, 936-38 (3d Cir. 1976); *United States v. Davey*, 462 F.2d 842, 845 (2d Cir. 1970).

Bombardier has consistently declined OIG's requests that we locate, isolate and identify each and every "notice" document found in Bombardier's files. Although you do not recall this, the three Bombardier representatives at our May 18 meeting all clearly recollect that I declined to make such a commitment. There seems to be no point, however, in debating further what happened at the meeting because, as you concede, Bombardier's position was clearly articulated at our June 8, 2005 meeting and in our letter of that date.

Nevertheless, let me articulate Bombardier's position one more time: Subject to the objections set forth in our June 23, 2005 letter, Bombardier will produce all potentially responsive, non-privileged files "as they have been kept in the usual course of business," which is precisely the option provided by Instruction No. 7 of the two subpoenas addressed to Bombardier. This approach is consistent with accepted federal practice. FRCP 45(d)(1) affords subpoena recipients the option of producing records

300180838v4

June 28, 2005
Page 4

either "as they are kept in the usual course of business <u>or</u> . . . organiz[ing] and label[ing] them to correspond with the categories in the request." (Emphasis supplied). Therefore, until and unless OIG can identify controlling authority to the contrary, Bombardier must respectfully decline to identify and segregate particular classes of records. Instead, we will produce, as they are maintained in the ordinary course of Bombardier's business, those files in which responsive records are reasonably expected to be found. That being said, I informed you on June 8, 2005 that Bombardier may, in its sole discretion, opt to provide OIG with a presentation regarding the notice issue.

<u>Section 8G(d) Restrictions</u>

With regard to my June 8, 2005 letter's reference to 5 U.S.C. App. 3 § 8G(d), you state that "[i]t is unclear what you intend by [this reference] and we have never agreed to such terms." As I explained to Mr. Sadoff when he asked about this reference at the end of our June 8, 2005 meeting, our reference to that provision is to confirm that Bombardier's communications are confidential and may not be communicated outside of the Amtrak OIG's office to the public, Congress or Amtrak itself, except as authorized by law, namely, through "the head of the designated Federal entity". In particular, we ask that insofar as Bombardier-related information and communications are concerned, the OIG, in conformity with Section 8G(d), shall "<u>not report</u>, [regarding the investigation] to any other officer or employee" of Amtrak. (Emphasis supplied).

Despite our disagreements with your letter, Bombardier remains willing to work with your office to ensure an efficient and reasonable response to the OIG subpoenas.

Very truly yours,

Philip Le B. Douglas

300180838v4