June 30, 2005
Page 2

        In April 2005, <u>before</u> your office had issued a formal subpoena, NeCMSC voluntarily produced the following information:

- Seven binders of "Coach Car wheel set assembly data" from ORX;

- The original NeCMSC Visitor's Book, from December 3, 2000 until the date it was provided to OIG;

- A copy of the Level 1 daily inspection procedure form;

- Copies of the control sheet filled out daily by Amtrak personnel at NeCMSC facilities – both (i) the version that existed prior to April 14, 2005 and (ii) the new version created after NeCMSC became aware of the disc issue (but before the fleet was grounded); and

- A copy of Knorr Service Bulletin 123c (*i.e.*, the Service Bulletin about the method of inspecting the brake discs.)

        On June 24, 2005, in response to the subpoena, we sent you by Federal Express 226,982 pages of Acela Daily Inspection Reports. On July 1, 2005, we expect to produce:

- The remaining 200,000-300,000 pages of Daily Inspection Reports (barring any technical problems due to the size of the production);[2]

- 454 pages of Corrective Work Orders; and

- 50 pages of contracts from the NeCMSC offices.[3]

---

[2] If there are any technical delays, we anticipate that the remaining Daily Inspection Reports will go out Tuesday, July 5, 2005.

[3] We understand that there is no central "Contracts" file at NeCMSC, and have located only one copy so far of any contracts responsive to the subpoena (specifically, the Knorr Lifecycle Contract).

300181715v4

June 30, 2005
Page 3

## Narrowing the Subpoena's Scope

Inasmuch as NeCMSC is, for the present, bearing the cost of subpoena compliance[4] -- which has already exceeded $200,000 in legal fees -- we have indeed been anxious to "work on methods or ways . . . that . . . documents could be produced in a layered fashion and to [provide OIG with] a greater understanding of the document population possibly to narrow certain of the subpoena subparts." Therefore, we were distressed to learn from your June 27 letter that "we have not reached such understanding", and that, OIG now will not agree to limit in any way its extremely broad and vaguely drafted requests.

We believe that NeCMSC has gone the extra mile to provide OIG with an "understanding of the document population" necessary for it reasonably to narrow the subpoena to reasonable proportions:

- On June 2, 2005, Tim Broas and Dana Wordes explained to OIG that, as worded, the subpoena would require the production of a large amount of irrelevant information, such as documents relating to the power car brakes, which are not implicated by the cracks in trailer car friction discs. They understood clearly from that meeting that OIG had agreed to limit the scope of the NeCMSC and Alstom subpoenas to the trailer car friction brakes, and NeCMSC's document production has been in accordance with that agreement.

- In order to provide you with some understanding of the NeCMSC document population, Phil Douglas volunteered to provide OIG with the "lay-of-the-land" outline that OIG requested at its May 18, 2005 meeting with him. At a considerable effort, NeCMSC prepared and faxed that outline to you on June 7, 2005. To this day, however, OIG has not responded to this document.

- Again, at your request, NeCMSC prepared its June 20, 2005 letter specifically identifying the subpoena requests we found improper, overbroad or ambiguous and, in each case, proposed, as you requested, a reasonable clarification and/or narrowing of the request in question.

---

[4] At the appropriate time, NeCMSC will ask OIG to compensate NeCMSC for its costs of complying with these subpoenas. *E.g., United States v. Friedman*, 532 F.2d 928, 936-38 (3d Cir. 1976); *United States v. Davey*, 426 F.2d 842, 845 (2d Cir. 1970).

300181715v4

June 30, 2005
Page 4

Despite these considerable, good faith efforts, OIG's only response is that you "are not clear concerning the ramifications of [NeCMSC's] unilateral attempt [sic] to read the subpoena language" and to demand, without justification or explanation, that NeCMSC "comply fully with the terms and conditions of the May 15 [sic] subpoena, except as altered or carved out by the IG's subpoena to NeCMSC, dated June 24, 2005."

Frankly, NeCMSC's proposal (and OIG's June 2 agreement) to limit the subpoenas to those documents "relating to the friction brakes on the Acela trailer cars" is – in the context of an investigation limited to cracks in the discs of those brakes – self-evidently reasonable. You have not provided us with any justification for seeking documents unrelated to trailer car friction brakes.

We do not understand, therefore, how OIG could be "not clear concerning the ramifications" of our proposed limitation. Indeed, the ramifications of <u>OIG's</u> present position are that NeCMSC must produce all materials regarding any and all "problems" – no matter how insignificant or irrelevant – with <u>any</u> of the Acela's four types of brake mechanisms, including <u>three</u> that have <u>nothing to do</u> with your present investigation. Because the loss of Acela service on April 14, 2005 concerned a specific kind of crack in only one component of one brake subsystem, namely the spokes of the trailer car friction brake discs, we are convinced that the United States District Court for the District of Columbia would find the subpoenas to be unreasonable as written.

Accordingly, NeCMSC respectfully declines to comply with requests that would require the production of literally millions of pages of documents that have nothing whatsoever to do with the cracks on the spokes of the trailer car friction brakes at issue in your investigation.

**OIG's Demand that NeCMSC Segregate
and Produce "Notice" Records**

We regret very much that OIG "perceive[s]" that NeCMSC has altered its position regarding your demand that we segregate "notice" documents from the remainder of the subpoenaed files. The undersigned have been clear and consistent in all our communications with you, including those responding to your demand that NeCMSC identify and segregate individual notice documents.

Given the difficulties we are having, perhaps it would be constructive for NeCMSC to state what it believes is OIG's demand and NeCMSC's position in response. We understand you to be asking that NeCMSC isolate from the large volume of

June 30, 2005
Page 5

potentially responsive files any individual documents that gave NeCMSC advance notice regarding any "cracks or malfunctions, including defective/deficient products, pertaining to the Acela brakes." We understand further that OIG does not want production of these "notice" documents as they are kept in the usual course of NeCMSC's business, but rather insists that each be segregated from the files in which it is actually kept and that each be labeled a "notice" document. Please let us know whether, and if so how, we have misstated OIG's position.

As noted above, we have consistently declined this request. Even your June 27 letter acknowledges that we did so at our June 8, 2005 meeting. As we informed you at that time, federal practice permits a subpoena recipient, at its option, to produce records either as they are kept in the usual course of business <u>or</u> organized to correspond with the categories in the subpoena demand.[5] *See, e.g.,* F.R.C.P. 45(d)(1). Because of the great effort that would be involved in, and the work product privilege issues implicated by, locating and segregating "notice" records from the hundreds of thousands of responsive files, NeCMSC is agreeable only to producing responsive materials in the order in which they are kept. Nor will we attempt to label each piece of paper as responsive or non-responsive to the many overlapping and vague categories set forth in the two subpoenas served to date. If OIG has any authority for its unusual request, we ask it be produced without further delay.[6]

**Electronic Data**

During the May 18, 2005 meeting, Phil Douglas asked OIG to propose search terms for the recovery of responsive electronic data. When we repeated this request at our June 8, 2005 meeting, OIG asked that NeCMSC instead propose search terms of its own. We complied with this request in NeCMSC's June 20 letter (p. 4 n.1) and asked that OIG respond by June 27. To date, we have had no response. Please provide us with your comments on these search terms, so that the search for electronic data can begin without further delay.

---

[5] In any event, none of the May 10, 2005 subpoena categories separately call for "notice" records as such.

[6] When, at the June 8, 2005 meeting, we first asked you for the basis for your "notice" demand, Mr. Sadoff made passing reference to a "Judge Edelstein" decision in the "IBM case," OIG subsequently declined to further identify this decision.

June 30, 2005
Page 6


## Expected Completion Date

We have never agreed to provide "suggested deadlines regarding when [NeCMSC] expected that it could complete production for <u>each</u> subpoena subpart." (Emphasis supplied). Indeed, that task, which would be difficult in any event, is <u>impossible</u> prior to agreement between the parties on electronic data search terms and the meaning and scope of each document request. As your June 27, 2005 letter makes clear, OIG, contrary to its June 2 agreement, is now unwilling to limit the subpoenas' scope in any way.

At our June 8 meeting, we did agree that NeCMSC would provide a production time frame for our <u>first wave</u> of documents, namely the daily inspection reports and corrective work orders.[7] As promised, those dates are set forth in NeCMSC's June 20 letter.

Even if OIG were to agree to narrow the Subpoena in line with the objections set forth in our June 20, 2005 letter, NeCMSC could not possibly comply with your newly announced July 28, 2005 deadline:

- NeCMSC's first priority is to get the Acela back into service. This is a priority with which your investigation is now threatening to interfere;

- We still have no agreement on the scope and meaning of the Subpoena;

- NeCMSC did not receive your second subpoena until the afternoon of June 27, 2005;

- Bombardier and Alstom, NeCMSC's owners, are simultaneously complying with the various other overbroad subpoenas served on them by OIG; and

- We have not commenced the recovery of all NeCMSC electronic data because you have not responded to the proposed search terms set forth in our June 20, 2005 letter.

---

[7] NeCMSC did and does <u>not</u> commit to providing these estimates on an ongoing basis.

300181715v4

June 30, 2005
Page 7


**Subcontractor Pricing**

As we informed you, subcontractor pricing is one of Alstom's, Bombardier's and NeCMSC's most important trade secrets. Inasmuch as OIG is unable to execute a confidentiality agreement that provides the necessary protection, NeCMSC will redact pricing and other competitively sensitive information from any documents produced in response to the subpoenas. Subcontractor pricing information is irrelevant to your investigation of the trailer car friction brake disc cracks and thus not reasonably related to the subject matter of your investigation.

**Statutory Restrictions on OIG Disclosures**

We disagree with your statement that 5 U.S.C. App. 3 "does not restrict the OIG in its dissemination of information." As we informed Mr. Sadoff on June 8, Section 8G(e) requires that any reports to Congress be made through "the head of the designated Federal entity," in this case the Chairman of Amtrak's Board of Directors. In addition, Section 8G(d) expressly provides that OIG "shall not report to, or be subject to supervision by, any other officer or employee of such designated Federal entity." (Emphasis supplied). Clearly, then, OIG may not "report" on information from this investigation to anyone other than through the Chairman of Amtrak's Board. We ask that OIG comply with the law in this regard.

We very much hope that we will reach agreement on the scope of, and NeCMSC's obligations under, the subpoenas. NeCMSC stands ready to meet with you in order to achieve this result and otherwise expedite your investigation.

Very truly yours,


Philip Le B. Douglas
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036-4039
(212) 858-1704

Timothy M. Broas
Winston & Strawn LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
(202) 282-5750

300181715v4



Pillsbury
Winthrop
Shaw
Pittman LLP

WINSTON & STRAWN LLP

**Confidential Investigative Communication**
**Disclosure Restricted to Head of Designated**
**Federal Entity Pursuant to 5 U.S.C. App. 3 § 8G(d)**

July 1, 2005

**BY FEDERAL EXPRESS**

Colin C. Carriere, Esq.
Counsel to the Inspector General
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E.
Suite 3E-400
Washington, D.C. 20002

Re:     OIG Subpoena to NeCMSC (No. 05-05)

Dear Mr. Carriere:

As you know, the undersigned represent the separate interests of Alstom
Transportation ("Alstom") and Bombardier Inc. ("Bombardier") in the Northeast
Corridor Maintenance Services Company ("NeCMSC").

Subject to the conditions and objections set forth in our June 20, 2005 letter, we
enclose responsive documents, including Corrective Work Orders, contract documents
and Daily Inspection Records, which have been bates stamped NEC0226983 through
NEC0375599. Because of the volume of documents and complications in the copying
process, we were unable to complete the downloading of all of the Inspection Reports by
today in time for delivery to you. The remaining Inspection Reports will be delivered to
you on Tuesday, July 5, 2005.

DC:424219.1

EXHIBIT

30

ALL-STATE LEGAL®

July 1, 2005
Page 2

       Please feel free to call if you wish to discuss any part of this letter or any other matters.

                        Very truly yours,

Philip Le B. Douglas
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036-4039
(212) 858-1704

Timothy Broas
Winston & Strawn LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
(202) 282-5750

Enclosures

DC:424219.1



**Pillsbury
Winthrop
Shaw
Pittman** LLP

1540 Broadway
New York, NY  10036-4039

Tel 212.858.1000
Fax 212.858.1500
www.pillsburylaw.com

July 1, 2005

Eric Fishman
Phone: 212.858.1745
Eric.fishman@pillsburylaw.com

<u>Via Federal Express</u>

Colin C. Carriere, Esq.
Counsel to the Inspector General
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E.
Suite 3E-400
Washington, D.C. 20002

Re:    Subpoena Issued by the Office of Inspector General to Bombardier Inc.,
        <u>dated May 4, 2005, No. 05-05 (the "Subpoena")</u>

Dear Mr. Carriere:

This firm represents Bombardier Inc. in connection with the Subpoena.

Enclosed please find two CDs containing a scanned copy of materials from Bombardier's technical publications department, including technical manuals and related materials, bates stamped BBD0001821 through BBD0010004.

Sincerely,

Eric Fishman

Enclosure

cc:    Marc-Andre Raymond (w/o attachments)

EXHIBIT
31

300181477v2



Pillsbury
Winthrop
Shaw
Pittman LLP

WINSTON & STRAWN LLP

**Confidential Investigative Communication**
**Disclosure Restricted to Head of Designated**
**Federal Entity Pursuant to 5 U.S.C. App. 3 § 8G(d)**

July 5, 2005

**BY HAND DELIVERY**

Colin C. Carriere, Esq.
Counsel to the Inspector General
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E.
Suite 3E-400
Washington, D.C. 20002

Re:    OIG Subpoena to NeCMSC (No. 05-05)

Dear Mr. Carriere:

As you know, the undersigned represent the separate interests of Alstom
Transportation ("Alstom") and Bombardier Inc. ("Bombardier") in the Northeast
Corridor Maintenance Services Company ("NeCMSC").

Subject to the conditions and objections set forth in our June 20, 2005 letter, we
enclose responsive documents, including Inspection Records, which have been bates
stamped NEC375600 through NEC520061.

EXHIBIT
32

300182084v1

July 5, 2005
Page 2

        Please feel free to call if you wish to discuss any part of this letter or any other matters.

                                    Very truly yours,

Philip Le B. Douglas                Timothy Broas
Pillsbury Winthrop Shaw Pittman LLP  Winston & Strawn LLP
1540 Broadway                       1700 K Street, N.W.
New York, NY 10036-4039             Washington, D.C. 20006-3817
(212) 858-1704                      (202) 282-5750

Enclosures

300182084v1



**Pillsbury
Winthrop
Shaw
Pittman** LLP

1540 Broadway
New York, NY 10036-4039

Tel 212.858.1000
Fax 212.858.1500
www.pillsburylaw.com

July 6, 2005

Eric Fishman
Phone: 212.858.1745
Eric.fishman@pillsburylaw.com

<u>Via Federal Express</u>

Colin C. Carriere, Esq.
Counsel to the Inspector General
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E.
Suite 3E-400
Washington, D.C. 20002

Re:    Subpoena Issued by the Office of Inspector General to Bombardier Inc.,
       dated May 4, 2005, No. 05-05 (the "Subpoena")

Dear Mr. Carriere:

This firm represents Bombardier Inc. in connection with the Subpoena.

Enclosed please find one CD-Rom containing a scanned copy of materials from
Bombardier's technical publications department, including technical manuals and related
materials, bates stamped BBD0010005 through BBD0023761.

Sincerely,

Eric Fishman

Enclosure

cc:    Marc-Andre Raymond (w/o attachments)

EXHIBIT
33
ALL-STATE LEGAL®



**Pillsbury**
**Winthrop**
**Shaw**
**Pittman**

1540 Broadway          Tel 212.858.1000
New York,              Fax 212.858.1500
NY 10036-4039          www.pillsburylaw.com

<u>Confidential Investigative Communication</u>
<u>Disclosure Restricted to Head of Designated</u>
<u>Federal Entity Pursuant to 5 U.S.C. App. 3 § 8G(d)</u>

July 6, 2005

Philip Le B. Douglas
Phone: 212.858.1704
philip.douglas@pillsburylaw.com

<u>**BY FAX**</u>

Colin C. Carriere, Esq.
Counsel to the Inspector General
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E.
Suite 3E-400
Washington, D.C. 20002

Re:    Office of Inspector General ("OIG") Subpoena to
       <u>Bombardier (No. 05-17)</u>

Dear Mr. Carriere:

As you know, we represent Bombardier Inc. ("Bombardier"). We are responding to the subpoena received by Bombardier on June 29, 2005 (the "Subpoena").

<u>General Objections</u>

The following objections are incorporated into the response set forth below:

1.    Bombardier objects to the Subpoena insofar as it calls for the production of documents subject to the attorney-client privilege, the work product immunity doctrine, the joint or common defense privilege, or other privileges whether based upon statute or common law. In the event any such document is produced by Bombardier, its production is inadvertent and does not constitute a waiver of any privilege or immunity.

300182616v2

EXHIBIT
34
ALL-STATE LEGAL®

July 6, 2005
Page 2

    2.    Bombardier objects to the Subpoena insofar as it seeks documents not in Bombardier's possession, custody, or control.

    3.    The Subpoena itself requests that responsive "materials . . . be accompanied by an index identifying the item(s) of the subpoena to which the documents are responsive." For the reasons stated in prior correspondence with your office, Bombardier objects to this request.

    4.    Bombardier objects to any document request that does not limit the time period in which otherwise responsive documents were created. Accordingly, Bombardier will only endeavor to produce responsive, non-privileged documents created in the period January 1, 1994 through May 4, 2005.

    5.    Even as so limited by this letter, the costs of complying with the Subpoena will be prohibitive. Bombardier therefore reserves the right to demand that OIG pay for all associated costs. *E.g., United States v. Friedman*, 532 F.2d 928, 936-38 (3d Cir. 1976); *United States v. Davey*, 426 F.2d 842, 845 (2d Cir. 1970).

### Reservation of Rights

    1.    The fact that Bombardier is willing to produce any particular document or provide responsive information does not constitute an admission that the request is proper, that the information it seeks is within the statutory mandate of OIG as reasonably relevant to the present inquiry or that requests for similar information will be treated in a similar fashion.

    2.    Bombardier's agreement to produce documents in response to the Subpoena is made without waiving, and Bombardier expressly reserves, any and all rights and objections to the disclosure of such documents or the information contained therein in response to a Freedom of Information Act ("FOIA") request.

    3.    Bombardier reserves the right, in its discretion, to redact information from otherwise responsive documents prior to production that is:

        (a)    protected under any exemption to FOIA, 5 U.S.C. 552(b), including, but not limited to, commercial or financial information that may be protected from disclosure under Exemption 4 of the FOIA;

300182616v2

July 6, 2005
Page 3

        (b)      non-responsive;

        (c)      protected by the work product doctrine, the attorney-client privilege or any other applicable privilege or protection, including that for trial preparation materials; or

        (d)      otherwise non-producible.

    4.     By undertaking to produce documents in response to the request, Bombardier is not representing that such documents exist.

    5.     To the extent practicable, documents will be produced as they were maintained in the regular course of Bombardier's business.

    6.     Bombardier reserves the right to amend and supplement its Answers, Responses and Objections to the Subpoena, and to produce additional documents, as it obtains further information through investigation and discovery.

**Instructions (Attachment "A")**

Instruction No. 1

    Bombardier objects to Instruction No. 1 as vague, overbroad and unduly burdensome. Without waiving the foregoing objection, Bombardier is willing to search electronically stored information that is kept in the ordinary course of Bombardier's business in accessible format (*i.e.*, on servers and the hard drives of the personal computers of those employees who were substantively involved in the Acela brake issue that is the subject of the Subpoena), using agreed-upon search terms, for Documents and Communications (as those terms are defined in the Subpoena) responsive to the Subpoena. Bombardier will produce such responsive Documents and Communications in PDF format on compact discs, DVDs, or similar media.

300182616v2