Instruction No. 2

For the reasons stated above, Bombardier respectfully declines your request that "[f]or each document produced, identify the document request(s) to which it is responsive."

Instruction No. 4

In this letter, Bombardier sets forth those aspects of the Subpoena that are believed to be vague or ambiguous.

Instruction No. 5

Bombardier objects to the production of original documents to the extent such a production would duplicate the production of identical copies, violate existing contractual or regulatory requirements or disrupt Bombardier's business. Originals will be preserved.

Instruction No. 6

Bombardier objects to Instruction No. 6 as unduly burdensome but will produce responsive, non-privileged materials in the same order in which they have been kept in the usual course of Bombardier's business.

Instruction No. 9

Bombardier will comply with Instruction No. 9 to the extent the requested information can be obtained without unreasonable effort or cost.

Instruction No. 10

Bombardier objects to instruction No. 10 because it would create an unlimited, ongoing obligation to supply records to the Office of Inspector General. Accordingly, as noted above, Bombardier objects to the production of records created after May 4, 2005.

Requested Documents (Attachment "A")

1. The practical impact of any differences between Request No. 1 in the Subpoena and Request No. 8 in the prior subpoenas are not clear to Bombardier.

Accordingly Bombardier will interpret Request No. 1 as superseding Original Request No. 8, in accordance with your Instruction No. 7 ("To the extent that there exists duplication or overlap between this subpoena and Amtrak IG Subpoena 05-05, please respond to this subpoena"). Further, Bombardier objects to Request No. 1 as overbroad to the extent it calls for documents other than responsive documents relating to the friction brakes on the Acela trailer cars or for documents sent to, or provided by, Bombardier's counsel and pre-litigation consultants.

Please feel free to call if you wish to discuss any part of this letter or any other matters.

Very truly yours,

Philip Le B. Douglas

Jul. 6. 2005 3:23PM No. 5061 P. 2

NATIONAL RAILROAD PASSENGER CORPORATION
Inspector General, Legal Counsel's Office, 10 G Street, NE, Suite 3E400, Washington, DC 20002

*VIA FACSIMILE AND FIRST-CLASS MAIL*




July 6, 2005

Tim M. Broas, Esquire
Winston & Strawn
1700 K Street, N.W.
Washington, D.C. 20006-3817

Philip Le B. Douglas, Esquire
Pillsbury Winthrop Shaw Pittman
1540 Broadway
New York, New York 10036-4039

Dear Messrs. Broas and Douglas:

I was out of town from June 11-29, and was not able, until this past weekend, to review the growing pile of correspondence from you, jointly and singly, regarding compliance by your respective clients with the above-referenced subpoenas. As I understand it, to date your clients have made some production of documents – but appear not to have produced the documents sought by this office on an expedited basis ("expedited documents").[1] This set of facts is all the more troubling given that your clients received subpoenas between May 10 and 19, and, since that time, this office has met with you on three occasions with little notice – May 18, June 2, and June 8 – to consider and offer suggestions to reduce your clients' efforts to search for and produce responsive documents.

Your letters are also troubling because they repeat a dubious argument previously advanced by Mr. Douglas at our June 8 meeting (and challenged at that time) – that there cannot be any search for or review of responsive electronic documents until "we have an agreement on search terms," and that there will only be one search.[2] While I am preparing a detailed, written response to this and some of the other positions advanced in your several letters,[3] it seems to me that your requirement for an agreement on search terms for electronic documents has

---

[1] To the extent your clients have produced the "expedited documents," their refusal to reference the documents produced to the subpoena subparts makes our identification of such documents difficult, and is not consistent with the terms of the subpoena.

[2] I refer to Mr. Douglas' letters of June 20 (at 4 and n.1), and June 23 (at 4-5, and n.1), and to Mr. Broas' letter of June 30 (at 2).

[3] In his letter of June 28, Mr. Carriere briefly addressed some of the issues you raised. My response will supplement, as appropriate, his previous response.

EXHIBIT 35
ALL-STATE LEGAL®

unreasonably delayed your clients' compliance with the subpoenas and deserves immediate, interim response.

Simply, your clients' obligations under the subpoenas to search for and produce responsive electronic documents are independent of any need for agreement on the part of OIG to the search terms. This is consistent with their obligation (generally acknowledged by Mr. Douglas at the June 8 meeting) to conduct interviews with their employees and agents as part of a diligent inquiry into the potential existence and likely location of responsive documents. The OIG, of course, has no present access to these employees and agents, and has no knowledge at this time of your clients' pertinent practices, procedures and events, and little knowledge of the underlying events. If the scope of your clients' initial search for electronic documents is inadequate based on OIG's subsequent review of the paper and electronic documents produced, we can see no principled basis for your clients not being required to supplement their prior search[es] for electronic (and for paper) documents. Your clients are clearly obligated to read the subpoenas reasonably and fairly and conduct reasonable searches to provide the responsive documents. In my admittedly limited research, I have found no basis for Mr. Douglas' demand that the search for electronic documents be conducted "only once" or only with agreement from the OIG regarding the scope and terms of the search. If you have authority for the contention, please promptly provide it for my review.

In the hope of jump-starting what seems to be your clients' unduly delayed production of responsive electronic documents, we offer the following twenty additional search terms for your consideration: KBC; SAB-Wabco; wheel set; wheel set assembly; resonance; natural frequency; fracture; break; fail; failure; failure analysis; engineering report; metallurgical investigation; safety critical; non-catastrophic failure; annulment; Trainset Reliability; Train Set Reliability; non-compliant; and, inadmissible. This office offers these search terms without prejudice to our later argument, based on further information, that your clients' search for responsive electronic documents was inadequate. I also note that, depending on the search engine used, the plural forms may or may not be required to be searched.

We suggest that your clients significantly increase their production rate for the electronic and paper documents responsive to the subpoenas, with particular emphasis on the "expedited documents."

Sincerely,

David Sadoff
Associate Counsel



Pillsbury
Winthrop
Shaw
Pittman LLP

1540 Broadway
New York, NY 10036-4039

Tel 212.858.1000
Fax 212.858.1500
www.pillsburylaw.com

**Confidential Investigative Communication**
**Disclosure Restricted to Head of Designated**
**Federal Entity Pursuant to 5 U.S.C. App. 3 § 8G(d)**

July 7, 2005

Philip Le B. Douglas
Phone: 212.858.1704
philip.douglas@pillsburylaw.com

**BY FAX AND FEDERAL EXPRESS**

Colin C. Carriere, Esq.
Counsel to the Inspector General
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E.
Suite 3E-400
Washington, D.C. 20002

Re: OIG Subpoenas to Bombardier (No. 05-05)

Dear Mr. Carriere:

We are responding to your June 28, 2005 letter to Bombardier. Although you state that your letter is in response to my June 23, 2005 letter, it is all but identical to your June 22, 2005 letter responding to NeCMSC's June 20, 2005 letter. Therefore, rather than further burden the record, Bombardier hereby incorporates by reference all relevant portions of NeCMSC's June 30, 2005 letter to you. We also make the following comments:

1. **June 8 Meeting**

Contrary to your letter, no one at the June 8 meeting informed you of any Bombardier "server malfunction" and, of course, Bombardier never undertook to submit a written document on that subject. Nor have we given you cause to be "unclear . . . whether the server malfunction pertains only to NeCMSC documents." During NeCMSC's June 8 presentation to OIG, Ed Flanders clearly stated that the Memorial Day server incident occurred at NeCMSC's Ivy City facility. You received NeCMSC's written description of the Ivy City server failure on June 28, 2005.

EXHIBIT 36

ALL-STATE LEGAL®

2. **June 27, 2005 Subpoena**

Your letter refers to a "second subpoena to Bombardier". As you know from Bombardier's June 23 and June 28 letters, two OIG subpoenas had been served on Bombardier prior to June 28. We assume that your June 28 letter is referring to a June 28 subpoena, (No. 05-17), which was not received by Bombardier until June 29, 2005. Bombardier's objections to that subpoena was faxed to you on July 6, 2005.

3. **Segregation of "Notice" Records**

Because of the extraordinary effort involved and the implications for applicable privileges, Bombardier respectively declines to segregate "notice" records from other responsive files. See our June 8 and June 28, 2005 letters.

4. **July 28 Production Deadline**

Even if OIG had accepted Bombardier's June 23 objections to the first two subpoenas, it would have been impossible for Bombardier to complete production by the July 28, 2005 deadline established by your June 28 letter. In any case, no production can be complete until the parties' disagreements over the scope and methods of document production are resolved.

Please do not hesitate to contact me with any questions you may have.

Very truly yours,

Philip Le B. Douglas




WINSTON & STRAWN LLP

July 11, 2005

**BY FACSIMILE**

David Sadoff, Esq.
Associate Counsel
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E., Suite 3E400
Washington, DC 20002

Re: Amtrak OIG Subpoena to NeCMSC

Dear Mr. Sadoff:

Thank you for your July 6, 2005 letter to us.[1] We respond as follows:

**Conference with Inspector General**

We too regret that upon return from vacation, you were greeted by a "growing pile of correspondence." If you check the record, however, you will find that each of our letters was either (i) a cover letter for a document production pursuant to one of the seven subpoenas OIG has served on our clients, or (ii) in response to an OIG letter or request for information. We note, moreover, that OIG has directed us to communicate in writing. (6/16/05 Carriere letter at 1).

As you acknowledge, despite this extensive correspondence and three lengthy meetings, the parties have yet to reach agreement on a single issue. Our clients, who have now incurred significant costs with regard to OIG's seven subpoenas and who face the prospect of even greater OIG-imposed costs, cannot permit this situation to continue.

[1] Because OIG has subpoenaed three separate entities, NeCMSC, Bombardier and Alstom, we ask that for the sake of good order, OIG correspond separately regarding each entity or, at least, make it clear which particular subpoena recipient is the subject of a comment or concern.

EXHIBIT 37

We, therefore, request a meeting with the Inspector General himself in an effort to resolve these problems. At the meeting, we will ask the Inspector General to (i) narrow the subpoenas' scope to reasonable limits, (ii) agree that NeCMSC, Bombardier and Alstom are not required to isolate from otherwise responsive files, particular documents that may constitute "notice" of any brake "problem," (iii) clarify ambiguous requests, and (iv) agree to terms for presentation by our clients regarding issues of interest to OIG's investigation.

We will devote the rest of this letter to a more specific response to the issues you have raised.

**NeCMSC Production**

We disagree with your statement that NeCMSC, Bombardier and Alstom have "made some production of documents but appear not to have produced the documents sought by the office on an expedited basis." (Emphasis supplied). Rather than "some" documents, NeCMSC alone has, in fact, provided over 520,000 pages of records. All of these are files that could contain the two categories of records for which OIG has sought expedited production: "(1) contract documents and (2) 'notice records'—those documents or records which discuss or pertain to any information or notice with respect to deficiency or problems with the Acela brakes." (6/16/05 Carriere Letter at 2-3.)[2] In fact, we have been advised that NeCMSC has fully completed production of its relevant "contract documents." Moreover, to the extent we understand your vague request, and subject to our previously stated objections, NeCMSC has provided to you a vast portion of its files in which so-called "notice documents"—to the extent any exist—could be found. Specifically, all but 50 pages of NeCMSC's production so far have been composed of inspection reports and corrective work orders for each of the 20 Trainsets.

The truth of the matter is that NeCMSC has gone to extraordinary efforts to complete document production and to give you the files you request. The only real disagreement between OIG and NeCMSC is who should undertake the needle-in-the-haystack search of these responsive files for any individual documents that OIG considers to constitute "notice" of "any deficiencies or problems with the Acela brakes." To put it simply, once we have provided all files in which such documents might reasonably be found,

---

[2] In doing so, NeCMSC, Bombardier and Alstom have not assumed any obligation to produce any other documents on an expedited basis.

NeCMSC, Bombardier and Alstom will have done their job.[3] It is now OIG's responsibility—particularly in light of your refusal either to clarify or narrow any of OIG's overly broad requests—to determine for itself whether any records are, or are not, "notice" documents.

**Attempts to Expedite the Investigation**

You find it "troubling" that there has been no clarification or narrowing of the subpoenas even though OIG "has met with [NeCMSC, Bombardier or Alstom]" on three occasions ... to consider and offer suggestions to reduce your clients' efforts to search for and produce responsive documents." OIG has no basis for being troubled. In our June 30 letter, we described at some length our clients' fruitless efforts from May 11 to the present to secure OIG's agreement to narrow or clarify the seven subpoenas served on NeCMSC, Bombardier and Alstom. Indeed, despite OIG's prior commitment to Tim Broas and Dana Wordes to limit the subpoenas to the trailer car friction brakes, your June 27, 2005 letter reneged on that self-evidently reasonable reduction in the subpoenas' scope. We do not recollect that OIG made a single proposal to narrow or clarify a subpoena. Can you identify any of the OIG "suggestions" to which your letter refers?

**Search Terms**

As you know, on May 18, 2005, Phil Douglas first asked OIG to provide search terms to retrieve responsive electronic data. (See our June 20, 2005 letter at 5.) Forty-nine days later, OIG has finally provided twenty terms, in addition to those we have proposed. Many of the additional search terms that you have proposed are simply too broad and will not reasonably limit the universe of potentially relevant electronically stored information in order to minimize the burden of the subpoenas. For example, the terms "fracture", "break", "fail", "failure", "failure analysis", "engineering report", "safety critical", "annulment", "Trainset Reliability", "Train Set Reliability", "non-compliant", and "inadmissible" will likely result in thousands of "hits" that have nothing to do with the brake disc issue that is the subject of the subpoenas. We are willing, however, to add the terms "KBC", "SAB-Wabco", "wheel set", "wheel set assembly", "resonance", "natural frequency", "metallurgical investigation", and "catastrophic failure" (as long as none of those terms results in "hits" that are too numerous and not likely to result in the production of responsive information based upon sampling).

---

[3] As we have previously informed you, NeCMSC, Bombardier and Alstom will, at the appropriate time, ask OIG to compensate us for this extraordinary effort.

You say, however, that OIG has "found no basis for Phil Douglas' demand that the search for electronic documents "be conducted only once and only with agreement from OIG regarding the scope and terms of the search" and you ask for our authority for this contention. Numerous authorities support our approach. For example, the "Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production (2004)" (referred to hereafter as the "Sedona Principles"), provide that "[w]hen responding to discovery requests, organizations should define the scope of the data needed to appropriately and fairly address the issues in the case and to avoid unreasonable overbreadth, burden, and cost. Important steps in achieving the goal of reasonably limiting discovery may include ... defining the set of data to be collected by applying reasonable selection criteria, including search terms ... ." Sedona Principles, Comment 6.b (emphasis supplied).

Parties are encouraged to agree upon search terms early in the process. For example, the Sedona Principles (Comment 11.a) state that "[i]n appropriate circumstances, litigants may find it useful to discuss specific selection criteria, including search terms, to be used in searches of electronic data for production ... as early as their Rule 26(f) conference." (Emphasis supplied). Numerous courts have approved such an approach. *See, e.g., Tulip Computers Int'l B.V. v. Dell Computer Corp.*, No. Civ. A. 00–981, 2002 WL 818061, at *4 (D. Del. Apr. 30, 2002) ("Tulip's consultant will search the CD ROM on certain mutually agreed upon search terms") (emphasis supplied); *Zubulake v. UBS Warburg LLC*, No. 02-Civ. 1243, 2004 WL 1620866, at *7-8 (S.D.N.Y. July 20, 2004) (encouraging parties to "negotiate a list of search terms to be used in identifying responsive documents", and to "solicit a list of search terms from the opposing party ... so that it could not later complain about which terms were used") (emphasis supplied).

Because searching for and producing electronically stored information that may be responsive to the subpoenas can be unduly burdensome and prohibitively costly, we have proposed a reasonable approach, which is supported by the aforementioned authorities.

Very truly yours,

Philip Le B. Douglas
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036-4029
(212) 858-1704

Timothy M. Broas
Winston & Strawn LLP
1700 K Street, N.W.
Washington, DC 20006-38176
(202) 282-5750



Pillsbury
Winthrop
Shaw
Pittman LLP

1540 Broadway
New York, NY 10036-4039

Tel 212.858.1000
Fax 212.858.1500
www.pillsburylaw.com

July 12, 2005

Eric Fishman
Phone: 212.858.1745
Eric.fishman@pillsburylaw.com

Via Federal Express

Colin C. Carriere, Esq.
Counsel to the Inspector General
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E.
Suite 3E-400
Washington, D.C. 20002

Re: Subpoena Issued by the Office of Inspector General to Bombardier Inc., dated May 4, 2005, No. 05-05 (the "Subpoena")

Dear Mr. Carriere:

This firm represents Bombardier Inc. in connection with the Subpoena.

Enclosed please find one CD-Rom containing a scanned copy of materials from Bombardier's technical publications department, including technical manuals and related materials, bates stamped BBD0023762 through BBD0036785.

Sincerely,

Eric Fishman

Enclosure

cc: Marc-Andre Raymond (w/o attachments)

300183244v1

ALL-STATE LEGAL®
EXHIBIT
38



Pillsbury
Winthrop
Shaw
Pittman LLP

1540 Broadway
New York,
NY 10036-4039

Tel 212.858.1000
Fax 212.858.1500
www.pillsburylaw.com

**Confidential Investigative Communication**
**Disclosure Restricted to Head of Designated**
**Federal Entity Pursuant to 5 U.S.C. App. 3 § 8G(d)**

Philip Le B. Douglas
Phone: 212.858.1704
philip.douglas@pillsburylaw.com

July 15, 2005

**BY TELEFAX**

David Sadoff, Esq.
Associate Counsel
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E., Suite 3E400
Washington, D.C. 20002

Re: Amtrak OIG Subpoenas to NeCMSC

Dear Mr. Sadoff:

Please be advised that Bombardier considers our July 11, 2005 letter to you to be a confidential investigative communication and that disclosure by your office should be restricted as required by 5 U.S.C. App. 3 § 8G(d). We would appreciate hearing back from you regarding our request for a meeting with the Inspector General. Because of summer vacations, it may be difficult to arrange a mutually convenient meeting time. Bombardier is anxious to discuss with the Inspector General the topics mentioned in our July 11, 2005 letter, including a presentation to him regarding issues of interest to the OIG investigation.

Very truly yours,

Philip Le B. Douglas

cc: Timothy M. Broas, Esq.

EXHIBIT
ALL-STATE LEGAL®
39

300184099v1



Pillsbury
Winthrop
Shaw
Pittman LLP

1540 Broadway
New York, NY 10036-4039

Tel 212.858.1000
Fax 212.858.1500
www.pillsburylaw.com

July 19, 2005

Eric Fishman
Phone: 212.858.1745
Eric.fishman@pillsburylaw.com

Via Federal Express

Colin C. Carriere, Esq.
Counsel to the Inspector General
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E.
Suite 3E-400
Washington, D.C. 20002

Re: Subpoena Issued by the Office of Inspector General to Bombardier Inc., dated May 4, 2005, No. 05-05 (the "Subpoena")

Dear Mr. Carriere:

This firm represents Bombardier Inc. in connection with the Subpoena.

Enclosed please find 3 CD-Roms containing a scanned copy of materials from Bombardier's purchasing department, including purchase orders and related materials, bates stamped BBD0036786 through BBD0046488.

Sincerely,

Eric Fishman

Enclosure

cc: Marc-Andre Raymond (w/o attachments)

300184483v1

ALL-STATE LEGAL®
EXHIBIT
40

ALSTOM

July 21, 2005

Colin C. Carriere, Esq.
Office of Inspector General
National Railroad Passenger Corp.
10 G Street N.E., Suite 3E-400
Washington, D.C. 20002

Re: Subpoena Duces Tecum 05-07 and 05-18

Dear Mr. Carriere:

In a letter dated June 28, 2005, we transmitted nine CDs in response to the referenced subpoenas. We would like to take the opportunity to clarify some "bugs" affecting CD's ATI 1 and ATI 2, and to transmit a new CD to replace ATI 3 through ATI 9.

**ATI 1 and ATI 2**

CDs ATI 1 and ATI 2 contained pages that were Bates stamped ATI 00001 – ATI 00517 and ATI 00517 – ATI 01387, respectively. As noted previously, two documents were inadvertently stamped with the same Bates number, ATI 00517. For ease in reference, we plan to refer to the duplicate document, namely the first document on CD ATI 2, as "ATI 00517.001."

In addition, we discovered that page number ATI 00267 was inadvertently skipped during the Bases numbering process. As a consequence, the pdf files following the skipped page are off by one number. We intended to name each pdf file with the number of the first page of the document. For example, file "0000017.pdf" contains a document starting on page ATI 00017. Since page number ATI 00267 was skipped, the next document in the series, file "00000270.pdf", actually starts with page ATI 000271 instead of with page ATI 000270. In order to make the file naming system match the sequential numbers, we have scanned a blank page that says "missing page ATI 000267." If you are using document management software to review these files, you may wish to take similar steps.

**ATI 3 through ATI 9**

CDs ATI 3 through 9 contained copies of maintenance manuals that we copied from the original CDs in ALSTOM's possession. The manuals were not Bates stamped. We are now replacing the six, unnumbered CDs with a single CD labelled "ATI 001388 - TI 023281." The enclosed

ALSTOM Transportation Inc.
353 Lexington Avenue, Suite 1100
New York, NY 10016
Tel: (212) 557-7260
Fax: (212) 972-4404
dana.wordes@transport.alstom.com



replacement CD has Bates-stamped pages. We trust that this will assist you in referring to specific documents.

We will provide additional documents as we complete our review. Please feel free to call me directly if you have any questions. In addition, as we agreed, the original documents will be available for your inspection at ALSTOM's facility in Hornell, New York.

Very Truly Yours,

Dana Wordes

Dana Wordes
Associate General Counsel

cc: Timothy Broas, Esq. w/out enclosure