

Pillsbury
Winthrop
Shaw
Pittman

WINSTON & STRAWN LLP

**Confidential Investigative Communication**
**Disclosure Restricted to Head of Designated**
**Federal Entity Pursuant to 5 U.S.C. App. 3 § 8G(d)**

October 12, 2005

**BY FEDERAL EXPRESS**

Colin C. Carriere, Esq.
Counsel to the Inspector General
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E.
Suite 3E-400
Washington, D.C. 20002

Re:   OIG Subpoena to NeCMSC (No. 05-05)

Dear Mr. Carriere:

The undersigned represent the separate interests of Alstom Transportation ("Alstom") and Bombardier Inc. ("Bombardier") in the Northeast Corridor Maintenance Services Company ("NeCMSC").

On July 1, 5 and 22, 2005, NeCMSC produced copies of electronically maintained periodic inspection records (Production Nos. NEC0227487 - NEC0542348) for the period May 2003 – May 2005. Prior to producing these materials, NeCMSC used electronic search terms to eliminate from the production almost 35,000 pages of clearly non-responsive files. This was accomplished by electronic searches directed at file path names that did not concern carrier car friction brakes.

This effort involved sequentially phased electronic searches. In order to comply with your Office's request for expedited production, the results of these searches were



EXHIBIT
61

300193461v2

October 12, 2005
Page 2

provided to you upon the completion of a particular search phase. An unintended consequence of this procedure was that some of the files were produced in the order retrieved during these phased searches rather than in the order maintained on NeCMSC's servers. Most files, however, remained in the order maintained by NeCMSC and the contents of no particular file were disturbed.

Nevertheless, in order to avoid any complaint that these records were not produced as kept in the ordinary course of business, NeCMSC hereby produces these same periodic inspection reports in the order in which they are found on the NeCMSC servers. (Production Nos. NEC0602714 - NEC0917575). Because the enclosed production is duplicative of NeCMSC's July production, there is no need for your Office to review that prior production. Indeed, we note from Mr. Weiderhold's Petition in the District Court that your Office's review of inspection reports has to date been limited to an earlier group of inspection records, namely, those "for the period prior to March 2003." Weiderhold Ex. 21 ¶ 5(a).

If you have any questions, please feel free to contact the undersigned.

Very truly yours,

Philip Le B. Douglas
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036-4039
(212) 858-1704

Timothy Broas
Winston & Strawn LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
(202) 282-5750

Enclosure

300193461v2

# ALSTOM

October 12, 2005

Colin Carriere
National Railroad Passenger Corp.
Office of Inspector General
10 G Street NE, Suite 3E-400
Washington, DC 20002

Dear Mr. Carriere:

For your convenience, I am sending you this list of all the documents included on the CD with ALSTOM documents Bates stamped from number 024913 through number 025373. Unfortunately, the documents were copied into one file on the CD. I hope this list will help you to navigate the file in order to retrieve the information you require.

Sincerely,

Beth Hallo
ALSTOM Transportation Inc.

ALSTOM Transportation Inc.
353 Lexington Avenue, Suite 1100
New York, NY 10016
Tel: (212) 557-7262
Fax: (212) 972-4404



EXHIBIT 62

## List of Documents Bates Stamped 024913 - 025373 for Amtrak OIG

| | | |
|---|---|---|
| 24913 | | Title Page: Misc. Cover Letters |
| 24914 | 24915 | Meeting Notes-MOC 0947 |
| 24916 | 24924 | Repair Schedule |
| 24925 | 24931 | Progress Review Mtg Memo |
| 24932 | 24941 | Overhaul Plan Mtg |
| 24942 | 24992 | Trainset Overhaul Mtg |
| 24995 | | TIT PG: ACTC Mgmt Svc Contractual Fldr |
| 24996 | 24998 | Changes to Wheel Inspection |
| 24999 | | TIT PG: ACTC Folder |
| 25000 | 25019 | Bombardier invoice |
| 25020 | | TIT PG: ACTC Trainset Contractual |
| 25021 | 25022 | Open Action Items 21/22 |
| 25023 | | Knorr Brake Parts |
| 25024 | | Brake System Repair Training |
| 25025 | | Scored Brake Disc |
| 25026 | | Hegenscheidt MFD |
| 25027 | 25028 | Cracked Brake Discs |
| 25029 | | TIT PG: ACTD Trainset Drawing |
| 25030 | | Knorr ASU/BSU |
| 25031 | | Knorr ASU Drawing Submittal |
| 25032 | | TIT PG: ACTE Trainset Engineering |
| 25033 | 25034 | Knorr Special Tools |
| 25035 | | Brake Unit Fatigue |
| 25036 | | Brake System Endurance |
| 25037 | | Knorr Brake System |

| | | |
|---|---|---|
| 25038 | | TIT PG: CATE Trainset Contractual |
| 25039 | 25042 | Brake Systems Heavy Repair Training |
| 25043 | | TIT PG: CATE Trainset Drawings |
| 25044 | 25062 | Knorr ASU/BCU Revised |
| 25063 | | TIT PG: CATE Trainset Engineering |
| 25064 | | Heavy Repair Lesson Plans |
| 25065 | 25069 | Open Tech Items 44/47/48 |
| 25070 | 25071 | Acela Metal Pick Up & Disc Scoring |
| 25072 | 25076 | Failure Analysis Report |
| 25077 | 25104 | Acela Caliper & Tread Brake |
| 25105 | 25108 | Acela Service Bulletin |
| 25109 | | Final Version Material Masters |
| 25110 | | MGU117/MEU110 |
| 25111 | | TIT PG: Design Freeze Discussions |
| 25112 | | Design Freeze Discussions |
| 25113 | 25114 | Ride Quality Test Report |
| 25115 | 25116 | Action Plan - Lateral Acceleration |
| 25117 | 25118 | Test Report - Trainset |
| 25119 | 25120 | Jacques Lapare lttr |
| 25121 | | Bombardier/Jane Garden fax |
| 25122 | | Jacques Lapare lttr |
| 25123 | | BLANK |
| 25124 | 25126 | Production/Delivery/Acceptance Schedules |
| 25127 | 25129 | Formalization of Design Freeze |
| 25130 | | Bombardier Memo Design Freeze |
| 25131 | | Formalization Draft |

| | | |
|---|---|---|
| 25132 | 25133 | List of Open Engineering Issues |
| 25134 | | EMI Summary |
| 25135 | | Lenne/Bouteloup email |
| 25136 | | Lenne/Elgrishi email |
| 25137 | | Schedule Closing Key Issues |
| 25138 | | Mardochee/Bikard email |
| 25139 | 25141 | Open Issues Draft |
| 25142 | 25148 | Amtrak Discussion emails w/ attachments |
| 25149 | 25155 | Lenne/Bourden email |
| 25156 | 25158 | Handwritten notes, illegible |
| 25159 | 25161 | Bench Test Equipment Meeting |
| 25162 | 25163 | Philippe/Mardochee email |
| 25164 | 25165 | Production/Delivery/Acceptance Schedules |
| 25166 | 25167 | Key Open Issues |
| 25168 | | Closing of Issues |
| 25169 | 25185 | Preliminary Certificate of In-Plant Inspection |
| 25186 | 25187 | Key Open Issues - Scheduling |
| 25188 | 25189 | Key Open Issues |
| 25190 | 25197 | Amtrak's Response |
| 25198 | 25220 | NeC Final Tools List |
| 25221 | 25226 | Conclusions from Amtrak |
| 25227 | | Bench Test Equipment Mtg Annex 4 |
| 25228 | | Annex 5 |
| 25229 | 25232 | List of Drawings |
| 25233 | 25235 | Annex 6 |
| 25236 | 25242 | Annex 7 |

| | | |
|---|---|---|
| 25243 | | Annex 11 |
| 25244 | 25245 | Annex 12 |
| 25246 | 25256 | NeC Special Tools List |
| 25257 | 25259 | Appendix 13-a |
| 25260 | 25261 | Annex 15 |
| 25262 | 25264 | Annex 17 |
| 25265 | 25267 | Annex 18 |
| 25268 | 25269 | Annex 19 |
| 25270 | 25274 | Annex 20 |
| 25275 | 25281 | Annex 21 |
| 25282 | 25283 | Annex 22 |
| 25284 | | Annex 2 |
| 25285 | | Conducted EMI Loco/Trainset |
| 25286 | 25294 | Annex 3 |
| 25295 | | Annex 4 |
| 25296 | 25301 | Annex 5 |
| 25302 | 25305 | Annex 6 |
| 25306 | 25312 | Annex 7 |
| 25313 | 25314 | Annex 8 |
| 25315 | 25318 | Annex 9 |
| 25319 | 25321 | Annex 10 |
| 25322 | 25331 | Annex 11 |
| 25332 | 25344 | Annex 12 |
| 25345 | 25350 | Appendix 13-a&b |
| 25351 | | Annex 14 |
| 25352 | 25364 | Annex 15 |

| | | |
|---|---|---|
| 25365 | 25370 | Annex 16 |
| 25371 | 25373 | Annex 17 |



**Pillsbury
Winthrop
Shaw
Pittman** LLP

1540 Broadway
New York, NY 10036-4039

Tel 212.858.1000
Fax 212.858.1500
www.pillsburylaw.com

**CONFIDENTIAL INVESTIGATIVE COMMUNICATION
DISCLOSURE RESTRICTED TO HEAD OF DESIGNATED
FEDERAL ENTITY PURSUANT TO 5 U.S.C. APP. 3 § 8G(d)**

October 13, 2005

Philip Le B. Douglas
Phone: 212.858.1704
philip.douglas@pillsburylaw.com

<u>Via Federal Express</u>

Colin C. Carriere, Esq.
Counsel to the Inspector General
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E.
Suite 3E-400
Washington, D.C. 20002

Re:  <u>Subpoena Issued by the Office of Inspector General to Bombardier Inc.,
dated May 4, 2005, No. 05-05 (the "Subpoena")</u>

Dear Mr. Carriere:

Bombardier Inc. has completed its review of electronic documents maintained by brake specialist Sylvain Labbé, who performed brake-related services on the Acela project for both Bombardier and NeCMSC.

Based on that review, Bombardier is hereby producing Acela brake-related emails sorted chronologically from Mr. Labbé's Microsoft Outlook application (Production Nos. BBD0166941 - BBD0206884).

Additional electronic documents maintained by Mr. Labbé (*i.e.*, Acela brake-related emails from Mr. Labbé's Lotus Notes application and certain electronic documents other than emails) are still being processed and will be produced once processing is complete.

Please do not hesitate to contact the undersigned if you have any questions.

Sincerely,

Philip Le B. Douglas

Enclosures

cc:  Marc-Andre Raymond (w/o attachments)

EXHIBIT 63

300193883v1



Pillsbury
Winthrop
Shaw
Pittman LLP

WINSTON & STRAWN LLP

**Confidential Investigative Communication**
**Disclosure Restricted to Head of Designated**
**Federal Entity Pursuant to 5 U.S.C. App. 3 § 8G(d)**

October 18, 2005

**BY FEDERAL EXPRESS**

Colin C. Carriere, Esq.
Counsel to the Inspector General
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E.
Suite 3E-400
Washington, D.C. 20002

Re:   OIG Subpoena to NeCMSC (No. 05-05)

Dear Mr. Carriere:

The undersigned represent the separate interests of Alstom Transportation ("Alstom") and Bombardier Inc. ("Bombardier") in the Northeast Corridor Maintenance Services Company ("NeCMSC").

On August 17, 2005, NeCMSC produced various documents (Production Nos. NEC0542349 - NEC0602713) including invoices, purchase orders, technical manuals, and certain Corrective Work Orders and Daily Inspection Report materials which had not been previously produced.



EXHIBIT
64

DC:438876.1

October 18, 2005
Page 2

During the course of our review and coordination of the 60,364 pages of documents involved in the August 17th production, twenty-four pages of invoices and purchase orders that had been identified for production were inadvertently omitted from the documents that were delivered to your office.[1]

We have only recently learned of this error. In response to this unintended omission, subject to the conditions and objections set forth in our June 20, 2005 letter, we hereby enclose:

- Disk # NEC0038, containing responsive invoices and purchase orders (Production Nos. NEC0917576 - NEC0917599).

If you have any questions, please do not hesitate to contact the undersigned.

Very truly yours,

Philip Le B. Douglas (TMB)
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036-4039
(212) 858-1704

Timothy Broas
Winston & Strawn LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
(202) 282-5750

Enclosure

---

[1] Had the 24 inadvertently omitted pages been included, the first 6 pages would have appeared on Disk NEC0032 (after Production No. NEC0557031) and the last 18 pages would have appeared on Disk NEC0031 (prior to Production No. NEC0542637).

2



**Pillsbury
Winthrop
Shaw
Pittman**

1540 Broadway
New York, NY 10036-4039

Tel 212.858.1000
Fax 212.858.1500
www.pillsburylaw.com

**CONFIDENTIAL INVESTIGATIVE COMMUNICATION
DISCLOSURE RESTRICTED TO HEAD OF DESIGNATED
FEDERAL ENTITY PURSUANT TO 5 U.S.C. APP. 3 § 8G(d)**

October 18, 2005

Philip Le B. Douglas
Phone: 212.858.1704
philip.douglas@pillsburylaw.com

<u>Via Federal Express</u>

Colin C. Carriere, Esq.
Counsel to the Inspector General
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E.
Suite 3E-400
Washington, D.C. 20002

Re:   Subpoena Issued by the Office of Inspector General to Bombardier Inc., dated May 4, 2005, No. 05-05 (the "Subpoena")

Dear Mr. Carriere:

As noted in my letter dated October 13, 2005, Bombardier Inc. has completed its review of electronic documents maintained by brake specialist Sylvain Labbé, who performed brake-related services on the Acela project for both Bombardier and NeCMSC.

Based on that review, Bombardier is hereby producing Acela brake-related electronic documents (other than emails) maintained by Mr. Labbé (Production Nos. BBD0206885-BBD0234748), sorted by directory order.

Additional electronic documents maintained by Mr. Labbé (*i.e.*, Acela brake-related emails from Mr. Labbé's Lotus Notes application) are still being processed and will be produced once processing is complete.

Please do not hesitate to contact the undersigned if you have any questions.

Sincerely,

Philip Le B. Douglas

Enclosures

cc:   Marc-Andre Raymond (w/o attachments)



EXHIBIT 65



United States Government Accountability Office
Washington, DC 20548

March 4, 2005

The Honorable John F. Tierney
House of Representatives

Subject: *Activities of the Amtrak Inspector General*

Dear Mr. Tierney:

In a prior report[1] we suggested that the consolidation of certain offices of inspectors general (IG) could strengthen the independence, efficiency, and effectiveness of the IGs in the federal government. Based on the potential for benefits and the similarities in their basic missions, we identified the Amtrak Office of Inspector General and the Department of Transportation (DOT) Office of Inspector General as among those Congress might consider for consolidation. We reported that by consolidating the office of the Amtrak IG with the larger DOT IG office, the resulting office would have a larger budget and more staff with which to achieve its mission. Potential benefits include an increased ability to improve the allocation of human and financial resources and to attract and retain an adequate and skilled workforce. We concluded that consolidation of smaller IG offices, if implemented properly with specific plans to mitigate potential weaknesses, is a means of achieving economies of scale and greater independence and of providing critical mass and range of skills, particularly given the ever increasing need for technical staff with specialized skills.

This report responds to your request that, building on our prior report, we review the nature of the audit and investigative activities of the Amtrak IG and further consider the potential for consolidating the Amtrak IG office with the DOT IG office. As agreed with your staff, we are providing information on the types of investigations pursued by the IG, the subjects that are the focus of IG investigations, the sources of allegations and information that led to investigations, and the results of the IG's investigations. We also agreed to report any trends or changes indicated by our analysis of Amtrak IG activity. In addition to investigations, we agreed to provide information on the types of audits conducted and audit reports issued by the IG and on the overall results of these audit efforts. We also identified any trends indicated by the audit results. We also agreed to discuss specific information in the context of our previous report regarding the potential for consolidating the Amtrak and DOT IG offices.

---

[1] GAO, *Inspectors General: Office Consolidation and Related Issues*, GAO-02-575 (Washington, D.C.: Aug. 15, 2002).

EXHIBIT 66

GAO-05-306R Activities of the Amtrak IG

**Results in Brief**

We found that, consistent with an increase in investigative budgets and staff, the number of investigations opened by the Amtrak IG increased by 29 percent over the 5-year period we reviewed. This increase was mostly in cases directed at fraud, theft, embezzlement, and other criminal activity by Amtrak employees. Our review of closed investigations over a 3-year period that included an 80 percent increase in the IG's fiscal year 2003 budget showed that both Amtrak union employees and Amtrak management officials were increasingly the subjects of investigations. However, as the IG's overall investigative activity increased, the Amtrak union employees as subjects grew as a percentage of total investigations while Amtrak management as subjects remained mostly constant. Also, for these 3 years, both Amtrak union employees and Amtrak management increased as the sources of allegations leading to investigations. As a total of closed investigations, Amtrak union employees increased as sources of allegations slightly more than Amtrak management.

Regarding audit activity, the number of Amtrak IG audits has not changed significantly over the 5-year period, but there has been a discernable shift toward audits focused on internal operations, with fewer procurement-related audits. The IG stated that this change in focus stems from the office's perception of increased risk associated with cash transactions and ineffective controls as indicated by the increase in investigative cases.

Consistent with the conclusions of our previous report, consolidation would likely provide opportunities to strengthen the ability of the combined Amtrak and DOT IG offices to improve the allocation of human and financial resources and to attract and retain a workforce with the talent, multidisciplinary knowledge, and up-to-date skills needed to ensure that the IG's office is equipped to achieve its oversight mission. Economies of scale and an enhanced critical mass of skills and resources could be provided by the relative size of the DOT IG office providing oversight. In addition, consolidation would enhance the independence of Amtrak oversight. At the same time a targeted plan that addresses the unique characteristics of Amtrak and the resulting needs for oversight would need to be put in place if the DOT and Amtrak IG offices were consolidated, in order to mitigate the potential risk of a loss of oversight in significant areas related uniquely to Amtrak. Amtrak is increasingly being viewed in the context of an overall transportation strategy involving highways, air travel, railroads, and environmental issues. Consolidation could serve to strengthen IG capacity to address these issues in that context.

**Scope and Methodology**

We obtained information about the Amtrak IG's investigations and audits from the IG's most recent 5 years of semiannual reports to Congress covering fiscal years 2000 through 2004. From this information we summarized the categories used by the IG to identify investigative cases opened over this period, identified trends or significant changes in the investigations, and summarized the results. We obtained additional information from the IG's closed investigative case files for the 3 fiscal years 2002 through 2004, to identify the subjects of investigations and the sources of the information leading to investigations. This allowed us to identify any significant trends or changes in the subjects of investigations and in the sources of the allegations leading to investigations over this period. Open case files were not reviewed to avoid any impairment to the integrity of the investigations for possible future prosecution. The information from closed investigations could vary from that found in open cases. This 3-year period was selected due to the arrival of a new Amtrak CEO in May 2002 and an 80 percent increase in the IG's budget in fiscal year 2003.

We also reviewed the semiannual reports to obtain information about the focus of the IG's audits and to identify any significant trends or changes in the audits over fiscal years 2000 through 2004. We selected individual audit reports to assist in determining any trends in reporting and used IG planning and budget documents to analyze changes in IG resources. We interviewed Amtrak and DOT IG officials regarding the nature of the audit and investigative activities in their offices. We also obtained information related to the Amtrak IG and DOT IG offices and analyzed that information in the context of our previous report that addressed the potential for consolidating IG offices across the federal government. In addition, we obtained the views of both the Amtrak and DOT IGs on the potential effects of consolidating their offices. We performed our audit from July 2004 through January 2005 in accordance with U.S. generally accepted government auditing standards. We provided draft copies of this report to the Amtrak IG for comments, which are included in their entirety in this report along with our response. The DOT IG was briefed on the contents of this report but provided no formal comments.

**Background**

Amtrak was created by the Rail Passenger Service Act of 1970 to provide intercity passenger rail service because railroads existing at that time found such service unprofitable. However, Amtrak's financial condition has never been strong and it has been on the verge of bankruptcy several times. With a history of operating losses, Amtrak is highly dependent on federal government subsidies to sustain its operations. To illustrate, while Amtrak had estimated ticket sales of about $1.3 billion in fiscal year 2002 and about $1.2 billion in fiscal year 2003, Amtrak reported net operating losses of approximately $1.1 billion and $1.3 billion, respectively, for these years.