November 18, 2005
Page 7

    a.  At the Inspector General's request, the parties will agree on a search
protocol similar to that described in footnote 2 of this letter (the
"Agreed Search Terms").  Respondents will then employ that protocol
to conduct an electronic search of the Bombardier and Alstom
Databases.  Provided that the number of documents identified by such
a search is reasonable in number, Respondents will review and
produce any non-privileged pre-April 14, 2005 documents regarding
broken spokes.  If the number of such documents is unreasonably
large, the parties will agree to narrow the Agreed Search Terms and a
second electronic search will occur; and

    b.  At the request of the Inspector General, an employee of his office may
be physically present when the first or second electronic search is
conducted.  A printout of the names, but not the contents, of files
identified by this procedure will be provided to the Inspector General.
The contents of the documents identified on the printout will be
reviewed for privilege and responsiveness by Respondents outside of
the presence of the Inspector General's staff member.  Any responsive,
non-privileged pre-April 14, 2005 document relating to a broken spoke
in a friction brake disc will be produced to the Inspector General after
a reasonable period of time.

You are also concerned that "[m]ost of the documents produced are spreadsheets
and reports of which only a portion of their contents appears on each separate Bates-
numbered, TIFF-imaged, document page."  As you know, Respondents have proven by
sworn evidence that these records were produced consistently with industry standards.
Drury Dec. ¶¶ 2-6; Hansen Dec. ¶ 3.  Respondents recognize, however, that large
spreadsheets, even when produced in conformity with industry standards, are difficult to
review.  If the Inspector General provides us with the production numbers of those
spreadsheets deemed important to the investigation, Respondents will endeavor to
reproduce those records in a more useable format.

### C.    Production of Non-Responsive Documents

Respondents acknowledge that some of the files we have produced contain
individual documents that may not be responsive to any particular subpoena request.  We
respectfully disagree, however, that Respondents have "water[ed] their production . . .
with non-responsive documents".

November 18, 2005
Page 8

From our very first meetings with Mr. Weiderhold's staff, Respondents have been clear that they would be producing files in which any Notice Documents are likely to be found, but given the unacceptable delay and cost involved, could not review those files to ensure that only Notice Documents were produced. Resp. Mem. at 19; Douglas Dec. ¶¶ 8-9. In addition, to comb through one million pages of potentially responsive records in order to, as you now suggest (p. 4 n.2), "exclude multiple copies of the same documents", would exponentially increase the duration and expense of document production. In any event, Respondents' Memorandum and their supporting declarations and affidavits make it clear that, where practicable, Respondents went to reasonable lengths to exclude non-responsive records. Resp. Mem. at 20-21; Broas Dec. ¶¶ 5-9; Douglas Dec. ¶ 21.

We believe that in all of our correspondence and briefing of this fundamental problem, the Inspector General's office has never provided a practical suggestion as to how the one million pages of potentially responsive files might be reduced only to Notice Documents. Respondents respectfully disagree with your assertion that "[f]rom our first meetings with you, the Inspector General's staff "suggest[ed] alternatives such as on-site document review prior to production" (emphasis in original) would have reduced the number of records reviewed by the Inspector General's Office. *First*, Respondents do not believe that Mr. Weiderhold's staff made any such suggestion prior to filing the Petition. Indeed, the Inspector General never even responded to our written request for any offer by his staff to ease document production. *Compare* Resp. Ex. 37 at 3, Resp. Ex. 39 *with* Resp. Ex. 42 at 2. *Second*, the Inspector General was never denied on-site access to Respondents' files.[7] *Third*, on-site inspection of documents – be it at Ivy City, upstate

---

7   To the contrary, on several occasions in April 2005, Mr. Weiderhold's investigators came to NeCMSC's Ivy City facility, obtained a number of original records and conducted *ex parte* interviews of NeCMSC witnesses. Resp. Ex. 29 at 2. Between these on-site visits and your November 10, 2005 letter, Mr. Weiderhold's representatives never sought, and thus were never denied, on-site access to any documents. To the contrary, Respondents repeatedly invited the Inspector General to review documents at their facilities. For example, at their June 2, 2005 meeting with Mr. Weiderhold's staff, Tim Broas and Dana Wordes invited the Inspector General's staff to Hornell, New York for on-site review. At the June 8, 2005 meeting, Phil Douglas asked the Inspector General's staff whether on-site document review was desired. Ms. Wordes repeated Alstom's invitation to on-site inspections in her June 28, July 21 and 28, and August 22, 2005 letters. Resp. Exs. 27, 41, 45, 52. Although Mr. Weiderhold's representatives stated that they might desire on-site reviews, no one from that office ever followed up with a specific request. Respondents, moreover, were never instructed to produce their records on-site. To the contrary, each of the seven subpoenas was expressly "returnable at Amtrak's Office of the Inspector General". Resp. Exs. 1-7 (emphasis supplied). There was no complaint from the Inspector General when Respondents informed his staff that they would "respond to all proper

(... continued)

November 18, 2005
Page 9

New York or Quebec – would not have reduced the number of documents reviewed. Whether on-site or not, Mr. Weiderhold's reviewers would, in any event, have had to go through the million pages of potentially responsive documents. Our delivery of these same records directly to your office saved the Inspector General the considerable time and expense of having large teams on site for indefinite periods in Quebec, New York and Ivy City.

Nor do we agree with your complaint (p. 4) that the records produced are not responsive because "they do not contain facts comprising . . . 'notice'" of cracked disc spokes. As you know from Respondents' Memorandum, six witnesses have searched their recollections and/or relevant files and have sworn that they have no evidence of a broken spoke problem prior to April 14, 2005. Behety Aff. ¶ 4; DeMarco Dec. ¶ 4; Labbé Dec. ¶ 7; Miclette Dec. ¶¶ 6-7; Oakes Dec. ¶¶ 5-6; Wochele Aff. ¶ 4. Under your logic, therefore, Respondents would have been justified in producing nothing.

With this as background, we respond to your questions as follows:

### 1. Will Respondents' Future Production Be Limited to Documents Referring to "Disc Spoke Problems"?

Because Bombardier has now determined that the Oakes Files do not contain evidence of pre-April 14, 2005 "notice" of a broken spoke problem, Respondents have completed their production.[8]

### 2. What "Efficient and Effective Measures" Could Eliminate All Records Except those Providing Notice of "Disc Spoke Problems"?

Based on the six sworn statements provided to the Inspector General and an extensive review of the Knorr correspondence, Labbé and Oakes Files, Respondents do not believe that anyone in a position to know had notice of a pre-April 14, 2005 broken spoke problem. Resp. Mem. at 27. We respectfully suggest, therefore, that based on these same sworn statements, the Inspector General would be justified in concluding that

---

(... continued)

    document requests by delivering responsive, non-privileged materials to your custody." *E.g.* Resp. Exs. 15 at 2; 18 at 2.

[8]  As part of an overall settlement of this dispute, the parties, of course, may agree to the production of additional records.

November 18, 2005
Page 10

none of the one million pages produced by Respondents contain contrary evidence. The Inspector General, however, has every right to sample or audit for any contrary evidence the one million pages of records received from Respondents. Such an audit or spot-check might reasonably be limited to the Knorr correspondence files and those of the brake specialists, Labbé and Oakes. These constitute approximately 25% of the total production.[9]

### D.    Respondents' Settlement Proposals

Your letter asks us to list Respondents' proposals to narrow or resolve the disputes. To date, the following settlement proposals remain outstanding:

1.    Respondents are willing to stipulate that a timely withdrawal of any erroneous allegations filed with the Court would be "without prejudice". Resp. Mem. at 3-22, 25-26; Douglas 10/28/05 letter.

2.    Respondents propose that they satisfied Mr. Weiderhold's request that "based on Respondents' superior knowledge, ability to interview knowledgeable personnel and use of document organization systems," they identify any documents providing notice of a problem with spokes on Acela brakes by proffering testimony from the six witnesses that they have no knowledge of such notice. Resp. Mem. at 26-28.

3.    Respondents propose that they have satisfied the Inspector General's demand for indexes by providing Respondents' Ex. 68. Resp. Mem. at 28.

4.    Respondents have offered to provide the following voluntary assistance to the investigation:

---

[9]    We understand that the Inspector General's inspectors are skilled in sampling and other auditing techniques. *See* President's Council on Integrity and Efficiency & Executive Council on Integrity and Efficiency, Inspection and Evaluation Committee, *Quality Standards for Inspections* (Jan. 2005) at App. 2 (available at http://www.ignet.gov/pande/standards1.html); *cf.* GAO-03-673G, *Government Auditing Standards* 8.11 (noting that "when sampling significantly supports auditors' findings," they should "describe the sample design and state why it was chosen, including whether the results can be projected to the intended population.").

November 18, 2005
Page 11

- If the Inspector General continues to have difficulty locating a particular document or has reasonable questions regarding Respondents' production, Respondents will in good faith provide reasonable assistance to his staff.

- In the event Mr. Weiderhold's staff desires training in the use of document management programs, Respondents, at their own cost, will provide training for up to four of the Inspector General's staff members.

Resp. Mem. at 29.

5. In this letter, Respondents have offered to assist the Inspector General's office with its spreadsheet difficulties, conduct additional electronic searches and to execute a "certificate of compliance" describing Respondents' actual production.

6. Respondents have asked that the Inspector General voluntarily release friction brake discs for root cause analysis. Resp. Mem. at 30; 11/14/05 Broas/Douglas letter.

7. Respondents have asked that the Inspector General provide assurances that he has, and will, not disclose investigative information to Amtrak, other than for strictly investigative purposes. *See* Resp. Mem. at 1, 34-35.

8. Depending on whether all other outstanding issues are settled, Respondents are willing to forego their demands for a hearing (Resp. Mem. at 1-3, 36), compensation (*id.* at 30-31), sanctions (*id.* at 31) and recusal. *Id.* at 33-35.

\* \* \*

In conclusion, we appreciate the spirit of compromise evident in your letter and look forward to full, frank and confidential settlement discussions. We hope that Mr. Weiderhold recognizes Respondents' gesture of goodwill in first submitting to him, rather than the Court, their extensive evidence of the serious errors made in his name. We also ask that the Inspector General accept – in light of the six sworn statements proving Respondents' lack of knowledge of the broken spoke problem – that their past

November 18, 2005
Page 12

disagreements have not been the result of any lack of cooperation, but rather an honest concern over the delays and costs implicit in certain of Mr. Weiderhold's demands.

In that spirit, Respondents look forward to working with you. We suggest that a face-to-face, "off-the-record" meeting is the most efficacious means of closing out any issues that separate us. Rather than dwelling over past disagreements, it would be most constructive for the parties to limit their comments to the issues before them.

Very truly yours,

Philip Le B. Douglas
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036-4039
(212) 858-1704

Timothy M. Broas
Winston & Strawn LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
(202) 282-5750

JOB STATUS REPORT

TIME : 12/22/2005 11:47
NAME : PILLSBURY WINTHROP
FAX# : 212-858-1713
TEL# :
SER.# : 000004057725

DATE,TIME          12/22  11:46
FAX NO./NAME       912029064695
DURATION           00:00:19
PAGE(S)            02
RESULT             OK
MODE               STANDARD
                   ECM



Pillsbury
Winthrop
Shaw
Pittman LLP

1540 Broadway
New York, NY 10036-4039
Tel 212.858.1000 | Fax 212.858.1500
www.pillsburylaw.com

## FACSIMILE

Century City
Houston
London
Los Angeles
New York
Northern Virginia
Orange County
Palo Alto
Sacramento
San Diego
San Diego-North County
San Francisco
Silicon Valley
Stamford
Sydney
Tokyo
Washington DC

Total Pages: (including cover)

| | | |
|---|---|---|
| Date: | **December 22, 2005** | User No: |
| From: | **Philip Douglas** | Phone No: **212-858-1704** |
| | | C/M No: |
| To: | **David Sadoff** | Phone No: 202-906-4355 |
| Company: | | Fax No: 202-906-4695 |
| Confirm? | | Confirmed by: |

Comments:



EXHIBIT
77

**Confidential Investigative
& Settlement Communication
Disclosure Restricted to
Head of Designated Federal Entity
Pursuant to 5 U.S.C. App. 3 §8G(d)**

## INDEX OF TEST SEARCH RESULTS
### 12/22/05

List of numbers of hits across the Labbé production.

Now that we are experimenting with searches that (i) lack project identifiers and (ii) include broad, multi-purpose terms such as "condition", "risk" and "spoke", it will become more important to make sure there is at least some proximity between the brake disc terms [groups B/C/D below] and the defect terms [group A below]. Accordingly, I asked our IT personnel to run a search "7a" requiring the "defect" term to appear within 30 words of the "disc" term.

To make the logic of the remaining searches more clear, I created the following abbreviations:

- A= **(condition OR risk OR defect\* OR deficient\* OR malfunction\* OR failure\* OR crack\* OR fracture\* OR tear\* OR rip\*)**

- B= (disc or discs or disk or disks **or spokes or spoke)**

- C= (39566/2000 or 39566/2030 or \*42120088S\* or \*42120089S\* or WS700S\*)

- D= **(040305 or 090033 or 209902 or 279912 or 309913 or 309914 or 310008 or 339922 or 339939 or 339940 or 339958 or 3399914 or 499905 or 509902 or 509904 or 587410 or 587640 or 638411 or 693332)**

- E= (Acela\* OR NEC\* OR 041\*)

| | | |
|---|---|---|
| Sadoff 6: | gusset\* | 3 docs |
| Sadoff 6a: | A and gusset\* | 1 doc |
| Sadoff 7: | A and (B or C or D) | 549 docs |
| Sadoff 7a: | A "within 30" (B or C or D) | 357 docs |
| Sadoff 8: | A and (B or C or D) and E | 446 docs |

**Pillsbury
Winthrop
Shaw
Pittman**

1540 Broadway
New York,
NY 10036-4039

Tel 212.858.1000
Fax 212.858.1500
www.pillsburylaw.com

**Confidential Settlement and Investigative Communication**
**Disclosure Restricted to Head of Designated**
**Federal Entity Pursuant to 5 U.S.C. App. 3 § 8G(d)**

Philip Le B. Douglas
Phone: 212.858.1704
philip.douglas@pillsburylaw.com

December 22, 2005

**BY FAX**

David Sadoff, Esq.
Associate Counsel to the Inspector General
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E.
Suite 3E-400
Washington, D.C. 20002

    Re:    *Fred E. Weiderhold, Jr. v. Bombardier, Inc., Alstom Transportation,*
            *Inc. and Northeast Corridor Maintenance Services Company*

Dear Mr. Sadoff:

I write on behalf of Bombardier and Bombardier's interest in NeCMSC in an attempt to reach agreement on issues regarding the subpoenas served on our clients.

You had asked us to consider who might be the "Stillmans of the world", which we understand to mean NeCMSC employees who are in positions similar to that of Mr. Stillman who might have tracked cracks on Acela trailer car friction brake discs.

We have concluded that the following three persons fit the criteria:

                1. Jackie Newcomb (Boston)
                2. Ray Witcher (Ivy City)
                3. Thomas Koss (Ivy City)



EXHIBIT
78

December 22, 2005
Page 2

Very truly yours,

Philip Le B. Douglas



**Pillsbury
Winthrop
Shaw
Pittman** LLP

1540 Broadway
New York, NY 10036-4039

Tel 212.858.1000
Fax 212.858.1500
www.pillsburylaw.com

**CONFIDENTIAL SETTLEMENT AND INVESTIGATIVE COMMUNICATION
DISCLOSURE RESTRICTED TO HEAD OF DESIGNATED FEDERAL ENTITY
<u>PURSUANT TO 5 U.S.C. APP. 3 § 8g(d)</u>**

December 22, 2005

Philip Le B. Douglas
Phone: 212.858.1704
philip.douglas@pillsburylaw.com

<u>VIA FEDERAL EXPRESS</u>

David Sadoff, Esq.
Associate Counsel to the Inspector General
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E.
Suite 3E-400
Washington, D.C. 20002

Re:    Subpoena Issued by the Office of Inspector General to Bombardier Inc.,
dated May 4, 2005, No. 05-05 (the "Subpoena")

Dear Mr. Sadoff:

Disk #BBD_039 is being provided as part of settlement efforts. There are two folders on
the disk, named "Formal Production" and "Native Format – Settlement Purposes Only".
The "Formal Production" folder on the CD-ROM contains the formal production by
Bombardier, with production numbers from BBD0334506 to BBD00334669.

The "Native Format – Settlement Purposes Only" folder contains a searchable, read-only
Excel file, labeled "Knorr FARs in Bombardier FAR database as of Dec 12, 2005". This
Excel file is a document we are providing informally as part of our settlement efforts, and
not part of the formal production.

**EXHIBIT**

**79**

ALL-STATE LEGAL®

December 22, 2005
Page 2


We understand that this file was created by exporting from Bombardier's Failure
Analysis Report database, all "Knorr" information from project "041". Bombardier
reserves all rights and objections with respect to native format production of this or any
other electronic information or database, and with respect to creation or production of any
similar export for this or any other database.

Sincerely,

Philip Le B. Douglas

Enclosures

cc:     Marc-Andre Raymond (w/o attachments)



**Pillsbury
Winthrop
Shaw
Pittman** LLP

1540 Broadway
New York, NY 10036-4039
Tel 212.858.1000 | Fax 212.858.1500
www.pillsburylaw.com

## FACSIMILE

Century City
Houston
London
Los Angeles
New York
Northern Virginia
Orange County
Palo Alto
Sacramento
San Diego
San Diego-North County
San Francisco
Silicon Valley
Stamford
Sydney
Tokyo
Washington DC

Total Pages: (including cover):
**14**

| | | | |
|---|---|---|---|
| Date: | December 30, 2005 | User No: | 26615LLS |
| From: | **Laura Smith** | Phone No: | **(212) 858-1262** |
| | | C/M No: | 204789/0000010 |
| To: | **David Sadoff** | Phone No: | (202) 906-4882 |
| Company: | | Fax No: | **202-906-4695** |
| Cc: | **Marc-André Raymond** | Phone No: | (450) 441-3180 |
| Company: | | Fax No: | **450-441-3093** |
| Cc: | **Frank Parker** | Phone No: | (202) 282-5822 |
| Company: | | Fax No: | **202-282-5100** |

Comments:

Dear Mr. Sadoff:

Attached is the list of production numbers from running your selected search on the Labbé production.

We have unfortunately been able to make little progress this week on the other matters discussed in our last conference call, due to vacation schedules.

As per my voice mail, we would request that the conference call (currently scheduled for 1 p.m. on Wednesday, January 4) be rescheduled to the following week, when we will hopefully have more to report and I will be back from my vacation. Perhaps Monday, January 9, 2006 at 1 p.m.?

Sincerely,

LS

Laura L. Smith

**CONFIDENTIALITY NOTE:**
The documents accompanying this facsimile transmission may contain confidential information which is legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, or the person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in this transmission is strictly PROHIBITED. If you have received this trans-mission in error, please immediately notify us by telephone and mail the original transmission to us. Thank you.



EXHIBIT
**80**

If you have not properly received this fax, please call 212.858.1000. Thank you.
Operator:

**Confidential Investigative
& Settlement Communication
Disclosure Restricted to
Head of Designated Federal Entity
Pursuant to 5 U.S.C. App. 3 §8G(d)**

## INDEX OF SEARCH RESULTS
### 12/30/05

List of production numbers of all hits from running the "Sadoff 7" search (as previously discussed and agreed upon) across the Labbé production.

Due to the large number of hits, we have provided the beginning and ending production numbers only for the particular document in which there was a hit. Where the "FOLDER" column is blank, this may be just one component of an email (*e.g.*, the production numbers of a single email attachment which contains the hit, rather than the production numbers for the entire email and all attachments).

|     | BEG_PROD | END_PROD | FOLDER |
| --- | --- | --- | --- |
| 1. | BBD0166972 | BBD0166975 | |
| 2. | BBD0166978 | BBD0166996 | |
| 3. | BBD0171683 | BBD0171685 | |
| 4. | BBD0171686 | BBD0171691 | |
| 5. | BBD0191871 | BBD0191871 | |
| 6. | BBD0191879 | BBD0191897 | |
| 7. | BBD0191903 | BBD0191910 | |
| 8. | BBD0192086 | BBD0192087 | |
| 9. | BBD0192190 | BBD0192197 | |
| 10. | BBD0192202 | BBD0192203 | |
| 11. | BBD0192204 | BBD0192204 | |
| 12. | BBD0192222 | BBD0192227 | |
| 13. | BBD0192228 | BBD0192229 | |
| 14. | BBD0192234 | BBD0192235 | |
| 15. | BBD0192251 | BBD0192288 | |
| 16. | BBD0192331 | BBD0192338 | |
| 17. | BBD0192383 | BBD0192420 | |
| 18. | BBD0192445 | BBD0192515 | |
| 19. | BBD0192547 | BBD0192548 | |
| 20. | BBD0192887 | BBD0192899 | |
| 21. | BBD0192923 | BBD0192975 | |
| 22. | BBD0193040 | BBD0193040 | |
| 23. | BBD0193041 | BBD0193041 | |
| 24. | BBD0193042 | BBD0193042 | |
| 25. | BBD0193048 | BBD0193048 | |
| 26. | BBD0193060 | BBD0193060 | |
| 27. | BBD0193342 | BBD0193342 | |
| 28. | BBD0193553 | BBD0193554 | |
| 29. | BBD0193959 | BBD0193970 | |

| | BEG_PROD | END_PROD | FOLDER |
|---|---|---|---|
| 30. | BBD0193971 | BBD0193972 | |
| 31. | BBD0193974 | BBD0193974 | |
| 32. | BBD0193975 | BBD0193977 | |
| 33. | BBD0193978 | BBD0193978 | |
| 34. | BBD0193983 | BBD0193984 | |
| 35. | BBD0193985 | BBD0193986 | |
| 36. | BBD0193988 | BBD0193988 | |
| 37. | BBD0193990 | BBD0193990 | |
| 38. | BBD0193995 | BBD0194019 | |
| 39. | BBD0194021 | BBD0194022 | |
| 40. | BBD0194037 | BBD0194040 | |
| 41. | BBD0194045 | BBD0194047 | |
| 42. | BBD0194143 | BBD0194143 | |
| 43. | BBD0194185 | BBD0194194 | |
| 44. | BBD0194271 | BBD0194283 | |
| 45. | BBD0194303 | BBD0194303 | |
| 46. | BBD0194323 | BBD0194323 | |
| 47. | BBD0194326 | BBD0194326 | |
| 48. | BBD0194410 | BBD0194410 | |
| 49. | BBD0194411 | BBD0194411 | |
| 50. | BBD0194412 | BBD0194412 | |
| 51. | BBD0194426 | BBD0194426 | |
| 52. | BBD0194581 | BBD0194603 | |
| 53. | BBD0194604 | BBD0194604 | |
| 54. | BBD0194759 | BBD0194759 | |
| 55. | BBD0194869 | BBD0194883 | |
| 56. | BBD0194885 | BBD0194907 | |
| 57. | BBD0194911 | BBD0194912 | |
| 58. | BBD0194944 | BBD0195147 | |
| 59. | BBD0195257 | BBD0195268 | |
| 60. | BBD0195270 | BBD0195277 | |
| 61. | BBD0195576 | BBD0195576 | |
| 62. | BBD0195577 | BBD0195577 | |
| 63. | BBD0195579 | BBD0195579 | |
| 64. | BBD0195580 | BBD0195580 | |
| 65. | BBD0195610 | BBD0195610 | |
| 66. | BBD0195687 | BBD0195689 | |
| 67. | BBD0195693 | BBD0195712 | |
| 68. | BBD0195777 | BBD0195778 | |
| 69. | BBD0195840 | BBD0195840 | |
| 70. | BBD0195841 | BBD0195843 | |
| 71. | BBD0195844 | BBD0195845 | |
| 72. | BBD0195846 | BBD0195846 | |
| 73. | BBD0195851 | BBD0195851 | |
| 74. | BBD0195873 | BBD0195874 | |
| 75. | BBD0195875 | BBD0195876 | |
| 76. | BBD0195900 | BBD0195900 | |

500065736v1