

**"Sadoff, David "**
**<SadoffD@amtrak .com>**

07/07/2006 05:10 PM

To  'Philip Le B Douglas' <pldouglas@JonesDay .com>,
    "'fparker@winston.com'" <fparker@winston.com>

cc

bcc

Subject  Agreement Revisions

History:      🖙 This message has been forwarded.

Phil and Franklin:
        Attached are the suggested revisions to the "Agreement Regarding
Transfer and Analysis of BackUp Tapes".  Please review and call me with your
comments.

 <<Revised Draft Stipulation Revds .doc>>  <<Attachment 1.doc>>

        

Revised Draft Stipulation Revds.doc  Attachment 1.doc

EXHIBIT
132
ALL-STATE LEGAL®

AGREEMENT REGARDING
TRANSFER AND ANALYSIS OF BACKUP TAPES
AND EMAIL DRIVES

**WHEREAS, beginning on April 14, 2005, cracks were found on the spokes of axle-mounted brake discs on the trailer cars of the Acela trainsets as a result of an inspection by Federal Railroad Administration personnel; and**

WHEREAS, **in the course of its related investigation,** the Amtrak Office of Inspector General ("OIG") served Subpoena Nos. 05-05, 05-07, 05-09, 05-17, 05-18, and 05-20 (the "Subpoenas") on Alstom Transportation, Inc. ("Alstom"), Bombardier Inc. ("Bombardier"), and Northeast Corridor Maintenance Services Corporation ("NeCMSC") (collectively, the "Respondents") in May and June 2005; and

WHEREAS, NeCMSC has represented that its live Microsoft Exchange email data was damaged or destroyed on May 30, 2005 due to a server failure; and

WHEREAS, NeCMSC's outside counsel have represented that they retained Kroll Ontrack, Inc. ("Kroll") **in an attempt to recover NeCMSC's Microsoft Exchange email data from three email drives used on May 30, 2005,** and **that they retained** eMag Solutions ("eMag") in an attempt to recover NeCMSC's Microsoft Exchange email data from **eight of sixteen** ~~certain~~ backup tapes **in the tape back-up drive on May 30, 2005;** ~~and/or email drives;~~ and

WHEREAS, **NeCMSC's outside counsel have represented to OIG that** Kroll and eMag have each ~~represented that they~~ concluded that they could not recover Microsoft Exchange email data from the backup tapes and/or email drives that they were given; and

WHEREAS, OIG wishes to obtain an independent assessment of the recoverability of Microsoft Exchange email data from NeCMSC's backup tapes and email drives; and

WHEREAS, NeCMSC personnel have represented that, when Kroll returned the email drives to NeCMSC, certain of them were reinserted into the email server, leaving only three of the email drives that were in place on May 30, 2005 intact (drives #4 and 5, plus a replacement drive that was used briefly on May 30, 2005); and

WHEREAS, counsel for Respondents wish to ensure that (i) the integrity of the backup tapes and email drives is preserved and (ii) any attorney-client privilege, work product, trial preparation, or trade secret protections are preserved and not waived; and

WHEREAS, the OIG and counsel for Respondents have agreed that it is appropriate to set forth their understanding as to how this can be achieved;

IT IS HEREBY STIPULATED AND AGREED by and among counsel for Respondents and the OIG that:

1. This agreement concerns (i) three email drives that were in the NeCMSC email server at various times on May 30, 2005 (the "Email Drives"); (ii) all eight NeCMSC backup tapes that were previously reviewed and analyzed by eMag (the "Reformatted Tapes"); and (iii) the remaining eight NeCMSC backup tapes that were in the NeCMSC tape backup drive at various times on May 30, 2005, but which were not previously reviewed or analyzed by eMag (the "Overwritten Tapes"). (These Email Drives, Reformatted Tapes, and Overwritten Tapes shall be referred to as "NeCMSC Media".)

2. Once this agreement is fully executed, the OIG and/or its independent, third-party expert (the "OIG-Selected Expert") shall take temporary custody of the NeCMSC Media and shall take appropriate steps to record the chain of custody and to prevent any changes to or the loss of any information on the NeCMSC Media.

3. The goal of the OIG-Selected Expert's testing or analysis of the NeCMSC Media shall be solely (i) to determine whether any Microsoft Exchange email data is recoverable, in whole or in part; (ii) to determine the nature and extent of damage to the Microsoft Exchange email data and/or the NeCMSC Media; and (iii) to determine, to the extent feasible, the cause of such damage.

4. With respect to the Overwritten Tapes, the OIG-Selected Expert shall not conduct any testing or analysis of the Overwritten Tapes except in the presence of eMag or another third-party expert selected by NeCMSC.

5. Any and all tests or analyses conducted on the NeCMSC Media shall be non-destructive of the original. It is contemplated that such tests or analyses will be made on a "virtual copy" of the original if feasible.

6. If the OIG-Selected Expert determines that any Microsoft Exchange email data is recoverable, in whole or in part, on the NeCMSC Media, Respondents' counsel shall be promptly notified and the data may not be reviewed by the OIG-Selected Expert, or disclosed to OIG or any other person. The NeCMSC Media and all copies thereof and any information derived therefrom shall be returned to Respondents' counsel for the data to be recovered and reviewed. Respondents will undertake to review and produce responsive, non-privileged material promptly.

7. When returning the original and all copies made of the NeCMSC Media, the OIG-Selected Expert may choose to place some or all of such copies (but not the original) in sealed envelopes (the "Sealed Copies"). With respect to any such Sealed Copies, Respondents shall take appropriate steps to record the chain of custody and to maintain the Sealed Copies under seal to prevent any changes to or the loss of any information.

3

8. The OIG-Selected Expert shall not undertake any actual recovery of such recoverable data, but shall only make the determinations set forth in paragraph 3, above. It is contemplated, however, that the OIG-Selected Expert may be invited to assist Respondents' counsel in recovering such data by providing relevant information or suggesting particular tools.

9. The OIG shall not review any data that may be contained on or recoverable from the NeCMSC Media, but shall only review data that has been formally produced by Respondents.

10. Once the OIG has selected a proposed expert, the OIG shall provide such expert with a copy of this agreement, and shall require the expert to agree to be bound by the terms of this agreement (using a form substantially similar to Annex A). The OIG shall provide Respondents with (i) a copy of the form signed by the expert and (ii) reasonable notice and an opportunity to object to the expert, prior to the transfer of the NeCMSC Media to such expert. It is contemplated that no objection will be raised to a reputable, independent firm or government agency, and the parties hereto will cooperate in good faith regarding any such objections.

11. By entering into this agreement, neither the OIG nor the Respondents waive any position, argument or objection they may have relating to the OIG's investigation or Subpoenas, or the Respondents' compliance or cooperation therewith.

12. The OIG will not contend that NeCMSC's voluntary delivery to OIG of the NeCMSC Media for the limited purposes authorized herein constitutes a waiver of any applicable privilege or objection to the production of the NeCMSC Media and any information contained therein.

13. In entering into this agreement, the Respondents do not waive their right to object to the admissibility of any results of the OIG-Selected Expert's analysis.

Dated: Washington,
July___, 2006

D.C. OFFICE OF INSPECTOR GENERAL,
NATIONAL RAILROAD PASSENGER CORP.
By:

_____

Title:
10 G Street N.E., Suite 3E-400
Washington, D.C. 20002

Dated: Washington, D.C.
July___, 2006

WINSTON & STRAWN LLP
By:

_____

Franklin Parker, Esq.
1700 K Street, N.W.
Washington, D.C. 20006-3817
Counsel for Alstom and Alstom's interest in NeCMSC

Dated: New York, New York
July ___, 2006

JONES DAY
By:

_____

Philip Le B. Douglas, Esq.
222 East 41st Street
New York, NY  10017
Counsel for Bombardier and Bombardier's interest in
NeCMSC

Annex A

## DECLARATION AND ACKNOWLEDGMENT CONCERNING
## AGREEMENT REGARDING TRANSFER AND
## ANALYSIS OF BACKUP TAPES AND EMAIL DRIVES

I _____, have received and carefully read a copy of the annexed Agreement Regarding Transfer and Analysis of Backup Tapes and Email Drives (the "Agreement") and I understand the provisions of the Agreement. I have had the opportunity to consult with counsel, if desired.

I understand that this Agreement is intended to protect both (i) the integrity of any data that may be on these media and (ii) any privileges that may pertain to any such data.

I agree to be bound by the provisions of this Agreement, and I agree not to transfer custody of these backup tapes and email drives, or any copies thereof, or any information that may be derived therefrom, to anyone who has not similarly agreed to be bound by this Agreement.

Signature: _____

Date: _____

**Upon signature,** this agreement should be faxed to:

David Sadoff, Esq. 202-906-4695

Franklin Parker, Esq. 202-371-5950

Philip Le B. Douglas, Esq. 212-

6

**Attachment 1**

**Labeled  Back-Up Tapes Reviewed by OIG on June 13, 2006
at the Offices of Jones Day**

File 1 of 4 6/9/05

File 2 of 4 6/9/05

File 3 of 4 6/9/05

File 4 of 4 6/9/05

Oracle WK B

Oracle WK C

Oracle WK D

Oracle WK A

File 6 of 7 5/19/05

Oracle 6/9/05

File 7 of 7 5/19/05

File 4B

File 1 of 8 5/19/05

File 2 of 8 5/19/05

File 3 of 8 5/19/05

File 4 of 8 5/19/05

File 5 of 8 5/19/05

9C

2D

3D

8D

4C

6C

7D

5D

3C

4D

5C

10C

L8 6/13

L2 6/13

L4 6/13

L6 6/13

L5 6/13

R1 6/13

L7 6/13

L3 6/13

Blank tape

R8 6/13

R5 6/13

R7 6/13

R4 no R3 6/13

R6 6/13

R2 6/13

7C

8C

Email 6/9/05

6D

**Philip Le B**
**Douglas/JonesDay**
Extension 7-3611

07/10/2006 01:56 PM

To  "David Sadoff" <SadoffD@amtrak.com>

cc  "Franklin Parker" <FParker@winston.com>, "Timothy
Broas" <tbroas@winston.com>

bcc

Subject  OIG Subpoenas of NeCMSC, Bombardier and Alstom

David,

Thanks for your email of July 7, 2006 with OIG's suggested revisions to the proposed
Agreement Regarding Transfer and Analysis of Backup Tapes and Email Drives. We are
reviewing your changes and expect to revert with only minor comments shortly. In the
meantime, however, could you tell us what role your proposed "Attachment 1" would play in
the Agreement. It does not appear to be referenced at all in the body of the Agreement.

Philip Le B. Douglas
Jones Day
222 East 41 Street
New York, NY  10017
212-326-3611

==========
This e-mail (including any attachments) may contain information that is private,
confidential, or protected by attorney-client or other privilege. If you received this e-mail in
error, please delete it from your system without copying it and notify sender by reply
e-mail, so that our records can be corrected.
==========





**"Sadoff, David"**
**<SadoffD@amtrak.com**
**>**

07/10/2006 02:22 PM

To  'Philip Le B Douglas' <pldouglas@JonesDay.com>

cc  Franklin Parker <FParker@winston.com>, Timothy
Broas <tbroas@winston.com>

bcc

Subject  RE: OIG Subpoenas of NeCMSC, Bombardier and
Alstom

History:          ⤷ This message has been forwarded.

Phil,

  Your e-mail, and particularly the reference to Attachment 1, has alerted me to the fact
that I transmitted an incomplete, prior draft of the agreement. The draft that I intended to
send on Friday is attached. You can see the references to Attachment 1.

  I'm sorry for the confusion. ds


-----Original Message-----
**From:** Philip Le B Douglas [mailto:pldouglas@JonesDay.com]
**Sent:** Monday, July 10, 2006 1:56 PM
**To:** Sadoff, David
**Cc:** Franklin Parker; Timothy Broas
**Subject:** OIG Subpoenas of NeCMSC, Bombardier and Alstom


David,

     Thanks for your email of July 7, 2006 with OIG's suggested revisions to the
proposed Agreement Regarding Transfer and Analysis of Backup Tapes and Email
Drives. We are reviewing your changes and expect to revert with only minor
comments shortly. In the meantime, however, could you tell us what role your
proposed "Attachment 1" would play in the Agreement. It does not appear to be
referenced at all in the body of the Agreement.


Philip Le B. Douglas
Jones Day
222 East 41 Street
New York, NY  10017
212-326-3611

==========

This e-mail (including any attachments) may contain information that is private,

EXHIBIT
**134**

confidential, or protected by attorney-client or other privilege.  If you received this
e-mail in error, please delete it from your system without copying it and notify
sender by reply e-mail, so that our records can be corrected.
==========

Draft Stipulation re NeCMSC Media Transfer. DS Revs.doc

**Philip Le B**
**Douglas/JonesDay**
Extension 7-3611

07/13/2006 04:39 PM

To  "David Sadoff" <SadoffD@amtrak.com>

cc

bcc

Subject  Memorial Day Incident

David,

After you complained this afternoon about the accuracy of our report on the Memorial Day 2005 incident, I went back to the document (Ex. 26 to Respondent's Request for a Hearing). In our conversation of this afternoon, you said that the report could not be relied on because  we (1) did not interview Jeremy Edwards (as you did), and (2) erroneously claimed that the system was backed-up once a month rather than, as was actually the case, once a week.

After our conversation today, I was reminded that you made the same attack on our report some time ago in a conversation with Laura Smith. I believe, that she pointed out that your claims were in error.

I hope you will reread the report because it will demonstrate that your criticism is plainly wrong. On its face, the report(1) shows that Mr. Edwards was our principal source, and (2) clearly states that the system was **backed up weekly**:

"NeCMSC backs up its computer systems onto sixteen backup tapes for disaster recovery purposes only. If there is no disaster, the backup
tapes **from the prior week** are reformatted and are used again, overwriting the prior **week's** backup tapes.

(Ex. 26 at 4).


I hope you will now correct this error by appropriate action.




Philip Le B. Douglas
Jones Day
222 East 41 Street
New York, NY  10017
212-326-3611

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

EXHIBIT
135
ALL-STATE LEGAL®

# **Kroll Ontrack**™

## FAX TRANSMISSION

| | | | |
|---|---|---|---|
| **To:** | Philip Douglas | **From:** | Jeff Lendino |
| **Company:** | Pilsbury Winthrop Shaw Pittman | **Pages:** | 11 (including cover) |
| **Date:** | June 5, 2006 | **Tel:** | 952.906.4851 |
| **Fax:** | 917.464.6595 | **Fax:** | 952.949.4104 |

**PERSONAL AND CONFIDENTIAL**

**Re: NeCMSC – Amtrak OIG Subpoena to Kroll Ontrack**

Mr. Douglas – Our firm was retained by Pilsbury Winthrop Shaw Pittman ("Pilsbury") and had been working via Laura Smith on this matter. I understand Ms Smith is no longer with your firm but did want to advise you of our receipt of the attached subpoena today. Please contact me directly should you have any questions or wish to discuss.

Very truly yours,

Jeff Lendino

Associate Legal Counsel
Kroll Ontrack Inc.

The information contained in this facsimile message is privileged and confidential and is intended only for the use of the individual or entity named above. If you, the reader of this message, are not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that you are strictly prohibited from disseminating, distributing or copying the information contained in this facsimile message. If you have received this message in error, please notify us immediately by telephone.

www.krollontrack.com

EXHIBIT
136
ALL-STATE LEGAL®

NATIONAL RAILROAD PASSENGER CORPORATION



June 2, 2006

*CERTIFIED MAIL*

Jeffrey Lendino Esquire
Associate Counsel
Kroll Ontrack, Inc.
9023 Columbine Road
Eden Prairie, MN  55347

<u>**Re: Subpoena No. 06-09**</u>

Dear Mr. Lendino:

     This letter and enclosed Subpoena No. 06-09 ("Subpoena") to Kroll Ontrack, Inc. ("Kroll") for documents related to efforts to recover data from the electronic records of the Northeast Corridor Maintenances Services Company ("NeCMSC") related to a failure of its computer system on or about Memorial Day, 2005.   I understand that in a March 22, 2006 telephone conversation with David Sadoff, Esquire, Associate Counsel in this office, you agreed to accept service of a subpoena proposed to be issued to Kroll.

     The Subpoena has been issued in support of an investigation and pursuant to the authority provided to the Inspector General by Section 5 U.S.C. App. 3. Sec. 6(a)(4).  The Subpoena is returnable at Amtrak's Office of Inspector General, 10 G Street, NE, Suite 3E-400, Washington, DC 20002, before my designee, Mr. Sadoff.  Responsive paper and electronic documents are to be produced by July 14, 2006. At its option, Kroll may produce fully legible and complete copies of the paper records described in the subpoena, and a mirror image of responsive electronic documents, in lieu of the original documents described in the Subpoena, provided that original records will be made available to employees of my office, upon request, during normal business hours.  Kroll may assemble the requested, responsive documents, and required index, explanation(s) and certification, and mail them by certified mail on or before the return date.  Failure to provide the required documents as specified in the Subpoena is non-compliance and may be the subject of an enforcement action.

     In order to facilitate Kroll's full compliance with the Subpoena, and to ensure that this office receives all responsive documents and records, I direct Kroll's attention to Sections I and II to Attachment A to the Subpoena, respectively "Definitions" and "Instructions".  Those Sections require that Kroll:

               (1) Produce responsive electronic documents in native format (Instruction II.D); provide documents in both electronic and paper format where they so exist (Instruction II.D);

NATIONAL RAILROAD PASSENGER CORPORATION



(2) For responsive paper documents, produce the "originals" or make them available for inspection, with their original file labels and markings, organized and labeled to correspond with the subpoena request pursuant to which they are being produced; (Instructions II.E.1, II.F);

(3) Provide a written statement that, for each responsive paper document, or group of documents, states the office and location at which they were retained immediately prior to the date of service of this subpoena, and the person(s) who had custody or control of the documents at that time (Instruction II.E.2);

(4) Produce responsive documents archived or in storage (Definition I.C.5, Instruction II.G, Quinby v. WESTLB, AG, 2005 WL 3453908 (S.D.N.Y. 2005));

(5) Fully support and justify its withholding of any responsive documents on claim of privilege or for any other reason (Instruction II.L);

(6) If Kroll has no documents responsive to a particular request, it shall state that fact in a separate written statement furnished at the time of its production (Instruction II.J); and,

(7) Identify any otherwise responsive documents that have been lost or destroyed (Instruction II.K).

I also direct Kroll's attention to the Certificate of Compliance appended to the Subpoena that is to be executed by the appropriate Kroll representative at the completion of its retrieval and production of responsive documents.

By issuing the Subpoena, this office implies no wrongdoing or improper conduct, and none should be inferred. If you have any questions, please feel free to contact Mr. Sadoff at (202) 906-4882.

Sincerely,

*Fred E. Weiderhold*

Fred E. Weiderhold, Jr.
Inspector General

FEW/at
Enclosures

2

### Issued by the
### National Railroad Passenger Corporation
### OFFICE OF INSPECTOR GENERAL

*SUBPOENA DUCES TECUM*

TO:   Jeffrey Lendino, Esquire                          Subpoena Number 06 - 09
        Associate Counsel                             June 2, 2006
        Kroll Ontrack, Inc.
        9023 Columbine Road
        Eden Prairie, MN  55347

**x YOU ARE COMMANDED** to appear before the following individual, an official of Amtrak's Office of Inspector General at the place, date and time specified below.

PLACE OF APPEARANCE                          DATE AND TIME

10 G Street, NE, 3E-400                      July 14, 2006 at 11:00 A.M.
Washington, DC  20002

**x  YOU ARE COMMANDED** to produce at said time and place the following documents or objects (list documents or objects):

All records, accounts and other documents relating to materials as set forth in Attachment A.  These materials should be accompanied by an index identifying the item(s) of the subpoena to which the documents are responsive.

These materials are necessary in the performance of the Inspector General to conduct and supervise audits and investigations, to promote economy, effectiveness, and integrity in the administration of programs and operations of the National Railroad Passenger Corporation (Amtrak).

☐ Inquiries concerning this subpoena should be addressed to:

      David Sadoff, Esquire
      Associate Counsel to the Inspector General
      Office of Inspector General
      10 G Street, NE, Suite 3E-400
      Washington, DC  20002
      (202) 906-4882

Issuing Officer Signature                           Date

*[signature]*                               June 2, 2006
Issuing Officer Name and Title

Fred E. Weiderhold, Jr., Inspector General
(This subpoena issued under the authority of 5 U.S.C. App.3. Sec. 6(a)(4))

## ATTACHMENT A

**I.**    <u>**Definitions:**</u>

A.    "Amtrak" shall mean "The National Railroad Passenger Corporation," a District of Columbia corporation with its principal offices located at 60 Massachusetts Avenue, NE, Washington, DC 20002, and its officers, directors, employees, representatives, agents, and/or consultants.

B.    "Communication(s)" shall be read broadly and include, but not be limited to, the transmission, sending and/or receipt of information of any kind by and/or through any means, whether face-to-face or otherwise, including speech, documents, writings, language (machine, foreign, or otherwise), computer electronics of any kind, magnetic tape, video tape, photographs, graphs, symbols, signs, magnetic disks, sound, radio and/or video signal, telephone, teletype, telecommunication, telegram, facsimile transmission, microfilm microfiche, photographic film of any type and/or any memorialization (whether written, taped or input into a computer) of oral discussions in person or by telephone conversation.

C.    "Documents" shall be read broadly and shall mean all written, printed, typed, or other graphic matter, by any means of recording upon any tangible thing, and all attachments thereto, including all electronic and laser recordings, hard or floppy disks, CD-ROMs, electronic mail, computer memory, storage devices of any kind, and other data compilations from which information can be obtained and translated into readable form.

1.    The definition shall further include, but not be limited to, any communication or representation, including notes, memoranda, correspondence, drafts, telephone records, travel records, personnel records, agreements, reports, diaries, calendars, appointment records, internal communications, facsimiles, electronic mail messages or transmissions, telegrams, telexes, letters, data books, viewgraphs, manuals, slides, photographs, tapes, videotape, films, audio recordings, databases or data compilations, spreadsheets, directives, bulletins, surveys, calculations, statistical statements, charts, graphs, drawings, vouchers, bills, statements, ledgers, worksheets, analyses, minutes, summaries or recordings of meetings and materials distributed, interviews, conference notes, conversations, telephone conversations, communications of any type, and all attachments thereto, whether in paper or in electronic or magnetic format.

2.    To the extent that responsive documents are in electronic or magnetic format, i.e., comprise "electronic documents," responsive documents shall further include all: 1) materials on or in computer tapes, disks and memory; 2) backup or archival copies of materials described in C.1), above; 3) "deleted" files on a computer or computer storage device or media, whether located at

your facilities, or elsewhere; 4) "legacy" data consisting of information stored on media that can no longer be accepted or organized in a format that can be read using your current software; and, 5) all software, instructions and other documentation, including that described in Instructions D.1.-8., necessary to retrieve, read, and use the responsive electronic document.

3.     For purposes of compliance with this subpoena, "paper" documents shall mean all "documents" other than "electronic" documents.  When this subpoena does not specifically distinguish either "paper" or "electronic" documents as responsive, both types of documents shall be produced. The categorization of "electronic" and "paper" documents is not meant to limit the universe of documents that are otherwise responsive to this subpoena.

4.     The definition of "documents" shall further include all drafts, revisions, and proposed revisions, all copies which are not identical to the original, whether different from the original because of notes made on or attached to such copy or because of underlining, emphasis, comments, or otherwise.

5.     The definition of "documents" also includes any data or materials copied or archived by or on behalf of Kroll.  See Quinby v. WESTLB, AG, 2005 WL 3453908 (S.D.N.Y. 2005).

D.     "Each" includes the word "every," "any" includes the word "all," the singular form of a word shall be interpreted to include the plural, and "and" as well as "or" shall be construed either disjunctively or conjunctively, as necessary to bring within the scope of the request all documents which might otherwise be construed to be outside its scope. "Including" shall mean "without limitation" and be construed as broadly as possible.

E.     "Kroll", "You" and/or "Your" shall mean Kroll Ontrack, Inc. The terms include persons having documents responsive to this Subpoena that are subsidiaries, affiliates, directors, officers, employees, representatives, agents, vendors, or joint venture partners of Kroll, as of May 30, 2005 to date, including their successors. The terms also include any third-party who/that stores documents for Kroll.

F.     "NeCMSC" shall mean the Northeast Corridor Maintenance Services Company", has been a joint venture jointly owned, controlled and operated by Alstom Transportation, Inc. ("Alstom") and Bombardier, Inc. ("Bombardier"). NeCMSC has offices at, among other locations, 1401 W Street, NE, Washington, D.C. 20018. The term includes persons known to you as subsidiaries, affiliates, directors, officers, employees, representatives, agents, vendors, or joint venture partners of NeCMSC.

G.    "OIG" shall mean the Office of Inspector General of the National Railroad Passenger Corporation ("Amtrak") headed by the Inspector General ("IG") of the National Railroad Passenger Corporation ("Amtrak"). The IG and OIG were established by Congress in 1988 and their respective duties and responsibilities are set forth in Title 5, Appendix 3 of the United States Code.

H.    "Person" shall mean natural persons, ads well as proprietorships, corporations, joint ventures, partnerships, groups, associations or organizations. To the extent applicable, the definition shall also include municipal corporations, the federal government and all departments and agencies thereof, state governments, local governments, and any other government agency or political subdivision.

I.    "Recovery work" shall mean any proposed, planned commenced or performed effort to retrieve or reconstruct any documents from NeCMSC disc drives, back-up tapes or other electronic media as a result of or related to the failure of the NeCMSC computer system during the 2005 Memorial Day weekend. "Recovery work" includes the effort expended and results obtained from 1) each task performed as part of any attempt to retrieve or reconstruct any electronic document or data, including the review, analysis or copying of any electronic documents, data or media, 2) whether or not any electronic document or data was retrieved or reconstructed as a result of the effort, and 3) whether or not the effort or tasks were performed by NeCMSC, Kroll, or other persons acting on behalf of NeCMSC. At least some of the "recovery work" is designated on Kroll documents as "SO 1674985" or as "PW 1674985".

J.    "Refer" or "Relate," or any derivative, shall mean, in addition to their customary and usual meanings, "concerning," "containing," "identifying," " monitoring," "constituting," "reflecting," "discussing," "pertaining to," "assessing," "recording," "supporting," "engaging," "refuting," "touching upon" and/or "summarizing."

## II.   Instructions:

A.    Unless otherwise stated, this Subpoena seeks documents and information for all or any part of the period from May 30, 2005 to the present.

B.    This subpoena shall be deemed continuing so as to require further and supplemental production if you come into possession, custody, or control of additional responsive documents after the time of initial production.

C.    Where responsive documents exist in both "electronic" and "paper" formats, you shall produce the requested document in both formats.

D.    Responsive documents in "electronic" format shall be produced to the OIG in their "native" format in which they reside in your computer files, and shall include all metadata available to users of your computer system. The production shall occur

within 35 days of service of this subpoena, unless otherwise agreed. The download will also include so much of the below-listed documents that exist, whether in "electronic" or "paper" format, so that Amtrak and its consultants can reasonably and efficiently retrieve and use the electronic document(s) produced:

1.  user manuals, program manuals, administrator and reference manuals, and similar materials or "documentation" relating to the software that created or archived the documents;

2.  documents describing the software's: a) file, table, record and/or field layout; b) its calculations, "macros," or other programmatic operations performed; and/or c) its "data model";

3.  documents describing the "data dictionary" for the software, including system design documents, entity-relationship diagrams, system look-up values, and glossaries of terms of acronyms used;

4.  documents describing the data format and interface requirements of the software;

5.  documents describing the "data life cycle," or movement and use of data in the software program, including data flow diagrams or processing flowcharts;

6.  documents describing the configuration management and/or version controls for the software;

7.  documents describing the hardware required to run the software; and/or;

8.  documents describing the procedures for archiving, backing up or restoring data.

E.  Documents in "paper" format shall be produced for Amtrak's inspection and copying by July 14, 2006, as follows:

1.  The documents produced shall be the actual documents (or "originals") that comprise or previously comprised your working files. Such responsive documents shall a) bear original file labels and markings, and, b) shall be organized and labeled to correspond with the subpoena request pursuant to which they are being produced.

2.  At time of production, you shall produce a written statement that, for each document, or group of documents, states: a) the office and location at which they were retained immediately prior to the date of service of this subpoena; and, b) the person(s) who had custody or control of the documents at that time.

3.  All responsive documents in "paper" format shall be produced as they were stapled or fastened together immediately prior to the date of service of this

4

subpoena.

F.  Alternatively, you may produce responsive "paper" documents for inspection and copying as they were kept in the usual course of business, at the sites, in the offices and as part of the files in which they existed immediately prior to the date of the service of this subpoena.

G.  A request for any document, whether in "paper" or "electronic" format, that was ever possessed or used by you, or by your agents or consultants, shall include, without limitation, all responsive documents 1) currently in your possession, custody or control; 2) currently in the possession, custody or control of any of your agents, representatives, or consultants; and/or 3) that you currently have power to obtain.

H.  Where a paper or electronic document is responsive to more than one of the requests in Part III, the responsive document shall be produced in response to the most specific request, and the production shall fully comply with Instructions II. D-F.

I.  If any portion of a document is responsive to any request or sub-part part in Attachment A, Section III ("requests"), then the entire document shall be produced. If the responsive document contains privileged material, or attorney-work product that you claim is protected from disclosure, the entire document is to be produced with only the privileged or protected portions redacted.

J.  If you have no paper or electronic documents that are to a particular request, state that fact in a separate written statement furnished at the time of production.

K.  For each responsive electronic or paper document that has been lost, discarded or destroyed, provide a written at the time of production that, separately describes the circumstances under which it was lost, discarded or destroyed, including: 1) the substance and content, to the extent known by you, of each document; 2) the date and location at which each document was discarded or destroyed; 3) the name and title of each individual who authorized that the document would be discarded or destroyed, and the reason therefore; 4) the name and title of each individual who determined that the document had been lost; and, 5) the name and title of each individual each person who removed, discarded, or destroyed each such document.

L.  For each document responsive to these requests that you withhold from production on the basis of privilege or the work-product doctrine, then, within 45 days of the service of this subpoena, you shall produce a list or log that separately states for each document withheld: 1) its date and number of pages; 2) the name and title of each author; 3) the name and title of each recipient; 4) the subject matter discussed; 5) a statement of the privilege or work-product doctrine claimed, and its factual basis; and, 6) all further information required to support the claim of privilege or work-product, and allow an assessment of that claim. If you withhold any documents on

5

the basis of some other objection, describe with particularity the nature of such objection, and provide a complete factual basis therefor.

M.    Each request in Section III shall be construed independently and not by reference to any other request for purposes of limiting the scope of this subpoena. Each sub-part of the requests comprising this subpoena is intended to comprise a separate request, and any objection to a sub-part shall not excuse you from responding to any other sub-part in the same numbered request to which you have not specifically objected.

## III.    Requests:

Consistent with the provisions of Section I ("Definitions") and Section II ("Instructions"), please produce:

1.    All paper and electronic documents that were created or maintained by or for any of the below-listed persons, and that refer or relate to recovery work:

   a.    Kip Comack
   b.    Ludwig Chin;
   c.    Christine Mennes;
   d.    Tom Curtin.

2.    All paper and electronic documents that comprise, refer or relate to communications about recovery work that were sent to or received by or from any of the following persons:

   a.    Jeremy Edwards;
   b.    Frank J. Christello, Jr.;
   c.    NeCMSC;
   d.    Chris Henson;
   e.    any representative or employee of Pillsbury Winthrop Shaw Pittman, LLP.

3.    All paper and electronic documents that comprise any communication or report relating to the recovery work.

4.    All paper and electronic documents that comprise or relate to proposed, incurred, billed or paid costs of recovery work.

5.    All paper and electronic documents not produced under Requests nos. 1- 4 that comprise, refer or relate to the recovery work performed by Kroll or others.

## CERTIFICATE OF COMPLIANCE

I hereby certify that the materials and documents produced in response to the subpoena issued by the Inspector General of Amtrak dated June 2, 2006, and delivered (or mailed via registered mail) to David Sadoff, Office of Inspector General, 10 G Street, NE, Suite 3E-400, Washington, DC 20002, by July 14, 2006 are genuine, complete and in full compliance with the demand made in the subpoena for the materials specified therein.

I declare under penalty of perjury that the foregoing is true and correct.

_____
(Signature)

_____
(Name-typed or printed)

_____
(Title, if applicable)

_____ , 2006
(Date Executed)

_____
(City and State)

**WITNESS:**

_____
(Signature)

_____
(Name and Title)

_____ , 2006

Subpoena Number: <u>06-09</u>

# Kroll Ontrack™

July 14, 2006

David Sadoff, Esq.
Associate Counsel to the Inspector General
Office of Inspector General
10 G Street, NE, Suite 3E-400
Washington, DC 20002

**VIA CERTIFIED MAIL**

**RE: Subpoena Number 06-09 ("Subpoena")**

Dear Mr. Sadoff,

Enclosed are relevant, non-privileged documents responsive to the Subpoena issued to Kroll Ontrack Inc. ("Kroll") in connection with your office's investigation of the NeCSMC matter.

I note that the Subpoena calls for production of archived electronic materials in Kroll's possession. I understand that during February 2006 you had communications with representatives from both Kroll and Pillsbury Winthrop Shaw Pittman LLP during which you were advised that Kroll does not have archived materials of either the back-up tapes or the e-mail server drives that we originally received in connection with our work in this matter. Kroll was not able to recover any data from either the back-up tapes or the e-mail server drives and, as a result, there was no information available to archive.

During the course of our engagement Kroll was also asked to make copies of certain laptop hard drives (the "Hard Drives"). Kroll Ontrack performed no work, recovery or analysis on these Hard Drives as the instructions from our client were limited to copying them for preservation purposes only. Such copies have since been archived to back-up tape at Kroll. The original Hard Drives were returned to our client in March of this year and I understand that the client has already reviewed and produced any relevant, non-privileged materials from those Hard Drives to your offices. As such, any production by Kroll Ontrack of these materials would be duplicative.

For this reason we have been advised by our client that we are not to produce the archived copies of the Hard Drives and any other documents identified by them to be privileged. To the extent your office wishes to discuss the production of materials from the Hard Drives, that issue should be addressed with counsel for NeCSMC, Mr. Philip Douglas at Jones Day Reavis & Pogue LLP in New York, directly to discuss these issues.

I trust that this production satisfies Kroll's obligations under the Subpoena but feel free to contact me directly should you have any questions about the materials produced.



EXHIBIT

137

**Kroll On*track*** ™

Best regards,

Jeff Lendino
Associate Counsel
Kroll Ontrack Inc.

**Message received Friday, July 21, 2006 by Cathy Wenderoth (around 11 a.m.)**

Cathy,

This is David Sadoff at Amtrak and I have Jeff Black with me. I'm sorry its taken me a couple of days to get back to you but I left town shortly after our discussion – it upset me so much – no, I'm just kidding. But what we were hoping to do is if you're available today is to read one of the disks that you produced in the discovery through Summation and/or Concordance to demonstrate, or not demonstrate, how you could turn the single page tiffs into the documents. I'm going to see, press the operator, to see if I can find out if you're in, well, actually, I think what I may do is try to call Chris Hansen too. Thanks very much. If you do get this message and you're in today, my number is 202-906-4882. It's kind of **critical today** because Jeff Black's going to be gone next week for a week, going to be gone for next week and that's why we're kind of hoping to do it today and I'm sorry for the short notice. Thanks, bye.



NYI-2272855v1

# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017-6702
TELEPHONE: 212-326-3939 • FACSIMILE: 212-755-7306

**Confidential Investigative Communication
Disclosure Restricted to head of Designated
Federal Entity Pursuant to 5 U.S.C. App. 3 § 8G(d)**

JP010685:ia                     July 21, 2006                   Direct Number: 212-326-3611
294125-600001                                                   pldouglas@JonesDay.com

**VIA TELEFAX**

David Sadoff, Esq.
Associate Counsel
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E., Suite 3E400
Washington, D.C. 20002

Re:    NeCMSC Back-Up Tapes

Dear David:

I am enclosing a spreadsheet summarizing eMag's review of the NeCMSC pre-Memorial Day 2005 back-up tapes. I am sending it in an effort to simplify the Renew Data back-up tape analysis that your office wishes to undertake. In a recent telephone conversation, you indicated that OIG might not wish Renew Data to review back-up tapes containing emails from 2003 or earlier.

As the spreadsheet indicates, only thirteen of the pre-Memorial Day back-up tapes were found to contain emails. These email files all have back-up dates in 2002-2003. We suggest, therefore, that OIG consider limiting the Renew Data review to the sixteen back-up tapes in use on Memorial Day 2005. This would enable us to return to the relatively simply agreement you and Laura Smith negotiated sometime ago.

Very truly yours,

Philip Le B. Douglas

Enclosure

cc:    Timothy M. Broas, Esq.
       Franklin Parker, Esq.

**EXHIBIT
139**

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS
PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

7/21/06

### Summary of eMag Review of NeCMSC Back-Up
### Tapes in Use On or Before Memorial Day 2005

| Item No. | Date Tape Received | Barcode | Media Type | Notes/markings on Physical Tape | Backup Date | Comments |
|---|---|---|---|---|---|---|
| 1 | 6/3/2005 | 2397 A0005 | DLT | PW01674985 | N/A | No valid Exchange database found |
| 2 | 6/3/2005 | 2397 A0001 | DLT | PW01674985 | N/A | No valid Exchange database found |
| 3 | 6/3/2005 | 2397 A0003 | DLT | PW01674985 | N/A | No valid Exchange database found |
| 4 | 6/3/2005 | 2397 A0007 | DLT | PW01674985 | N/A | No valid Exchange database found |
| 5 | 6/3/2005 | 2397 A0002 | DLT | PW01674985 | N/A | No valid Exchange database found |
| 6 | 6/3/2005 | 2397 A0006 | DLT | PW01674985 | N/A | No valid Exchange database found |
| 7 | 6/3/2005 | 2397 A0004 | DLT | PW01674985 | N/A | No valid Exchange database found |
| 8 | 6/3/2005 | 2397 NOLABEL | DLT | Tape with no label | N/A | No valid Exchange database found |
| 9 | 6/6/2005 | 2397B1 | DLTIV | B1 | 10/26/2003 15:17 | Completed; No email files found |
| 10 | 6/6/2005 | 2397B2 | DLTIV | B2 | 26-Oct-03 11:47:34 | Completed; No email files found |
| 11 | ✓6/6/2005 | 2397B3 | DLTIV | B3 | 26-Oct-03 08:46:44 | **Completed; Found NSF files** |
| 12 | 6/6/2005 | 2397B4 | DLTIV | B4 | 10/26/2003 2:47 | Completed; No email files found |
| 13 | ✓6/6/2005 | 2397B5 | DLTIV | B5 | 15-Oct-03 03:46:22 | **Completed; Found 2 PST files** |
| 14 | ✓6/6/2005 | 2397B6 | DLTIV | B6 | 26-Oct-03 07:47:40 | **Completed; Found NSF files** |
| 15 | ✓6/6/2005 | 2397B7 | DLTIV | B7 | 10/19/2003 6:47 | **Completed; Found NSF files** |
| 16 | ✓6/6/2005 | 2397920921 | DLTIV | Data Archive 9/29/02 1 | 29-Sep-02 07:09:32 | **Completed; Found 316 NSF files** |
| 17 | 6/6/2005 | 2397920922 | DLTIV | Data Archive 9/29/02 2 | 04-Oct-02 12:25:00 | Completed; No email files found |
| 18 | 6/6/2005 | 2397920923 | DLTIV | Data Archive 9/29/02 3 | 29-Sep-02 14:11:46 | Completed; No email files found |
| 19 | 6/6/2005 | 2397920924 | DLTIV | Data Archive 9/29/02 4 | Blank Tape | Blank |
| 20 | 6/6/2005 | 2397920925 | DLTIV | Data Archive 9/29/02 5 | Blank Tape | Blank |
| 21 | ✓5/3/2006 | 3677 10C | DLT | 10C | 16-Nov-03 02:46:52 | **Completed; Found NSF files** |
| 22 | 5/3/2006 | 3677 2D | DLT | 2D | 23-Dec-03 15:01:08 | Completed; No email files found |
| 23 | 5/3/2006 | 3677 3C | DLT | 3C | 16-Nov-03 09:46:16 | Completed; No email files found |
| 24 | ✓5/3/2006 | 3677 3D | DLT | 3D | 21-Dec-03 12:32:16 | **Completed; Found NSF files** |
| 25 | 5/3/2006 | 3677 4C | DLT | 4C | 16-Nov-03 18:46:52 | Completed; No email files found |
| 26 | ✓5/3/2006 | 3677 4D | DLT | 4D | 23-Dec-03 12:31:56 | **Completed; Found NSF files** |
| 27 | ✓5/3/2006 | 3677 5C | DLT | 5C | 04-Nov-03 08:44:20 | **Completed; Found PST files** |
| 28 | 5/3/2006 | 3677 5D | DLT | 5D | 21-Dec-03 18:31:40 | Completed; No email files found |
| 29 | ✓5/3/2006 | 3677 6C | DLT | 6C | 16-Nov-03 23:47:22 | **Completed; Found NSF and PST files** |
| 30 | 5/3/2006 | 3677 6D | DLT | 6D | 21-Dec-03 20:32:08 | Completed; No email files found |
| 31 | ✓5/3/2006 | 3677 7C | DLT | 7C | 09-Nov-03 23:47:24 | **Completed; Found NSF files** |
| 32 | ✓5/3/2006 | 3677 7D | DLT | 7D | 14-Dec-03 23:30:50 | **Completed; Found NSF and PST files** |
| 33 | 5/3/2006 | 3677 8C | DLT | 8C | Blank Tape | Blank tape |
| 34 | ✓5/3/2006 | 3677 8D | DLT | 8D | 21-Dec-03 23:32:12 | **Completed; Found NSF and PST files** |
| 35 | 5/3/2006 | 3677 9C | DLT | 9C | Blank Tape | Blank tape |
| 36 | 5/3/2006 | 3677 L5 | DLT | L5 6/13 | Blank Tape | Blank tape |
| 37 | 5/3/2006 | 3677 L6 | DLT | L6 6/13 | Blank Tape | Blank tape |
| 38 | 5/3/2006 | 3677 L7 | DLT | L7 6/13 | Blank Tape | Blank tape |
| 39 | 5/3/2006 | 3677 L8 | DLT | L8 6/13 | Blank Tape | Blank tape |
| 40 | 5/3/2006 | 3677 NOLABEL | DLT | None | Blank Tape | Blank tape |
| 41 | 5/3/2006 | 3677 R1 | DLT | R16/13 | Blank Tape | Blank tape |
| 42 | 5/3/2006 | 3677 R2 | DLT | R2 6/13 | Blank Tape | Blank tape |
| 43 | 5/3/2006 | 3677 R4NOR3 | DLT | R4 NO R3 6/13 | Blank Tape | Blank tape |
| 44 | 5/3/2006 | 3677 R5 | DLT | R5 6/13 | Blank Tape | Blank tape |
| 45 | 5/3/2006 | 3677 R6 | DLT | R6 6/13 | Blank Tape | Blank tape |
| 46 | 5/3/2006 | 3677 R7 | DLT | R7 6/13 | Blank Tape | Blank tape |
| 47 | 5/3/2006 | 3677 R8 | DLT | R8 6/13 | Blank Tape | Blank tape |

#### NOTES:

Checked & Bold Entries: The thirteen Pre-Memorial Day 2005 back-up tapes found to contain emails (all of which have a back-up date in 2002-2003).

Items 1-8: The email back-up tapes in use on Memorial Day 2005.

Items 21-47: 27 of 31 back-up tapes selected from the box inspected by OIG in February 2006. Of the remaining four tapes, three ("L2 6/13", "L3 6/13" and "L4 6/13") were each found to have a back-up date of June 11, 2005, i.e. after the Memorial Day incident, and one ("Email 6/9/05") was found to have a June 6, 2005 back-up date and no emails.

"NSF": Lotus Notes email files.

"PST": Outlook email files.

# NETWORK FaX

From:    New York Network Fax Server

To:      Iliana Arriaga/JonesDay@JonesDay

This notification confirms the success or failure of the completed fax transmission described below .

Fax to 1-202-906-4695 was successful

FROM:ja001203
JP04Y001.TIF pg:3 sec:150 usr:JP010686 bil:294125-600001 stat:SENT v:(202) 906-4882
07/21/06 17:29 212-755-7306    ->    1-202-906-4695 Jones Day         Pg 001

    TO:    David Sadoff        DATE:  07/21/06

    COMPANY: Office of Inspector General, Office of Investigat

    FAX:    1-202-906-4695        PAGES:  Cover Plus 2

    FROM:   Philip Le B. Douglas        PHONE:  212-326-3611

    RE:

============================ MESSAGE ============================
Please see the attached.

*Confirmation message processed  07/21/2006 05:34:11 PM*