

NATIONAL RAILROAD PASSENGER CORPORATION
Inspector General, Investigations, 10 G Street, NE, Suite 3E-400, Washington, DC 20002

## *VIA FACSIMILE AND FIRST-CLASS MAIL*

July 24, 2006

Philip Le B. Douglas, Esquire
Jones Day
222 East 41st Street
New York, NY  10017-6702

> Re:    Compliance by Bombardier, Alstom and/or
> NeCMSC with Inspector General Subpoenas Nos.
> 05-05, 05-07, 05-09, 07-17, 05-18 and 05-20

Dear Phil:

Thank you for your letter late Friday afternoon, July 21, 2006 and the appended "Schedule of eMag Review of NeCMSC Back-up Tapes in Use On or Before Memorial Day 2005". Particularly in light of your e-mail today advising that you will be on vacation for two weeks after July 28, I wanted to call your attention, again, to some of the significant open issues.

On July 10 I forwarded to you OIG's comments on a draft "Agreement Regarding Transfer and Analysis of Backup Tapes and Email Drives" drafted and forwarded to this office by your former associate, Laura Smith, Esquire.[1] Notwithstanding our discussion in several conversations on and after July 10 that Respondents would promptly review and comment on OIG's revisions to Ms. Smith's draft, to date we have received no comments.  As I have previously stated, it is critical to OIG that its consultant(s) have access to NeCMSC back-up tapes and email server drives to verify Respondent's representations that responsive documents cannot be retrieved from the NeCMSC media.  At your suggestion, we used Ms. Smith's draft proposal as a starting point for an agreed protocol for the limited, described review by the consultants.[2]  Your reference in the July 21 letter "to the relatively simply [sic] agreement you and Laura Smith negotiated sometime ago" is in error.

---

[1]  A document comprising OIG's prior, incomplete draft comments was mistakenly e-mailed to you on July 7.

[2]  Ms. Smith forwarded a draft agreement in February 2006 and we discussed it briefly. However, she subsequently stated that the NeCMSC email server drives had not been removed and preserved as originally described, but that they had been re-installed in the NeCMSC server in October or November 2005, and, apparently, had been substantially overwritten.  This news lowered the priority of the review of the drives under an agreed protocol, and the proposed agreement was not again addressed until you and I talked about the back-up tapes and I forwarded OIG's comments to the proposed agreement on July 7 and 10.

EXHIBIT
140
ALL-STATE LEGAL

We spoke at length on July 11 and 13 about "open issues" regarding the Bombardier and NeCMSC responses to the subpoenas.[3] At your request/suggestion, on July 13 I provided OIG's specific comments on deficiencies and ambiguities in the proposed certifications of compliance, and we discussed statements that might satisfy those comments and concerns. You stated that you would review those comments, re-draft proposed certifications and forward them for review. We have not received any proposed, revised certifications of compliance.

As I think is plain from "Petitioner's Response To June 27, 2006 Order" that we served on you, OIG is available and ready to negotiate and resolve outstanding issues of Respondents' compliance with the subpoenas. However, on or before August 8, 2006, OIG will file an amended petition seeking enforcement of unresolved compliance issues.

Sincerely,

David Sadoff
Associate Counsel to the Inspector General
National Passenger Railroad Corporation


cc:     Timothy M. Broas, Esq.


---

[3] Those issues included Bombardier's and NeCMSC's 1) failure to describe destroyed documents in their responses to the subpoenas; 2) apparently incomplete review and analysis of the email server discs and backup tapes for responsive e-mails and other electronic documents; 3) production of substantial numbers of electronic documents in a "facsimile" format that lacks the search features and detail that the documents have in their native format(s); and, 4) providing incomplete, ambiguous and/or non-responsive certifications of compliance to the subpoenas.

2

**Philip Le B**
**Douglas/JonesDay**
Extension 7-3611

07/24/2006 05:58 PM

To "David Sadoff" <SadoffD@amtrak.com>

cc "Timothy Broas" <tbroas@winston.com>

bcc

Subject Subpoenas to Bombardier, Alstom & NeCMSC

David,

I have your fax of today's date. Let's try to wrap up these issues this week.

I propose that we first deal with the Renew Data review. Why not go back to the original draft agreement that you discussed with Laura Smith providing for a Renew Data re-examination of the 16 tapes in use on Memorial Day, 2005?

To our mind, there seems to be no real point in spending OIG money on a Renew Data examination of the remainder of the tapes (Nos. 9-47) on the schedule I sent you on July 21:

    1.    Why have Renew Data review the 13 tapes from 2002-2003 that eMag has **already determined** contain old emails?

    2.    Is there any real need to have Renew Data go back over the other tapes (Nos. 9, 10,12,17,18,19,20,22,23,25, 28, & 30) that were also backed up long ago in 2002-2003 but which **do not contain emails?**

    3.    Similarly does OIG really want to spend money to have Renew data confirm eMag's conclusion that the remainder of the tapes (Nos. 33 &35-47) are **all blank!**

As you know, we offered two weeks ago to have our litigation support specialists come to your offices to see if they can get OIG's (as yet undisclosed) document management system to work with the TIFF images and metadata Bombardier has provided, or, in the alternative, try one of OIG's disks on our own firm's software. As we have informed you on different occasions, all commercially available systems of which we are aware can organize individual TIFF pages into their respective documents and coordinate each document with metadata. Unfortunately, you did not call to schedule such a meeting until mid-morning on Friday, July 21, the last day before your technical advisor was to leave on vacation. As Cathy Wenderoth informed you on Friday, she was not available that day.

Finally, as I informed you two weeks ago, Bombardier will execute its certificate once all other open issues have been resolved.

Philip Le B. Douglas
Jones Day
222 East 41 Street
New York, NY 10017
212-326-3611





EXHIBIT
141

This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========



"Sadoff, David "
<SadoffD@amtrak .com>

07/25/2006 02:15 PM

To 'Philip Le B Douglas' <pldouglas@JonesDay .com>

cc

bcc

Subject RE: Subpoenas to Bombardier, Alstom & NeCMSC

History:    🔁 This message has been forwarded.

Phil,

   I believe it will be far more productive to speak on the telephone about the outstanding issues rather than endlessly exchange e-mails. Accordingly, I propose that these comments form the bookend to your attached e-mail and that we address unresolved issues by telephone.

   In response to your e-mail, I emphasize (as I have previously stated) that it is important to OIG that its consultant(s) have access to the various NeCMSC electronic (listed in our revisions to the draft agreement) in order to confirm that the back-up tapes (and email drives) have no retrievable, responsive data.

   We do not understand why the same protocols cannot apply to 1, 16 or more tapes. While, as you know, OIG is not surrendering its claim that Respondents should pay for the consultants' analysis and retrieval of responsive documents, Respondents would not waive their right to oppose that claim.

   I will telephone you shortly to discuss these and other matters.

         ds
 -----Original Message-----
**From:** Philip Le B Douglas [mailto:pldouglas@JonesDay.com]
**Sent:** Monday, July 24, 2006 5:59 PM
**To:** Sadoff, David
**Cc:** Timothy Broas
**Subject:** Subpoenas to Bombardier, Alstom & NeCMSC


         David,

            I have your fax of today's date. Let's try to wrap up these issues this week.

            I propose that we first deal with the Renew Data review. Why not go back to the original draft agreement that you discussed with Laura Smith providing for a Renew Data re-examination of the 16 tapes in use on Memorial Day, 2005?

            To our mind, there seems to be no real point in spending OIG money on a Renew Data examination of the remainder of the tapes (Nos. 9-47) on the schedule I sent you on July 21:

            1.    Why have Renew Data review the 13 tapes from 2002-2003 that eMag has **already determined** contain old emails?

            2.    Is there any real need to have Renew Data go back over the other tapes (Nos. 9, 10,12,17,18,19,20,22,23,25, 28, & 30) that were also backed up long ago in 2002-2003 but which

EXHIBIT
142
ALL-STATE LEGAL®

**do not contain emails?**

3.      Similarly does OIG really want to spend money to have Renew data confirm eMag's conclusion that the remainder of the tapes (Nos. 33 &35-47) are all blank!

As you know, we offered two weeks ago to have our litigation support specialists come to your offices to see if they can get OIG's (as yet undisclosed) document management system to work with the TIFF images and metadata Bombardier has provided, or, in the alternative, try one of OIG's disks on our own firm's software. As we have informed you on different occasions, all commercially available systems of which we are aware can organize individual TIFF pages into their respective documents and coordinate each document with metadata. Unfortunately, you did not call to schedule such a meeting until mid-morning on Friday, July 21, the last day before your technical advisor was to leave on vacation. As Cathy Wenderoth informed you on Friday, she was not available that day.

Finally, as I informed you two weeks ago, Bombardier will execute its certificate once all other open issues have been resolved.

Philip Le B. Douglas
Jones Day
222 East 41 Street
New York, NY 10017
212-326-3611

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========



"Sadoff, David "
<SadoffD@amtrak .com>

07/26/2006 06:49 PM

To  'Philip Le B Douglas' <pldouglas@JonesDay .com>

cc

bcc

Subject  FW:

Phil:

    As we discussed in the telephone call this p.m., I'm forwarding Renew Data's description of the reports they prepare incident to their review of back-up tapes.  ds

-----Original Message-----
**From:** Tom Antisdel [mailto:tantisdel@renewdata.com]
**Sent:** Wednesday, July 26, 2006 4:44 PM
**To:** Sadoff, David
**Subject:**

**Please find attached our sample Header Report and File Listing Report .**

**Thanks Dave**

**Tom Antisdel, Esq.**
**Senior Sales Manager**
**RenewData Corporation - www.RenewData.com**
**(202) 494-7417**
**tantisdel@renewdata.com**

Confidentiality Notice: This electronic communication contained in this e-mail from Tom Antisdel (including any attachments) may contain privileged and/or confidential information. This communication is intended only for the use of indicated e-mail addressees. Please be advised that any disclosure, dissemination, distribution, copying, or other use of this communication or any attached document other than for the purpose intended by the sender is strictly prohibited. If you have received this communication in error, please notify the sender immediately by reply e-mail and promptly destroy all electronic and printed copies of this communication

and any attached document. Thank you in advance for your cooperation. Tape Header Report - Sample.xls

Tape File Listing - Sample.xls



# JONES DAY

222 EAST 41ST STREET · NEW YORK, NEW YORK 10017-6702
TELEPHONE: 212-326-3939 · FACSIMILE: 212-755-7306

Direct Number: (212) 326-3611
pldouglas@jonesday.com

**Confidential Investigative Communication**
**Disclosure Restricted to head of Designated**
**Federal Entity Pursuant to 5 U.S.C. App. 3 § 8G(d)**

JP010685
294125-600001

July 27, 2006

VIA FACSIMILE (202) 906-4695

David Sadoff, Esq.
Associate Counsel
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E., Suite 3E400
Washington, D.C. 20002

Re: NeCMSC Back-Up Tapes

Dear David:

Enclosed is our July 27, 2006 revision of the proposed Agreement Regarding Transfer and Analysis of Backup Tapes as Email Drives, which attempts to address the comments made by you and Colin during yesterday's conversation. We have provided a blackline comparison to the draft we sent you on July 25, 2006. Please forward any suggested revisions in writing.

Please be aware that in the event OIG renews active litigation, all settlement discussions will cease and any pending offers should be deemed withdrawn.

Very truly yours,

Philip L. Douglas

Enclosure



NYI-2273835v1

ATLANTA · BEIJING · BRUSSELS · CHICAGO · CLEVELAND · COLUMBUS · DALLAS · FRANKFURT · HONG KONG · HOUSTON
IRVINE · LONDON · LOS ANGELES · MADRID · MENLO PARK · MILAN · MOSCOW · MUNICH · NEW DELHI · NEW YORK · PARIS
PITTSBURGH · SAN DIEGO · SAN FRANCISCO · SHANGHAI · SINGAPORE · SYDNEY · TAIPEI · TOKYO · WASHINGTON

**JONES DAY DRAFT – 7/~~25~~27/06**
**WITHOUT PREJUDICE**

AGREEMENT REGARDING
TRANSFER AND ANALYSIS OF BACKUP TAPES
AND EMAIL DRIVES

WHEREAS, beginning on April 14, 2005, cracks were found on the spokes of axle-mounted brake discs on the trailer cars of the Acela train sets as a result of an inspection by Federal Railroad Administration personnel; and

WHEREAS, in the course of its related investigation, the Amtrak Office of Inspector General ("OIG") served Subpoena Nos. 05-05, 05-07, 05-09, 05-17, 05-18, and 05-20 (the "Subpoenas") on Alstom Transportation, Inc. ("Alstom"), Bombardier Inc. ("Bombardier"), and Northeast Corridor Maintenance Services Corporation ("NeCMSC") (collectively, the "Respondents") in May and June 2005; and

WHEREAS, on June 8, 2005, NeCMSC informed OIG that its live Microsoft Exchange email data had been damaged or destroyed on May 30, 2005 due to a server failure; and

WHEREAS, NeCMSC's outside counsel represented at that time that they had retained Kroll Ontrack, Inc. ("Kroll") in an attempt to recover NeCMSC's Microsoft Exchange email data from three email drives used on May 30, 2005 (the "Memorial Day Email Drives"), and that they had retained eMag Solutions ("eMag") in an attempt to recover NeCMSC's Microsoft Exchange email data from eight of sixteen backup tapes in the tape back-up drive on May 30, 2005 (the "Memorial Day Email Tapes"); and

WHEREAS, NeCMSC's counsel have represented that on June 3, 2005 eMag received the Memorial Day Email Tapes for analysis and on June 5, 2005, eMag received twelve additional (the "Twelve Back-up Tapes") for safekeeping; and

WHEREAS, NeCMSC's outside counsel represented to OIG on June 8, 2005 that Kroll and eMag had respectively ~~an~~ analyzed the Memorial Day Email Drives and the Memorial Day Email Tapes and concluded that Microsoft Exchange email data could not be recovered; and

WHEREAS, NeCMSC personnel have represented that, when Kroll returned the Memorial Day Email Drives to NeCMSC, certain of them were reinserted into the email server, leaving only three of the email drives that were in place on May 30, 2005 intact (drives #4 and 5, plus a replacement drive that was used briefly on May 30, 2005); ~~and~~

WHEREAS, during a February 2006 inspection (the "February 2006 Inspection") of the NeCMSC computer facility by OIG and NeCMSC outside counsel, a box of back-up tapes was observed that contained forty-eight back-up tapes, labeled as described in Attachment 1 hereto (the "Forty-Eight Tapes"); and

WHEREAS, subsequent to that inspection, ~~OIG asked~~ NeCMSC~~'s outside counsel~~ **undertook** to determine whether any of the Forty-Eight Tapes contained recoverable emails and data; and

WHEREAS, NeCMSC's outside counsel have represented that on May 3, 2006, in accordance with OIG's request, eMag received for analysis thirty-one of the Forty-Eight Tapes (the "Thirty-One EMag Tapes") because the labels on the remaining seventeen back-up tapes did not appear to contain email-related data.

WHEREAS, on May 12, 2006, NeCMSC's outside counsel provided OIG with Attachment 2 hereto indicating that based on its recent analysis of NeCMSC back-up tapes, eMag had determined that thirteen contained recoverable email data from the period 2002-2003; and

WHEREAS, on July 21, 2006, NeCMSC's outside counsel provided OIG with a summary of NeCMSC back-up tapes in use on or before Memorial Day 2005 (attached hereto to as Attachment 3); and

WHEREAS, OIG now wishes to obtain an independent assessment of the recoverability of Microsoft Exchange email data from NeCMSC's backup tapes and email drives; and

WHEREAS, OIG has retained Renew Data Corp. ("Renew Data") as an expert consultant, **and may wish to retain others (the "Additional Consultants")** to review the electronic media described in Paragraph 1 herein, and to advise OIG concerning the feasibility of recovery of electronic data and documents contained thereon; and

WHEREAS, counsel for Respondents wish to ensure that (i) the integrity of the backup tapes and email drives is preserved, (ii) avoid the production of non-responsive information and (iii) any attorney-client privilege, work product, trial preparation, or trade secret protections are preserved and not waived; and

WHEREAS, the OIG and counsel for Respondents have agreed that it is appropriate to set forth their understanding as to how this can be achieved;

IT IS HEREBY STIPULATED AND AGREED by and between counsel for Respondents and the OIG that:

1.    This agreement concerns (i) the Memorial Day Email Drives that were in the NeCMSC email server at various times on May 30, 2005; (ii) the Memorial Day Email Tapes that were previously reviewed and analyzed by eMag; (iii) the remaining eight NeCMSC backup tapes that were in the NeCMSC tape backup drive at various times on May 30, 2005, but which were not previously reviewed or analyzed by eMag (the "Overwritten**Unanalyzed Memorial Day** Tapes"); and (iv) the Twelve Back-Up Tapes received by eMag for safekeeping on June 6, 2005; and (v) the

[Forty-Eight Back-Up Tapes observed during the February 2006 Inspection] [the Thirty-One Back-Up Tapes received by eMag on May 3, 2006]). These above-described email drives and back-up tapes are referred to herein as "NeCMSC Media".

2.    Once this agreement, including Annex A, is fully executed, Renew Data shall take temporary custody of the NeCMSC Media and shall take appropriate steps to record the chain of custody, prevent any changes to, or the loss of any information on, the NeCMSC Media and shall not release either the NeCMSC Media or information derived therefrom to anyone except in accordance with this agreement.

3.    Renew Data's review of the NeCMSC Media shall be limited to determining: (i) whether any Microsoft Exchange email data is recoverable, in whole or in part; (ii) the nature and extent of damage to the Microsoft Exchange email data and/or the NeCMSC Media; and (iii) to the extent feasible, the cause of such damage., and; (iv) the date-range, file type and volume of any recoverable pre-April 14, 2005 email files.  Renew Data shall not read the substance of any email or other record found on the NeCMSC Media.

4.    With respect to the Overwritten Tapes, Renew Data shall not conduct any testing or analysis of the OverwrittenUnanalyzed Memorial Day Tapes, except in the presence of eMag or another third-party expert selected by NeCMSC.

5.    Any and all tests or analyses conducted on the NeCMSC Media shall be non-destructive of the original. It is contemplated that such tests or analyses will be made on a "virtual copy" of the original if feasible.

6.    If Renew Data determines that, for any Email Drive or back-up tape, any Microsoft Exchange email data is recoverable, Renew Data shall promptly notify Respondents' counsel, but theprovide counsel for Respondents' and OIG with a report that is strictly limited to the

**information authorized by Paragraph 3 of this Agreement.  Under no circumstances shall this report disclose the substance of any individual file.  Any** recoverable data may not be reviewed by Renew Data or disclosed to anyone (including OIG) other than Respondents' counsel. **Renew Data shall promptly return the** NeCMSC Media and all copies thereof and any information derived therefrom ~~shall be returned~~ to Respondents' counsel so that any data can be recovered and reviewed by Respondents.  Respondents will undertake to review and produce responsive, non-privileged material promptly.  **Renew Data may select at random, and print, but not read, examples of any two recoverable emails that, on or before May 30, 2005, were backed up on any of the Unanalyzed Memorial Day Tapes (the "Exemplars").  Renew shall not make or keep any paper or electronic copies of said Exemplars.  Those Exemplars must not be disclosed to anyone other than Respondents and must be immediately placed in a sealed envelope (the "Seales Exemplars") and returned to counsel for Respondents.**

7.      When returning the original and all copies made of the NeCMSC Media, Renew Data may choose to place some or all of such copies (but not the original) in sealed envelopes (the "Sealed Copies").  With respect to **the Sealed Exemplars and** any such Sealed Copies, Respondents shall take appropriate steps to record the chain of custody and to maintain the Sealed Copies under seal to prevent any changes to or the loss of any information.

8.      Renew Data shall not undertake any actual recovery of ~~such~~ recoverable data, but shall only make the determinations set forth in paragraph 3, above.  It is contemplated, however, that Respondents' counsel may request, through OIG's counsel, the assistance of Renew Data in recovering such data by providing relevant information or suggesting particular tools, provided that Respondents reimburse OIG for the reasonable cost of such consultation or service.

9.    The OIG shall not have access to or review any data that may be contained on or recoverable from the NeCMSC Media provided to Renew Data under this agreement, but shall only review data that has been formally produced by Respondents.

10.    ~~The OIG shall provide Renew Data~~**In the event OIG desires to retain Additional Consultants and to analyze portions of the NeCMSC Media not analyzed by Renew Data, and Respondents provide their consent, said Additional Consultants shall be subject to all the terms and provisions of this Agreement.**

**11.    The OIG shall provide Renew Data and any Additional Consultants** with a copy of this agreement and shall require Renew Data **and any Additional Consultants** to agree to be bound by the terms of this agreement (using a form substantially similar to Annex A). The OIG shall provide Respondents with a copy of the form signed by Renew Data **and any Additional Consultants** prior to the transfer ~~of~~ the NeCMSC Media to Renew Data.

~~11.~~**12.** By entering into this agreement, neither the OIG nor the Respondents waive any position, argument or objection they may have relating to the OIG's investigation or Subpoenas, or the Respondents' compliance or cooperation therewith.

~~12.~~**13.** The OIG will not contend that NeCMSC's voluntary delivery to OIG of the NeCMSC Media for the limited purposes authorized herein constitutes a waiver of any applicable privilege or objection to the production of the NeCMSC Media and any information contained therein.

~~13.~~**14.** In entering into this agreement, the OIG does not waive its right, if any, to contend (a) that Respondents' have made inadequate efforts to restore, review and produce responsive electronic data and documents from the NeCMSC Media, or (b) that the costs OIG has incurred for the services of Renew Data should be paid by Respondents.

14.**15.** By entering into this agreement, Respondents do not waive their rights, if any, to contend (a) that OIG's investigation has exceeded its proper limits, or (b) that OIG is otherwise obligated to reimburse Respondents for all costs, including legal fees, associated with the investigation.

15.**16.** In entering into this agreement, the Respondents do not waive their right to object to the admissibility of any results of Renew Data's analysis.

Dated: Washington, D.C.      D.C. OFFICE OF INSPECTOR GENERAL,
       July___, 2006           NATIONAL RAILROAD PASSENGER CORP.


By: _____
     Title:
     10 G Street N.E., Suite 3E-400
     Washington, D.C. 20002

Dated: Washington, D.C.      WINSTON & STRAWN LLP
       July___, 2006


By:_____
     Timothy M. Broas, Esq.
     1700 K Street, N.W.
     Washington, D.C. 20006-3817
     Counsel for Alstom and Alstom's interest in NeCMSC

Dated: New York, New York    JONES DAY
       July ___, 2006


By_____
     Philip Le B. Douglas, Esq.
     222 East 41st Street
     New York, NY 10017
     Counsel for Bombardier and
     Bombardier's interest in NeCMSC

Annex A

## DECLARATION AND ACKNOWLEDGMENT CONCERNING
## AGREEMENT REGARDING TRANSFER AND
## ANALYSIS OF BACKUP TAPES AND EMAIL DRIVES

Renew Data, Inc. has received and carefully read a copy of the annexed Agreement

Regarding Transfer and Analysis of Backup Tapes and Email Drives (the "Agreement") and

understands the provisions of the Agreement.  Renew Data has had the opportunity to consult with

counsel, if desired.

Renew Data understands that this Agreement is intended to protect both (i) the integrity of

any data that may be on these media and (ii) any privileges that may pertain to any such data.

Renew Data agrees to be bound by the provisions of this Agreement.


Signature: _____

Title: _____

Date: _____


Upon signature, this agreement should be faxed to:

David Sadoff, Esq. 202-906-4695

Timothy M. Broas, Esq. 202-282-5100

Philip Le B. Douglas, Esq.  212-755-7306

## Confirmation Report — Memory Send

05 JUL 27 PM 5:20

IN_____CUT ✓VE

| | |
|---|---|
| Page | : 001 |
| Date & Time: | Jul-27-06  05:13pm |
| Line 1 | : 912127557306 |
| Line 2 | : |
| Machine ID : | 7143 |

| | | |
|---|---|---|
| Job number | : | 018 |
| Date | : | Jul-27 05:12pm |
| To | : | ☎15294125600001#912029064695 |
| Number of pages | : | 010 |
| Start time | : | Jul-27 05:12pm |
| End time | : | Jul-27 05:13pm |
| Pages sent | : | 010 |
| Status | : | OK |

Job number    : 018        **\*\*\* SEND SUCCESSFUL \*\*\***



## Facsimile Transmission

222 East 41st Street • New York, New York  10017 • (212) 326-3939
Facsimile: (212) 755-7306
pldouglas@jonesday.com

2006 JUL 27 P 5: 14

**July 27, 2006**

**Please hand deliver the following facsimile to:**

**Name:  David Sadoff, Esq.
         Associate Counsel**

**Facsimile No.: (202) 906-4695**

**Company: Office of the Inspector General**

**Number of pages (including this page):   10**

**Telephone No.: (202) 906-4982**

**From: Philip L. Douglas**

**Send Copies To:**

**Direct Telephone No.: (212) 326-3611**

**JP No.: JP010685**

☐ **Copies distributed** _____

**CAM No.:   294125-600001**

**Re:    NeCMSC Back-Up Tapes**

**NOTICE:** This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection.  If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone at the direct telephone number noted above.

**Message:**

**Confidential Investigative Communication
Disclosure Restricted to head of Designated
Federal Entity Pursuant to 5 U.S.C. App. 3 § 8G(d)**

**Please call us immediately if the facsimile you receive is incomplete or illegible.  Please ask for the facsimile operator.**

ATLANTA  •  BEIJING  •  BRUSSELS  •  CHICAGO  •  CLEVELAND  •  COLUMBUS  •  DALLAS  •  FRANKFURT  •  HONG KONG  •  HOUSTON
IRVINE  •  LONDON  •  LOS ANGELES  •  MADRID  •  MENLO PARK  •  MILAN  •  MOSCOW  •  MUNICH  •  NEW DELHI  •  NEW YORK
PARIS  •  PITTSBURGH  •  SAN DIEGO  •  SAN FRANCISCO  •  SHANGHAI  •  SINGAPORE  •  SYDNEY  •  TAIPEI  •  TOKYO  •  WASHINGTON

 **JONES DAY**®

# Facsimile Transmission

222 East 41st Street • New York, New York 10017 • (212) 326-3939
Facsimile: (212) 755-7306
pldouglas@jonesday.com

2006 JUL 27 P³⁵:¹⁴27 PM 5:20
IN_____ OUT__ √⁄⁄⁄⁄⁄

**July 27, 2006**

Please hand deliver the following facsimile to:

Name:  **David Sadoff, Esq.**
        **Associate Counsel**

Facsimile No.: **(202) 906-4695**

Company: **Office of the Inspector General**

Number of pages (including this page):    **10**

Telephone No.: **(202) 906-4882**

From: **Philip L. Douglas**

Send Copies To:

Direct Telephone No.: **(212) 326-3611**

JP No.: **JP010685**

☐ **Copies distributed** _____

CAM No.:   **294125-600001**

Re:    **NeCMSC Back-Up Tapes**

---

**NOTICE:** This communication is intended to be confidential to the person to whom it is addressed, and it is subject to copyright protection. If you are not the intended recipient or the agent of the intended recipient or if you are unable to deliver this communication to the intended recipient, please do not read, copy or use this communication or show it to any other person, but notify the sender immediately by telephone at the direct telephone number noted above.

---

**Message:**

**Confidential Investigative Communication**
**Disclosure Restricted to head of Designated**
**Federal Entity Pursuant to 5 U.S.C. App. 3 § 8G(d)**

Please call us immediately if the facsimile you receive is incomplete or illegible. Please ask for the facsimile operator.

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK
PARIS • PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017-6702

TELEPHONE: 212-326-3939 • FACSIMILE: 212-755-7306

Direct Number:  (212) 326-3611
pldouglas@jonesday.com

**Confidential Investigative Communication**
**Disclosure Restricted to Head of Designated**
**Federal Entity Pursuant to 5 U.S.C. App. 3 § 8G(d)**

JP010685                               July 28, 2006
294125-600001

<u>VIA FACSIMILE (202) 906-4695</u>

David Sadoff, Esq.
Associate Counsel
Office of the Inspector General
Legal Counsel's Office
10 "G" Street, N.E., Suite 3E400
Washington, D.C. 20002



Re:  <u>NeCMSC Back-Up Tapes</u>

Dear David:

As you know, you, Colin Carriere and I spoke on July 26, 2006 as part of our mutual effort over the past several weeks to resolve all open issues prior to the resumption of litigation on August 8, 2006.  In the course of our discussion of a possible agreement to have Renew Data review NeCMSC back-up tapes, OIG demanded that NeCMSC (1) restore the thirteen back-up tapes from 2002 – 2003 referenced in our May 12, 2006 memorandum; (2) search those tapes for all emails responsive to "Electronic Search 1"; and (3) produce any such emails constituting pre-April 14, 2005 "notice" of broken or cracked spokes on the friction brake discs.

As I stated at the time, I was very concerned by this request for several reasons.  <u>First,</u> Respondents, who have already incurred $2 million in investigation – related costs, believed they were negotiating regarding a conclusion to, <u>not an expansion of,</u> this investigation.  <u>Second,</u> because of the potentially large costs and delays involved in a search of company-wide server back-up tapes, OIG had previously limited all its Electronic Search 1 requests to individual witness hard drives.  <u>Third,</u> you suggested in our prior conversations that OIG was likely to have little interest in NeCSMC emails from 2002-2003 period.  <u>Fourth,</u> there was no possibility that the new search could be completed prior to the resumption of litigation.

Under these circumstances, Respondents cannot be expected to continue to absorb the high costs of this investigation.  From this point forward, therefore, OIG must pay in advance all

NYI-2273989v1

**JONES DAY**

David Sadoff, Esq.
Associate Counsel
Office of the Inspector General
July 28, 2006
Page 2

of Respondents' investigation costs, including, but not limited to, those attributable to the recovery of emails from the thirteen old back-up tapes. eMag will has advised us that it will cost no more than $13,000 to (1) restore the thirteen tapes referenced in our May 12th memorandum, (2) conduct Electronic Search 1 and (3) provide Respondents with copies of all emails identified by that search. Once eMag has confirmed that satisfactory payment arrangements have been made with OIG, Respondents will authorize the eMag to begin the above-described work. Please be advised, however, that in the event of litigation, Respondents will seek full reimbursement of all prior costs, including legal fees, incurred in connection with this investigation.

We hope that OIG will reconsider its position and resume the discussions that we all believed were close to bringing your investigation to a close.

Very truly yours,

Philip L. Douglas