UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRED E. WEIDERHOLD, JR.<br>  AS INSPECTOR GENERAL<br>NATIONAL RAILROAD PASSENGER<br>  CORPORATION,<br><br>                   Petitioner,<br><br>       v.<br><br>BOMBARDIER, INC.,<br>ALSTOM TRANSPORTATION, INC.,<br>NORTHEAST CORRIDOR MAINTENANCE<br>  SERVICES COMPANY,<br><br>                   Respondents. | Civil No. 1:05-ms-00367<br>(PLF/DAR) |

**MEMORANDUM IN SUPPORT OF**
<u>**MOTION TO DISMISS AMENDED PETITION**</u>

                 JONES DAY
                 Attorneys for Bombardier Inc. and Northeast
                  Corridor Maintenance Services Company
                 222 East 41st Street
                 New York, New York 10017-6702
                 (212) 326-3939

                 WINSTON & STRAWN LLP
                 Attorneys for Northeast Corridor Maintenance
                  Services Company
                 1700 K Street, N.W.
                 Washington, D.C. 20006-3817
                 (202) 282-5000

## TABLE OF CONTENTS

Page

Preliminary Statement ................................................................................................... 2

Statement of Facts ........................................................................................................... 2

Proceedings to Date ......................................................................................................... 5

ARGUMENT
THE PETITION IS UNENFORCEABLE AS A MATTER OF LAW ........................................... 7

    A.   Petitioner Has Failed to Establish a *Prima Facie* Case ..................................................... 7

    B.   The Amended Petition Does Not Allege that Its Demands
          are Relevant to a Specified Investigative Purpose ............................................................. 9

    C.   Petitioner's Native Format Argument Was Untimely Filed ......................................... 11

CONCLUSION ................................................................................................................. 13

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRED E. WEIDERHOLD, JR.<br>  AS INSPECTOR GENERAL<br>NATIONAL RAILROAD PASSENGER<br>  CORPORATION,<br><br>                      Petitioner,<br><br>     v.<br><br>BOMBARDIER, INC.,<br>ALSTOM TRANSPORTATION, INC.,<br>NORTHEAST CORRIDOR MAINTENANCE<br>  SERVICES COMPANY,<br><br>                      Respondents. | Civil No. 1:05-mc-00367<br>(PLF/DAR) |

**MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS AMENDED PETITION**

Respondents Northeast Corridor Maintenance Services Company ("NeCMSC") and Bombardier Inc. ("Bombardier"), respectfully submit this memorandum in support of their motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the August 8, 2006 Amended Petition (the "Amended Petition") of Petitioner Fred E. Weiderhold, Jr., the Inspector General for the National Railroad Passenger Corporation ("Amtrak"). For the reasons set forth below, the motion to dismiss should be granted.[1]

---

[1] The Inspector General's Original Petition and supporting memorandum, filed on September 22, 2005 (DKT. 1), will be cited respectively as the "Original Petition" or "Original Pet." and "Original Pet. Mem.". The Amended Petition and its supporting memorandum will be cited herein respectively as "Amended Pet." and "Amended Pet. Mem." Respondents' brief in response to the Original Petition which was served, but not filed, will be denominated "Original Petition Response" or "Original Pet. Resp." The Amended Petition Response and its accompanying memorandum are abbreviated respectively "Amended Pet. Resp." and "Amended Pet. Resp. Mem." Unless otherwise indicated, all emphasis herein is our own.

**Preliminary Statement**

On October 6, 2006, Respondents filed their Response and Cross-Petition to the Amended Petition, a memorandum in support of that Response and Cross-Petition, and a set of accompanying affidavits and other exhibits.  DKT. 37.  In their memorandum, Respondents identified a variety of legal defects precluding enforcement of the Amended Petition, including, but not limited to:  (a) the absence of any supporting affidavit (Amended Pet. Resp. Mem. at 10-11); (b) Petitioner's failure to show with any particularity that the Amended Petition could satisfy the governing standard of reasonableness  (*id.* at 7-10); and (c) the untimely filing of Petitioner's August 11, 2006 "Insert" demanding that Respondents resubmit in their "native format" already produced electronic records.  *Id.* at 16-17.

Petitioner's October 19, 2006 reply (the "Reply") completely ignored all three of these points and was unaccompanied by any affidavit.  After the December 12, 2006 Status Conference before Magistrate Judge Robinson, Respondents offered Petitioner another opportunity to provide a supporting affidavit and to address the relevance point.  On December 13, 2006, however, Petitioner, without explanation, declined to do so.  Petitioner's failure even to address, much less cure, these defects necessitates this motion and requires dismissal.

**Statement of Facts**

On April 14, 2005, the National Railroad Passenger Corporation's ("Amtrak") *Acela* high-speed train service was suspended after cracks were found in spokes of friction discs for passenger car brakes (the "Brake Problem").  Within a few months, the Federal Railroad Administration (the "FRA") gave safety approval to a new disc design, and the trains were returned to service.  In the Inspector General's own words, "Acela trains have been retrofitted with redesigned disc brake rotors that have been <u>fully</u> <u>inspected</u> or <u>certified</u> for use by the FRA."  Original Pet. Mem. at 4 n.6.  Since then, Amtrak has settled all related commercial issues with

-2-

Respondents, who, in turn, have settled with Knorr Brake Corporation ("Knorr"), the subcontractor that supplied the brakes in question.  On October 1, 2006, Respondent NeCMSC, the entity against which the Amended Petition is principally directed, transferred to Amtrak all of its operating responsibilities and related files.  Thus, all legitimate safety and commercial issues arising out of the Brake Problem have been resolved or are moot.  Amended Pet. Resp. ¶ 1.

Nevertheless, Petitioner continues an obsessive pursuit of this matter.  At a cost of over $1.5 million, Respondents have now produced in excess of 1.3 million pages of records, participated in over 150 written and oral exchanges with Petitioner's staff, subjected at least a dozen of their employees and consultants to lengthy interviews, and submitted a variety of memoranda, reports, analyses, exhibits and affidavits.  Respondents have time and again attempted to resolve issues raised by the Inspector General's staff, only to be confronted with still more unreasonable demands, from which no appeal was permitted to either the Inspector General himself or anyone else.  Amended Pet. Resp. ¶ 2.

The Inspector General made this investigation the centerpiece of his Office's efforts and has publicly committed himself to a spectacular, but, in the end, baseless investigative theories. For example, on September 22, 2005, Petitioner filed the Original Petition, claiming on the public record that Respondents (a) may have precipitated a near calamity by suppressing prior knowledge that the brakes were likely to fail, and (b) subsequently obstructed the investigation by, among other things, withholding "highly pertinent" evidence of such advance "notice."  After Respondents affirmatively proved, through affidavits and by reference to the very records relied on in the Original Petition, that these prior knowledge and obstruction allegations were irresponsibly false, Petitioner abandoned them and unilaterally secured what turned out to be a nine-month stay of these proceedings.  Amended Pet. Resp. ¶¶ 5-6.

During those nine months, Petitioner's staff tried to develop new issues to justify the resources and political capital devoted to the investigation. For example, on November 10, 2005, after Respondents had already produced one million pages of records, Petitioner, for the first time, demanded that all electronic records, including those already produced, be submitted in their "native format". In addition, after having completely ignored the issue for the prior six months, the investigation was redirected to NeCMSC's May 30, 2005 loss of e-mail server data due to an air conditioning failure (the "Memorial Day Incident" or the "Incident"). That Incident now occupies a prominent place in the Amended Petition. As Respondents' Amended Petition Response demonstrates, however, these belated Memorial Day Incident allegations have no more basis than any of their predecessors. Amended Pet. Resp. ¶¶ 88-132.

The Inspector General has also refused to place any reasonable limits on his extremely broad and often unintelligible subpoenas. These are described at paragraphs 28-32 of the Amended Petition Response. Throughout the period in which Respondents were producing their records, the Inspector General's staff refused even to construe, much less limit, all but one of the subpoenas' demands. *E.g.*, Amended Pet. Resp. ¶¶ 34-43. As a result, at enormous cost, from May 2005 – June 2006, Respondents produced 1.3 million pages of records. Amended Pet. Resp. ¶ 9.

The Inspector General, of course, has a legitimate investigatory role. But this Court has the ultimate responsibility to insure that Petitioner's demands are reasonable when balanced against a legitimate investigative purpose. This judicial oversight is particularly critical here because, as the District of Columbia Court of Appeals has held, "[s]ince its inception, the statutes governing Amtrak have indicated that the railroad is … not … a department, agency or instrumentality of the federal government." *Totten v. Bombardier Corp.*, 286 F.3d 542, 544

(D.C. Cir. 2002). This means that Respondents have no recourse to administrative due process and that the Court is not bound by the deference owed to a co-equal branch of the Government.

## Proceedings to Date

The Original Petition was filed on September 22, 2005. DKT. 1. No order to show cause was ever issued in connection with the Original Petition and, accordingly, Respondents did not respond. Instead, on October 14 and 20, 2005, Respondents (and Alstom Transportation, Inc. ("Alstom")) served, but did not file, their Original Petition Response, supported by 68 exhibits, including numerous declarations and affidavits. On October 25, 2005, recognizing that most of the Original Petition's allegations had been proven to be false, the Inspector General sought a 45-day stay of proceedings. DKT. 2-3. The Court granted the stay on November 1, 2005. On December 9, 2005, again on his own motion, Petitioner sought another 45-day stay of proceedings. DKT. 4-5. This request was granted on December 16, 2005. On January 30, 2006, the Inspector General unilaterally sought a third stay of this case. DKT. 6. The Court issued the requested stay on March 6, 2006.

On March 24, 2006, Petitioner filed a "Status Report". DKT. 7. On June 27, 2006, the Court ordered the Inspector General to show cause by July 18, 2006 "<u>why this case should not be dismissed for failure to prosecute</u>". DKT. 8. On July 18, 2006, Petitioner responded by promising that by August 8, 2006, he would "file an [sic] either amended petition to enforce the subpoena … or a request to dismiss the action". DKT. 9. The Inspector General reported on his "<u>largely successful</u>" effort … to obtain Respondents' belated but non-compelled compliance with the subpoenas" (p. 2) and that "Respondents have made <u>very significant</u> – but not fully compliant – production of paper and electronic documents" (p. 3). On July 26, 2006, this Court ordered that Petitioner file an amended petition by August 8, 2006 or request dismissal of the Petition.

-5-

On August 8, 2006, the Inspector General submitted a hastily drafted Amended Petition and supporting a memorandum. DKT. 10. "Point II" of Petitioner's memorandum consisted of a heading regarding his "Native Format" claims, but no argument. Instead, the memorandum stated that "[c]ounsel . . . could not combine this [Native Format] portion of the brief with the filing." Amended Pet. Mem. at 8. On August 11, 2006, three days after the deadline ordered by Judge Friedman, the Inspector General, without leave of court, filed an "Insert to Memorandum in Support of Amended Petition" (the "Insert") containing a "Native Format" argument. According to the Insert, "[w]hen counsel for Petitioner was concluding the [Amended Petition] Memorandum . . . on August 8, the materials for [the native format] Argument . . . could not be located." Petitioner's two excuses for not submitting a "Notice Format" argument – namely that Mr. Sadoff either "could not combine" the claim with his brief or "could not . . . locate[]" unspecified "materials" – seem irreconcilable.

On November 1, 2006, Judge Friedman referred this matter to Magistrate Judge Robinson "for management of all pre-trial matters, including for the purpose of issuing reports and recommendations on any dispositive motion filed in this case." DKT. 40. At the December 12 Status Conference, Respondents suggested that before the case is returned to Judge Friedman for ultimate resolution, the issues be refined by means of pretrial motion practice and settlement efforts. Respondents announced, for example, that pursuant to L. Cv. R 72.3(a)(5), they would seek a report and recommendation from Magistrate Judge Robinson on the issues raised in their Amended Petition Response that the Inspector General had thus far ignored. By means of a December 13, 2006 Scheduling Order, Magistrate Judge Robinson directed Respondents to file this motion by December 14, 2006. DKT. 46.

# ARGUMENT

## THE PETITION IS
## UNENFORCEABLE AS A MATTER OF LAW

A motion to dismiss under Rule 12(b)(6) is properly granted "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Mount v. Baron*, 154 F. Supp. 2d 3, 7 (D.D.C. 2001). This standard is satisfied here because, as shown below, the Amended Petition is unenforceable as a matter of law, and Petitioner can prove no set of facts to support its enforcement.[2]

### A.   Petitioner Has Failed to Establish a *Prima Facie* Case

It is a basic principle that in order to create a *prima facie* case supporting enforcement of an administrative subpoena, "[t]he agency seeking enforcement *must first file* a complaint . . . *and an affidavit of the agent who issued the subpoena* verifying" the allegations of the complaint. *SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 128 (3d Cir. 1981) (en banc). This principle has been applied in numerous cases in this circuit. For example, in *SEC v. Gulf Resources, Inc.*, No. 83-106, 1983 U.S. Dist. LEXIS 17664 (D.D.C. Apr. 15, 1983), this Court enforced an administrative subpoena only upon a showing that "[t]he affidavit . . . in support of the Commission's application clearly established the[ required] elements." *Id.* at *1. *See also, e.g.*, *SEC v. Lines Overseas Mgmt., Ltd.*, No. Civ. A. 04-302 RWK/AK, 2005 WL 3627141, at *5 (D.D.C. Jan. 7, 2005) (noting that "[m]ere allegations in the complaint, here styled an application, will not suffice," and noting that "[t]he SEC, however, has provided the Court with several affidavits" supporting the personal jurisdiction issue); *Office of Thrift Supervision, Dep't of Treasury v. Zannis*, Misc. No. 90-0136, 1990 WL 421186, at *1 (D.D.C. Aug. 14, 1990)

---

[2]   By this motion, Respondents are not submitting any issue for determination on the merits and are not consenting to any proceedings pursuant to L. Cv. R. 73.1.

("OTS has undertaken to demonstrate the relevance of the documents sought by an *ex parte in camera* affidavit of an OTS attorney describing information OTS has gathered to date suggesting Zannis' possible violations of both fiduciary duties to Great American and related companies and of a cease-and-desist order issued in 1987. The Court finds the affidavit to provide sufficient grounds to establish the relevance of the documents sought."); *United States v. Aero-Mayflower Transit Co.*, 646 F. Supp. 1467, 1472 (D.D.C. 1986) ("The affidavits supplied to this Court show that the requested information is more than minimally relevant to the Inspector General's permissible inquiry.").

As noted in Respondents' October 6, 2006 Memorandum, the Amended Petition is unaccompanied by any supporting affidavits. Amended Pet. Resp. Mem. at 10. As such, there is no evidence sufficient to create any *prima facie* case for enforcement as is undisputedly required by the case law. This deficiency is all the more striking in light of the fact that the original petition that the Amended Petition replaced *did* have affidavits supporting at least some of those now-withdrawn claims.[3]

Respondents have put Petitioner on notice of this legal deficiency, both on October 6, 2006, when they filed their opposition to the Amended Petition (Amended Pet. Resp. Mem. at 10) and on December 12, 2006, when they offered to forego this motion in return for Petitioner's commitment to file a supporting affidavit. After ignoring this issue for two months, however, Petitioner on December 13, 2006 affirmatively declined to submit any affidavit. For this reason, the Amended Petition does not establish a *prima facie* case, and is thus legally unenforceable.

---

[3] At the December 12, 2006 status conference before Magistrate Judge Robinson, David Sadoff, on behalf of Petitioner, represented that these affidavits adequately support the Amended Petition's allegations. As the record reveals, however, those affidavits are almost entirely irrelevant to the six demands for relief found in the Amended Petition, none of which are contained in the Original Petition. See Original Pet., Exs. 8, 21 & 22. DKT. 1.

**B.     The Amended Petition Does Not Allege that Its Demands
        are Relevant to a Specified Investigative Purpose**

The Amended Petition should also be denied because Petitioner has failed to allege with any particularity that any of his six demands are relevant to a legitimate and continuing investigative purpose. In their Amended Petition Response (pp. 7-9), Respondents argued, as numerous courts have held, that the touchstone for enforcement of an administrative subpoena is whether it is reasonable under the totality of the circumstances. *See, e.g.*, *Dow Chem. Co. v. Allen*, 782 F.2d 1262, 1267 (7th Cir. 1982); *FCC v. Cohn*, 154 F. Supp. 899, 908 (S.D.N.Y. 1957) (holding that "the courts will plainly refuse to enforce an administrative subpoena which is not within the bounds of reasonableness"). As the D.C. Circuit has cautioned, there is "a natural concern over potential abuse" arising in cases where "an administrative subpoena could be overzealous." *SEC v. Arthur Young & Co.*, 584 F.2d 1018, 1027 (D.C. Cir. 1978). This judicial check requires a balancing, under which "this court must weigh against <u>the relevance of the requested material</u> the burden that would be placed on [the subpoena recipient] in producing it." *In re Admin. Subpoena*, 253 F.3d 256, 268 (6th Cir. 2001). This argument too was ignored in Petitioner's Reply.

By its terms, however, the balancing required by the District of Columbia Court of Appeals cannot be carried out without proof by the agency that the subpoenaed materials are relevant. Yet, in this case, Petitioner has steadfastly refused to explain the significance of the Amended Petition's demands to any continuing investigative purpose. Indeed, as recently as December 12, 2006, Respondents requested that the Inspector General provide a particularized description of the investigative needs for the Amended Petition's six demands. As Respondents have shown in their opposition to the Amended Petition, those purposes themselves have proved to be continually shifting and uncertain, and Petitioner has done little to clarify what he hopes to

-9-

achieve in his latest round of filings, despite Respondents' demonstration that he needed to do so to justify enforcement. Amended Pet. Resp. ¶ 9.

As a result, this Court cannot possibly undertake the "balancing" required by the District of Columbia Circuit in *In re Admin. Subpoena*. For example, the Amended Petition's principal demand is that Respondents go through the 1.3 million pages of records they have already provided[4] and resubmit all electronic records in their original "native format". The only expressed reason for this extensive duplication of effort is the Inspector General's claim that "[t]his method of production simplifies authenticating the produced electronic documents, and assures that their content and usability is identical to that of the original documents. Reply at 6.[5]

Surely, however, the Inspector General does not propose to "authenticate" every one of Respondents' 1.3 million pages of records. If, indeed, Petitioner has reason to believe that one or more of these records is not authentic, Respondents have long been willing to permit the Inspector General's staff to examine any such document in its original or "native format". As recently as December 12, 2006, Respondents offered to permit the Inspector General's staff to review up to 50 suspicious records, in their "native" paper or electronic format. The Inspector General has so far ignored this proposal. It would serve no legitimate investigative purpose, therefore, to require Respondents to submit in a "native format" for a second time hundreds of thousands of pages of electronic records simply because Petitioner is suspicious about the provenance of a few.

---

[4] The Inspector General concedes that his staff did not even use the phrase "native format" until <u>after</u> Respondents had already produced most of their records. Reply at 7.

[5] This is the only explanation for the Inspector General's conclusory assertion that a second production of hundreds of thousands of pages of electronic records is "particularly important to the present investigation." Reply at 10.

Because, despite Respondents' December 12, 2006 request, Petitioner has failed to offer any rationale to support the fundamental reasonableness of his enforcement requests, the Petition fails to make an adequate case for enforcement. For this reason, too, the Amended Petition should be dismissed.

C.      **Petitioner's Native Format Argument Was Untimely Filed**

Petitioner's demand that Respondents be compelled to "produce all responsive electronic documents in their original or 'native' format" (Pet. 18) is not only devoid of affidavit support, it is not supported by a timely filed memorandum of law. In their memorandum accompanying their Response and Cross-Petition, Respondents showed that Petitioner failed to preserve this request. Amended Pet. Resp. Mem. at 16-17. Petitioner failed even to address this issue in his Reply.

As Respondents noted, Judge Friedman, on June 27, 2006, ordered the Inspector General to show cause "why this case should not be dismissed for failure to prosecute". DKT. 8. After Petitioner promised that he would either file an amended petition or dismiss this action by August 8, 2006, Judge Friedman, on July 26, 2006 ordered the Inspector General to file an amended petition by August 8.

Petitioner's August 8, 2006 memorandum failed to include any arguments in support of his "native format" request. At the time, Mr. Sadoff justified this omission by claiming that he "could not combine this portion of the brief with the filing". Amended Pet. Mem. at 8. Three days later, without leave of the Court, Mr. Sadoff filed Petitioner's "native format" "Insert," representing (p. 1) that "the materials for [the native format issue] could not [previously] be located". [6]

---

[6] Petitioner recently made a similarly unauthorized filing in his petition against Knorr Brake Corporation. *Weiderhold v. Knorr Brake Corporation,* Case No. 1:06-ms-00423. DKT. #14.

-11-

Petitioner's explanations are not only inconsistent with each other — they do not justify Petitioner's failure to "locate" the supposedly missing materials by the August 8 deadline. The "Insert" Petitioner ultimately filed contained no "materials" that would require being "located." Indeed, aside from Mr. Sadoff's simple failure to have prepared his brief on time, there is no reason why Petitioner could not have "combine[d]" the Insert's purely legal argument with those contained in the document filed on August 8. Even though Respondents pointed out these inadequate and inconsistent representations to Judge Friedman in both the Amended Petition Response (¶¶ 15-16 & n.6) and Respondents' supporting memorandum of law (at 16-17), Petitioner has yet to provide any explanation.

Although the Court might otherwise be inclined to overlook an untimely filing, Petitioner's failure even to explain his inconsistent representations to Judge Friedman suggests that his native format "Insert" should be struck from the record. *E.g. Cobell v. Norton*, 213 F.R.D. 42, 42 (D.D.C. 2003) (striking unexcused, untimely filed brief).

## CONCLUSION

Accordingly, Respondents respectfully request that the Amended Petition be dismissed with prejudice. Respondents request that, in keeping with their Cross-Petition, the Court award reasonable costs to the Respondents in connection with their compliance with Petitioner's subpoenas.

Dated: December 14, 2006

Respectfully submitted,

| JONES DAY | WINSTON & STRAWN LLP |
|---|---|
| By: __Philip Le B. Douglas__/s_____<br>     Philip Le B. Douglas (# 311944)<br>Attorneys for Bombardier Inc. and<br> Northeast Corridor Maintenance<br> Services Company<br>222 East 41st Street<br>New York, New York 10017-6702<br>(212) 326-3939 | By: ___Timothy M. Broas_____/s____<br>     Timothy M. Broas (# 391145)<br>Attorneys for Northeast Corridor Maintenance<br> Services Company<br>1700 K Street, N.W.<br>Washington, D.C. 20036-3817<br>(202) 282-5000 |
| Of counsel:<br>   Michael S. Fried, Esq. | Of counsel:<br>     Franklin R. Parker, Esq. |