UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRED E. WEIDERHOLD, JR.
   AS INSPECTOR GENERAL
NATIONAL RAILROAD PASSENGER
   CORPORATION

       Petitioner

       v.                                     No. 1:05 MS 367
                                         (PLF/DAR)

BOMBARDIER, INC.

ALSTOM TRANSPORTATION, INC.

NORTHEAST CORRIDOR MAINTENANCE
   SERVICES COMPANY

       Respondents.

**PETITIONER'S MEMORANDUM IN OPPOSITION
TO RESPONDENTS' MOTION TO DISMISS AMENDED PETITION**

Introduction

Petitioner Fred E. Weiderhold, Jr., Inspector General ("IG") of the National Railroad Passenger Corporation ("Amtrak"), by counsel, hereby opposes the "Motion to Dismiss Amended Petition" filed by Respondents Bombardier, Inc. ("Bombardier") and Northeast Corridor Maintenance Services Company ("NeCMSC") under Rule 12(b)(6), Fed.R.Civ.P.

The Amended Petition (Docket No. 10) more than satisfies the requirements of Rule 12(b)(6). Notwithstanding Respondents' arguments to the contrary, a petition seeking judicial enforcement of administrative subpoenas need not be supported by affidavits either when filed or subsequently.

Moreover, and alternatively, the Amended Petition is amply supported both by the affidavit of Special Agent Renee Jackson-Dixon of the Office of Inspector General ("OIG") filed in this proceeding as Exhibit 8 to the original Petition (see Docket No. 1), and by Respondents' subsequent statements in the "Response and Cross-Petition of Bombardier, Inc. and Northeast Corridor Maintenance Services Company" ("Response and Cross-Petition") (Docket No. 21).

When examined either in light of the applicable law, or the facts of this proceeding, Respondents' motion to dismiss is unsupportable. Ironically, the Motion best evidences Respondents' tendency to advance flawed legal arguments supported by incomplete, "cherry-picked" statements of fact. This tendency is also repeatedly evident in the "Response and Cross-Petition".

### Argument

I.  The Amended Petition Meets And Exceeds The Requirements of Rule 12(b)(6), Fed.R.Civ.P.

Rule 12(b)(6), Fed.R.Civ.P. "is designed to streamline litigation by dispensing with needless discovery and factfinding...." Neitzke v. Williams, 490 U.S. 319 (1989). It provides for dismissal of an action where a legally sufficient claim is not presented even after (1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that can be drawn from the pleading are drawn in favor of the pleader. 5B C. Wright & A. Miller, Fed. Prac. & Proc. Civ.3d § 1357 (2006).[1]

---

[1] As a result of these principles, so firmly established by several decisions of the Supreme Court rendered over many years, it is now catechism, frequently recited by all federal courts, as reflected in the citation of a plethora of cases in the notes below, that the question on a motion to

Under United States v. Powell, 379 U.S. 48, 57-58 (1964), a petition to enforce an administrative subpoena must plead:

> that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed....

Previously, the Court observed that "relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry." Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 209 (1946).

The Amended Petition satisfies each of the Powell requirements. Paragraphs 8-10 and 12-14 of the Amended Petition demonstrate that the IG has fulfilled a legitimate purpose and has complied with statutory authority in issuing the Subpoenas; Respondents do not allege to the contrary in the Motion. Paragraphs 12-13 and 20 of the Amended Petition and the Subpoenas referenced therein, demonstrate that the documents sought are relevant to the inquiry; Respondents do not allege to the contrary in the Motion. Finally, paragraphs 21-39 of the Amended Petition, and Respondents' statements in their Response and Cross-Petition establish that the documents and compliance sought in this enforcement action have not been provided; Respondents do not allege to the contrary in the Motion. These allegations in the Amended Petition are more than sufficient to satisfy the requirements of Rule 12(b)(6).

---

> dismiss under Rule 12(b)(6) is whether in the light most favorable to the plaintiff, and with every doubt resolved in the pleader's behalf, the complaint states any legally cognizable claim for relief. If the answer to the question is in the affirmative, the motion to dismiss must be denied and the action should be permitted to continue.

Id., at 676. (Footnotes omitted.)

3

It is settled law in this Circuit that a subpoena enforcement action is an adversarial hearing <u>and</u> that the movant's showing can take multiple forms depending on circumstances:

> These subpoena enforcement proceedings must be adversarial in character and, as the Fifth Circuit noted, afford "an adequate opportunity to raise all objections to (the) administrative subpoena." <u>Atlantic Richfield Company v. Federal Trade Commission</u>, 546 F.2d 646, 650 n.5 (1977), citing cases. Depending on the circumstances of the case, this adversary proceeding may take the form of an evidentiary hearing, oral arguments without the taking of evidence, or, as is doubtless the appropriate course in many applications for enforcement orders, consideration based on the papers submitted by the parties to the court.

<u>FTC v. Atlantic Richfield Co.</u>, 567 F.2d 96, 106, n.22 (D.C. Cir. 1977) ("ARCO").

Indeed, the Court specifically recognized in ARCO that a movant may choose <u>not</u> to submit affidavits in support of its pleadings but, instead, rely on the presentation of evidence at the hearing.[2]

Respondents are incorrect in several respects when they claim that:

> "in order to create a *prima facie* case supporting an administrative subpoena '[t]he agency seeking enforcement *must first* file a complaint ... *and an affidavit of the agent who issued the subpoena* verifying' the allegations of the complaint. <u>SEC v. Wheeling Pittsburgh Steel Corp.</u>, 648 F.2d 118, 128 (3d Cir. 1981) (<u>en banc</u>)"

Motion, at 7 (italics added by Respondents).

---

[2] The routine action of the trial judge here, on the eve of a hearing which had been stipulated between Atlantic and FTC would take place, and at which hearing Atlantic was planning to present evidence and thus did not file affidavits accompanying its pleadings, destroyed any opportunity for Atlantic to have its case heard by a court with full authority to effect a just disposition. We recite this simply by way of caution, lest in the future other judges and litigants be victimized by adherence to what often is a routine consideration of motions.

<u>Id.</u>

4

First, Respondents conflate what is required to be pleaded with what is required to be demonstrated at the adversarial hearing. In so doing, Respondents ignore the applicable ARCO decision.

Second, none of cases cited by Respondents in the Motion state, suggest, imply and certainly do not "appl[y]" the "principle" that a petition for enforcement of an administrative subpoena must be supported by an affidavit of the issuing agent. In SEC v. Lines Overseas Mgmt., the court cited affidavits as supporting personal jurisdiction, which is not at issue in the present case. Moreover, the court apparently considered affidavits and business records filed by the SEC after it had filed the petition to enforce. 2005 WL 3627141, at *1 (D.D.C. 2005). In Office of Thrift Supervision Dep't of Treasury v. Zannis, the court merely stated that an attorney affidavit submitted for in camera inspection was sufficient to refute the respondent's claim that the petitioner's subpoena demands were irrelevant to its investigation. 1990 WL 421186, at *1 (D.D.C. 1990). In United States v. Aero-Mayflower Transit Co., the court utilized the submitted affidavits to satisfy the standard of minimal relevancy for enforcement but never stated that such affidavits were required. 646 F. Supp. 1467, 1472 (D.D.C. 1986).

Third, Respondents' "principle" ignores Rule 11(a), Fed.R.Civ.P. providing that "[e]xcept when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by an affidavit." The statutory authority under which the Subpoenas were issued and under which enforcement is sought -- the Inspector General Act of 1978, as amended 5 U.S.C. App. 3, has no requirement, specific or otherwise, for the filing of affidavits in support of a petition for enforcement. Similarly, Rule 81(a)(3)

Fed.R.Civ.P., making the Federal Rules applicable to this proceeding does not require, specifically or otherwise, the affidavits Respondents claim to be required.

Fourth, as discussed below, Respondents seek to ignore that the Amended Petition is supported by a previously filed affidavit and by Respondents own concessions in their Response and Cross-Claim.

    II.    The Amended Petition Is More Than Sufficiently Supported By An Affidavit Of An OIG Special Agent, By Exhibits, And By Respondents' Subsequent Statements:

Alternatively,[3] Petitioner submits that the Amended Petition is more than sufficiently supported by the affidavit of OIG Special Agent Renee Jackson-Dickson ("Jackson-Dixon affidavit") submitted as Exhibit 8 in support of the original petition to enforce the Subpoenas.[4]

The Jackson-Dixon affidavit describes, among other matters, the following Powell factors: 1) that the investigation is conducted pursuant to a legitimate purpose (e.g., ¶¶ 3, 6-9); 2) that the inquiry is relevant to the purpose (e.g., ¶¶ 8-12); and, 3) that the records sought have not been produced in a usable form (e.g., ¶ 12.) These statements were true when submitted in September 2005 in support of the original enforcement petition, true when Petitioner filed its Amended Petition in August 2006, and true today.

While Respondents' statement that "the Amended Petition is unaccompanied by any supporting affidavits" (Motion, at 8) is accurate, it is also materially incomplete. Nowhere in their Motion do Respondents describe with any specificity how the Jackson-

---

[3] In Argument I Petitioner has demonstrated that it submits that Amended Petition satisfies the requirements of Rule 12(b)(6) and that no additional filing or support is necessary prior to the adversary hearing.

[4] A copy of Jackson-Dixon affidavit is appended as an exhibit hereto.

6

Dixon affidavit fails to meet a number of the Powell factors. Respondents' only discussion of the affidavit occurs in note 3 and seems an attempt to divert attention to issues not raised. Thus, Respondents describe the affidavits as "almost entirely irrelevant to the six demands for relief found in the Amended Petition, none of which are contained in the Original Petition," but do not address either the contents or claimed deficiencies of the Jackson-Dixon affidavit. Statements by Respondents' counsel, Mr. Douglas, at the December 12 status conference, were both far less indirect and more erroneous.[5] As discussed above, the Jackson-Dixon affidavit provides important support for the Amended Petition.

Additionally, Respondents' statements in its Response and Cross-Petition address and acknowledge what Petitioner contends are instances of non-compliance with the Subpoenas. These statements are appropriate for the Court to consider in determining whether to grant the Motion. 5B C. Wright & A. Miller § 1357 at 676.

For example, Respondents concede that:

1) they have not provided spreadsheets and electronic documents in their native format (e.g., ¶¶ 164);

---

[5] MR. DOUGLAS: Now that I've heard that the Inspector General does not wish to consolidate I think, speaking for Bombardier, we would want to move to consolidate, because there are indeed identical issues pending before the Court.
 Second of all, just for the record, let me say that in response to Mr. Sadoff's claim that the affidavits filed a year and a half ago support the current amended petition, that is untrue. I doubt that there's a single fact in the amended petition that is supported by the affidavits from a year ago. And there are extensive fact disputes based on the pleadings. There are dozens of them. So we dispute that claim by Mr. Sadoff.
Transcript, at 17-18.

7

2) prior to October 2005, Bombardier produced in a non-searchable, non-native format more than 167,000 pages of e-mails (Exhibit 130 to Response and Cross-Petition, Exhibit C, at 2-3);

3) prior to October 2005, NeCMSC produced, in a non-searchable, non-native format more than 310,000 pages of documents created as searchable electronic documents (Exhibit 131 to Response and Cross-Petition, Exhibit C, at 2, items 3-5);

4) NeCMSC's re-use and overwriting of the e-mail server discs that apparently failed on May 30, 2005 (Response and Cross-Petition, ¶¶ 112-114);

5) they have not provided a description of "lost" documents (Response ¶¶ 153-55); and,

6) they have not certified that they have produced all documents responsive to the Subpoenas (Response and Cross-Petition, ¶¶ 166-168).[6]

III. There Is No Basis For Respondents' Claim That "Petitioner's Native Format Argument Was Untimely Filed":

On August 8, 2006 Petitioner filed its Amended Petition (Docket No. 10) and renewed its argument 5that Respondents' production under the Subpoenas was non-compliant because it had not been produced in its searchable "native format" with the full attributes of the original electronic documents. See Am. Pet. ¶¶ 21-24

Petitioner filed the Amended Petition on August 8, 2006 in furtherance of its July 18, 2006 filing (Docket No. 9) in response to Judge Friedman's Order of June 27, 2006,

---

[6] Respondents offer yet another incomplete statement when they state that "[t]he Amended Petition provides no guidance whatsoever" regarding what is "full compliance". Repeatedly, Petitioner's counsel has suggested to Respondents' counsel that a sufficient certification could result were Respondents to: 1) describe the produced documents based on the index or other reasonable description; and, 2) describe arguably responsive documents they have not produced and the reasons for those decisions.

8

that Petitioner show cause, on or before July 18, 2006, why the case should not be dismissed (Docket No. 8). On July 18 Petitioner filed a response describing its efforts to resolve the dispute and stating it would file, on or before August 8, an amended petition or a request for dismissal if pending compliance disputes were not resolved (Docket No. 9). On July 26, Judge Friedman entered a Minute Order in this case discharging the Order to Show Cause.

When Petitioner was assembling its Amended Petition and other filings on August 8, it was unable to include as part of its attached legal memorandum its argument that compliant production of electronic documents should be in "native format". Petitioner later re-constructed the missing argument and filed it on August 11, 2006 as an "Insert" to the memorandum (Docket No. 11).

On August 22, 2006, Judge Friedman issued an Order directing Petitioner to serve Respondents by September 8 with copies of the Amended Petition exhibits and supporting memorandum, and directing Respondents to show cause in writing by September 29, 2006 why they should not be compelled to obey the Subpoenas (Docket No. 12).

Respondents' argument that the "native format" argument was "untimely filed" raises form over substance. The "native format" claim was set out in the Amended Petition filed on August 8, 2006. Petitioner's legal argument supporting the "native format" claim" in the Petition was not filed until August 11 -- but still 11 days before Judge Friedman entered his Order directing service on Respondents, and 28 days before the date by which Petitioner was to serve the Amended Petition, exhibits and supporting memorandum on Respondents.

9

## Conclusion

Petitioner respectfully requests that Respondents' Motion to Dismiss Amended Petition be denied.

Respectfully submitted,

COLIN C. CARRIERE (# 375016)
Counsel to the Inspector General
Office of the Inspector General
National Railroad Passenger Corporation
10 G Street, Northeast
Room 3E-404
Washington, DC  20002
Tele: (202) 906-4355

DAVID SADOFF (#204974)
Associate Counsel to the Inspector General
Office of the Inspector General
National Railroad Passenger Corporation
10 G Street, Northeast
Room 3E-406
Washington, DC  20002
Tele: (202) 906-4882

Dated:  December 26, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRED E. WEIDERHOLD, JR.
INSPECTOR GENERAL, NATIONAL
RAILROAD PASSENGER CORPORATION

    Petitioner

v.

BOMBARDIER, INC.

ALSTOM TRANSPORTATION, INC.

NORTHEAST CORRIDOR MAINTENANCE
SERVICES COMPANY

    Respondents

Misc. Civil No.

## AFFIDAVIT OF RENEE JACKSON-DIXON

I, Renee Jackson-Dixon do state and testify:

1. I am an adult, and a citizen and resident of the United States.

2. I am a Supervisory Special Agent with the National Railroad Passenger Corporation ("Amtrak") Office of Inspector General ("OIG") Office of Investigations ("OI"). I am assigned the responsibility, along with others, of conducting an investigation by the OIG relating to the formation and discovery of cracks in safety-critical disc brake components on Amtrak's high-speed Acela trains, ("the disc brake investigation"). I submit this Affidavit in support of the Petition filed by the Amtrak Inspector General to seek summary enforcement of five subpoenas for documents he issued as part of the disc brake investigation to Bombardier Inc. ("Bombardier"), Alstom Transportation, Inc. ("Alstom"), and Northeast Corridor Maintenance

Services Company ("NeCMSC") (collectively "Respondents"). It is based on my personal knowledge or knowledge I obtained performing my duties. In connection with my duties and responsibilities, I am familiar with correspondence and documents received by OIG as part of its investigation.

3. This disc brake investigation is attempting to address issues of safety, fraud, and other concerns -- whether acts or omissions by Bombardier, Alstom, NeCMSC, their vendors and sub-contractors, or others, during the design, manufacture, maintenance or inspection of disc brake rotors on Acela trains that related to or resulted in the defects discovered on April 14, 2005 and after.

4. In 1996, Bombardier and Alstom, as a "Consortium" or joint venture, contracted with Amtrak to design and build the Acela train sets. Bombardier and Alstom also contracted with Amtrak to provide maintenance and inspection services for the Acela trains, and subsequently formed Respondent NeCMSC to carry out those obligations, under Bombardier's and Alstom's shared ownership and control.

5. The Amtrak Inspector General signed and issued five subpoenas ("Subpoenas") to Respondents in May and June of 2005, along with other subpoenas issued to several entities, in support of the investigation: Subpoenas 05-05 and 05-17 issued to Bombardier required production of responsive documents by July 28, 2005, as extended by the Petitioner; Subpoenas 05-07 and 05-18 issued to Alstom required production of responsive documents by July 28, 2005, as extended by Petitioner; Subpoena 05-09, issued to NeCMSC required production of responsive documents by July 28, 2005, as extended by Petitioner. Respondents' production under the Subpoenas has not been timely and is not complete.

6. Among the programs and operations of Amtrak over which the IG has audit and

investigative responsibility are the purchasing and maintenance programs for the Acela trains. In this case, the IG has the duty and responsibility under the Inspector General Act to root out fraud, waste, and abuse, and to ensure the integrity of Amtrak's equipment and programs. In cases where its investigation reveals fraud, waste or abuse, the IG has the responsibility to recommend appropriate action, including criminal, civil, and administrative remedies.

7. In conducting this investigation, the Amtrak OIG is also acting pursuant to its responsibility under the Inspector General Act to investigate matters relating to danger to the public health and safety.

8. Petitioner issued the Subpoenas as part of its disc brake investigation and its inquiry into the following issues (among others): 1) the causes of the cracks to the spokes of the disc brake rotors; 2) whether Respondents, their vendors or subcontractors, and/or Amtrak personnel knew, or should have known, of risk or occurrence of spoke cracks; 3) why inspections and maintenance by respondent NeCMSC apparently failed to discover the spoke cracks; 4) whether the spoke cracks resulted from acts or omissions by respondents Bombardier and/or Alstom in the design or manufacture of the Acela trains, in their acceptance of disc brake rotors from their subcontractor and its vendor, or in their supervision of their subcontractor and its vendor; 5) whether other safety-critical parts on the Acela trainsets pose significant risks of catastrophic failure; and, 6) whether current procedures governing the testing and inspection of disc brake rotors and other safety-critical parts, and alerting Amtrak of safety risks, should be changed.

9. Because of the critical safety issues raised by the investigation, and the need for expedited document production, OIG counsel offered to assist Respondents in focusing and simplifying their obligations under the Subpoenas.

10    The Amtrak OIG has offered to Respondents to prioritize specific subpoena requests, inspect documents on-site at Respondents' facilities prior to production, and recommend alternatives to the organization and method of production. OIG's efforts to obtain the production of responsive records from Respondents in an organized, prioritized manner were unsuccessful.

11.   In production they claim is responsive to the Subpoenas, Respondents claim they have produced more than 500,000 document pages on compact discs ("CDs") and hard drives. One of my responsibilities in the disc brake investigation has been to participate in reviewing Respondents' document production and assessing whether they have complied with the Subpoenas. From my review, and that performed by my colleagues on the investigation and explained to me, I have noted the following:

   a.   Many document pages have been scanned/copied as an individual document folder. In instances where a document is more than one page, it required that I open and close each page separately throughout multiple document folders to review the document in its entirety. For example, a 165-page manual with appendices was scanned in with each page being a separate document folder. In order to review this particular document, I had to open up over 165 document folders.

   b.   More than an insignificant amount of the images produced are blank.

   c.   Many of the documents produced do not appear to be responsive to the Subpoenas, but merely pertain to the overall project.

   d.   I found no document or system that indexed or linked the documents produced to particular parts and subparts of the Subpoenas, or that

   organized the documents produced so that they could be readily retrieved by, for example, type and date.

 e. I found no documents produced that was an e-mail, database, or similar electronic document in a searchable format.

12. The documents requested are relevant to the disc brake investigation. The investigation has been delayed by Respondent's incomplete and delayed production.

13. I have been asked to review the correspondence included as the Joint Exhibits to Petition and Memorandum, of which this Affidavit is a part. The copies of correspondence are copies of those in the disc brake investigation files.

I hereby declare under penalty of perjury that the above statement is true and correct to the best of my knowledge and belief.

Executed this __20th__ day of September, 2005.

Debra Johnson
Notary Public, District of Columbia
My Commission Expires 07-31-2009

_____
RENEE JACKSON-DIXON

District of Columbia : SS
Subscribed and Sworn to before me, in my presence, this _20th_ day of _September_, 2005
_____
Debra Johnson, Notary Public, D.C.
My commission expires July 31, 2009

-5-