UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRED E. WEIDERHOLD, JR.<br>  AS INSPECTOR GENERAL<br>NATIONAL RAILROAD PASSENGER<br>  CORPORATION,<br><br>                      Petitioner,<br><br>     v.<br><br>BOMBARDIER, INC.,<br>ALSTOM TRANSPORTATION, INC.,<br>NORTHEAST CORRIDOR MAINTENANCE<br>  SERVICES COMPANY,<br><br>                      Respondents. | Civil No. 1:05-mc-00367<br>(PLF/DAR) |

**REPLY IN SUPPORT OF**
**MOTION TO DISMISS AMENDED PETITION**

                                        JONES DAY
                                        Attorneys for Bombardier Inc. and Northeast
                                         Corridor Maintenance Services Company
                                        222 East 41st Street
                                        New York, New York 10017-6702
                                        (212) 326-3939

                                        WINSTON & STRAWN LLP
                                        Attorneys for Northeast Corridor Maintenance
                                         Services Company
                                        1700 K Street, N.W.
                                        Washington, D.C. 20006-3817
                                        (202) 282-5000

## TABLE OF CONTENTS

                                                          **Page**

ARGUMENT ............................................................................................................................... 2

THE AMENDED PETITION SHOULD BE DISMISSED ......................................................... 2

    A.    Petitioner Has Failed to Establish a *Prima Facie* Case ......................................... 2

    B.    The Amended Petition Does Not Allege that Its Demands are
           Relevant to a Specified Investigative Purpose ...................................................... 11

    C.    Petitioner's Native Format Argument Was Untimely Filed ................................ 12

CONCLUSION .......................................................................................................................... 14

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
FRED E. WEIDERHOLD, JR.
  AS INSPECTOR GENERAL
NATIONAL RAILROAD PASSENGER
  CORPORATION,

                        Petitioner,                   Civil No. 1:05-mc-00367
                                                             (PLF/DAR)
        v.

BOMBARDIER, INC.,
ALSTOM TRANSPORTATION, INC.,
NORTHEAST CORRIDOR MAINTENANCE
  SERVICES COMPANY,

                        Respondents.
```

**REPLY IN SUPPORT OF
MOTION TO DISMISS AMENDED PETITION**

Respondents Northeast Corridor Maintenance Services Company ("NeCMSC") and Bombardier Inc. ("Bombardier"), respectfully submit this reply in support of their December 14, 2006 motion (Dkt. 48) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the August 8, 2006 Amended Petition (the "Amended Petition") of Petitioner Fred E. Weiderhold, Jr., the Inspector General for the National Railroad Passenger Corporation ("Amtrak").[1]

---

[1] The Inspector General's Original Petition and supporting memorandum, filed on September 22, 2005 (Dkt. 1), will be cited respectively as the "Original Petition" or "Original Pet." and "Original Pet. Mem.". The Amended Petition and its supporting memorandum will be cited respectively as "Amended Pet." and "Amended Pet. Mem." Respondents' brief in response to the Original Petition which was served, but not filed, will be denominated "Original Petition Response" or "Original Pet. Resp." The Amended Petition Response and its accompanying memorandum are abbreviated respectively "Amended Pet. Resp." and "Amended Pet. Resp. Mem." Respondents' exhibits in support of that Response will be denominated as "Resp. Ex. __." Respondents' opening memorandum in support of this motion will be referred to as "Mem." Petitioner's memorandum in opposition to this motion is cited as "Opp." The docket record number of a filing with this Court will be cited as Dkt. __." The transcript of this Court's December 12, 2006 Status Hearing will be referred to as "12/12/06 H. Tr." Unless otherwise indicated, all emphasis herein is our own.

The Amended Petition must be dismissed for three reasons: (a) the Inspector General has declined, by way of both affidavit and evidentiary hearing, to submit any evidence in support of his claims (Mem. 7-8; 12/12/06 H. Tr. at 9-10); (b) Petitioner has failed to describe with particularity the investigative purpose to be served by each of his six demands (Mem. 9-11); and (c) the Inspector General's untimely filing of an "Insert" in support of the Amended Petition and his three unsworn and inconsistent justifications for that unauthorized submission have forfeited his claim that Respondents must resubmit, in their "native format," hundreds of thousands of pages of already-produced electronic documents. *Id.* at 11-12. Rather than address these issues on the merits, the Inspector General has irresponsibly ignored Respondents' core points and misstated both the legal authorities and the factual record upon which he relies.

## ARGUMENT

## THE AMENDED PETITION SHOULD BE DISMISSED

### A.    Petitioner Has Failed to Establish a *Prima Facie* Case

The Amended Petition seeks "Summary and Expedited Enforcement" of its subpoenas (Amended Pet. at 1), a remedy not provided for under the Federal Rules of Civil Procedure. Although alternative procedures such as this are permitted, the established practice in this Court and elsewhere is that summary and expedited subpoena enforcement actions must be initiated by means of sworn evidence establishing a *prima facie* case for that relief. Mem. at 7-8; Local Civil Rule 6.1 of the Southern and Eastern Districts of New York ("No . . . order to show cause . . . will be granted except upon a clear and specific showing by affidavit."). In contrast to the Inspector General's Original Petition, his August 8, 2006 Amended Petition was not supported by any affidavit. *See* Original Pet. Exs. 8, 21-22. This may explain why, in contrast to Petitioner's untimely filed August 11, 2006 Proposed Order, Judge Friedman's August 22, 2006 Order to Show Cause did not require Respondents to respond with either affidavits or "motions"

or otherwise authorize either expedited or summary proceedings.² *Compare* 8/22/06 Order to Show Cause (Dkt. 12) *with* Petitioner's 8/11/06 Proposed Order to Show Cause. Dkt. 11.

Although Respondents have repeatedly alerted the Inspector General to the Amended Petition's deficiency in this regard, he to this day refuses to provide any evidence in support of his current claims. Indeed, at the December 12, 2006 Status Hearing, Mr. Sadoff went so far as to decline <u>ever</u> to provide evidence in support of the Amended Petition. 12/12/06 H. Tr. at 9-10 ("I don't think this particular case . . . justifies an evidentiary hearing in any respect . . . [Respondents have] made no prima facie showing that would entitle them . . . to any kind of . . . evidentiary hearing before the Court.").³ Accordingly, after Petitioner subsequently refused Respondents' December 12, 2006 offer to forgo this motion if he agreed to file an affidavit (Mem. 2), Respondents had no option but to proceed with this motion to dismiss.

In their opening brief (Mem. 7-8), Respondents cited cases confirming that in order to be entitled to summary and expedited relief, "[t]he agency seeking enforcement <u>must first file</u> a complaint . . . <u>and an affidavit of the agent who issued the subpoena</u> verifying" the allegations of the complaint. *SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 128 (3d Cir. 1981) (en banc); *see SEC v. Gulf Res., Inc.*, No. 83-106, 1983 WL 1805 (D.D.C. Apr. 15, 1983). The Inspector General, however, has failed even to discuss these cases.

Petitioner relies instead on *FTC v. Atlantic Richfield Co.*, 567 F.2d 96 (D.C. Cir. 1977), which he claims is "settled law in this Circuit" holding that "<u>a movant</u> may choose <u>not</u> to submit

---

² Because that order was not predicated on any evidentiary showing, it was, moreover, defective with regard to those orders it did issue, and Respondents reserve all rights in that regard. No order to show cause <u>ever</u> issued in support of the Original Petition. Amended Pet. Resp. ¶ 12.

³ In his November 20, 2006 Motion to Schedule Hearing on Petition, Dkt. 44 ("Petitioner's Sch. Motion"), the Inspector General had similarly declined, "given the <u>facts</u> of this case", to provide evidence at any hearing on the merits. Petitioner's Sch. Motion at 7. As we have seen, however, it is <u>Petitioner</u>, who, of course, bears the burden of proof, who has yet to adduce a single evidentiary "fact."

affidavits in support of its pleadings but, instead, rely on the presentation of evidence at the hearing." Opp. 4. *Atlantic Richfield*, however, holds no such thing.[4] As will be demonstrated below, the language relied on by the Inspector General is not even a holding, much less "settled law," and the *dicta* in question has nothing whatsoever to do with a "movant's" affidavit obligations. Rather than creating "settled law", the D.C. Circuit stated that the respondent's subsequent compliance with the subpoenas in question "moot[ed] all of the issues" (567 F.2d at 106) regarding the lower court's cancellation of the merits hearing (*id.* at 101), thereby "obviat[ing] the necessity of our passing judgment on the procedures in the District Court." *Id.* at 106 n.22.

Moreover, the *dicta* quoted by the Inspector General does not – even remotely – suggest that "a movant may choose not to submit affidavits in support of its pleadings." Opp. 4. Instead, the *Atlantic Richfield* discussion is exclusively concerned with a subpoena recipient's rights. The D.C. Circuit stated, "by way of caution, lest in the future other judges and litigants be victimized" by the merely "routine" enforcement of subpoenas, that "subpoena enforcement proceedings must be adversarial in character and . . . afford [subpoena recipients] an adequate opportunity to raise all objections to the administrative subpoena." *Id.* at 106 n.22 (internal quotation marks omitted). Specifically, *Atlantic Richfield* noted that the lower court's cancellation of the hearing (*id.* at 101), and enforcement of subpoenas "on the eve[,] of [that] hearing . . . at which Atlantic [the respondent] was planning to present evidence and thus did not file affidavits accompanying its pleadings, destroyed any opportunity for Atlantic to have its case

---

[4] Even if *Atlantic Richfield* stood for this proposition, the Inspector General's astounding refusal ever to produce evidence in support of his claims (Petitioner's Sch. Motion at 7; 12/12/06 Hr. Tr. at 9-10) renders that case inapplicable.

heard by a court."[5] *Id.* at 106 n.22. Clearly, then, rather than holding that "a movant may choose not to submit affidavits in support of its pleadings" as the Inspector General claims (Opp. 4), the Court of Appeals was cautioning that a subpoena recipient's rights "must" be protected.[6]

The Inspector General's other excuses for refusing to submit an affidavit are all similarly without merit. *First*, Petitioner argues that Respondents "conflate what is required to be pleaded with what is required to be demonstrated at the adversarial hearing." Opp. 5. Actually, as we have just noted, it is Petitioner who "conflates" *Atlantic Richfield's* discussion of a subpoena recipient's "adversarial hearing" rights with what an agency must plead and prove prior to such a hearing. *E.g.*, *Wheeling-Pittsburgh Steel Corp.*, 648 F.2d at 128.

*Second*, Petitioner claims that "none of [the] cases cited by Respondents in the Motion state, suggest, imply and certainly to not 'appl[y]' the 'principle' that a petition for enforcement of an administrative subpoena must be supported by an affidavit." Opp. 5. Again, it is the Inspector General, rather than Respondents, who is guilty of precisely the failing he alleges. Unlike the Inspector General's irresponsible misreading of its *Atlantic Richfield* case, Respondents' own cases all do "state, suggest, imply and apply" the principle that an affidavit is required. *Wheeling-Pittsburgh Steel Corp.*, for example, holds: "The agency seeking enforcement must first file a complaint alleging compliance with the *Powell* standards and an

---

[5] *Atlantic Richfield's* reference to the reason why the subpoena recipient was not required to file affidavits – which is the only reference in that opinion to affidavits – obviously has nothing to do with the affidavit obligation of an agency seeking extraordinary relief by way of an order to show cause.

[6] The D.C. Circuit's admonition is particularly applicable here. Not only is the Inspector General refusing to submit an affidavit in support of his request for expedited and summary relief, he is also declining to produce any evidence at the hearing on the merits. Petitioner's Sch. Motion at 7; 12/12/06 H. Tr. at 9-10. Turning the law on its head, Petitioner argues that an evidentiary hearing is not required because "Respondents have made . . . no prima facie showing that would entitle them . . . to any kind of . . . evidentiary hearing before the Court." *Compare id.* at 9-10 *with SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d at 128. Respondents, therefore, wish to make it clear that even if the Inspector General had made a sworn *prima facie* case for an expedited and summary hearing, Respondents, just like the subpoena recipients in *Atlantic Richfield*, would be entitled to, and hereby demand, the type of "adversarial" evidentiary hearing referred to in *Atlantic Richfield*. 567 F.2d at 106 n.22.

affidavit of the agent who issued the subpoena verifying those allegations." 648 F.2d at 128. Similarly, this Court in *SEC v. Gulf Resources, Inc.*, 1983 WL 1305 (D.D.C. Apr. 15, 1983) enforced an administrative subpoena because "[t]he affidavit . . . in support of the Commission's application clearly established the[ required] elements." *Id.* at *1.

The Inspector General mischaracterizes another of Respondents' cases, *SEC v. Lines Overseas Management, Ltd.*, No. Civ. A. 04-302 RWK/AK, 2005 WL 3627141 (D.D.C. Jan. 7, 2005), when he claims that this "court apparently considered affidavits and business records filed by the SEC *after* it had filed the petition to enforce." Opp. 5 (emphasis in original). *Lines Overseas Management* did nothing of the sort. If Petitioner had simply consulted the docket sheet for that case, he would have seen that the agency in question filed two supporting declarations along with its initial application. No. 1:04MC00302 (June 10, 2004) (Dkt. 1). In any event, even if there were a rule permitting an agency to file a post-petition affidavit, it would be of no avail to Petitioner. Despite repeated opportunities to do so – including Respondents' December 12, 2006 offer to forego this motion if the Inspector General would file the required affidavit (Mem. at 2) – he has steadfastly and repeatedly declined to produce any supporting evidence either by way of affidavit or even an evidentiary hearing.

*Third*, Petitioner argues that Rule 11(a) of the Federal Rules of Civil Procedure exempts agencies from filing affidavits in enforcement proceedings. Opp. 5-6. Even though Rule 11(a) has been in effect since 1937, Petitioner has not unearthed a single case applying that Rule's affidavit exemption to an agency subpoena enforcement action. This is because "summary and expedited" subpoena enforcement is not authorized under the Federal Rules and thus, is available only upon a court-ordered "variance to the rules." *Fed. Maritime Comm'n v. New York Terminal Conference*, 262 F. Supp. 225, 230 (S.D.N.Y. 1966), *aff'd*, 373 F.2d 424 (2d Cir. 1967). It is

well established that any court-ordered variance to the Federal Rules must be supported by an affidavit.[7]

*Fourth*, Petitioner claims that one of the affidavits (the "Jackson-Dixon Affidavit") accompanying his September 2005 Original Petition adequately supports the Amended Petition filed a year later. Opp. 6-8. This argument fails for a variety of reasons.

In the first place, Petitioner's reference to the Jackson-Dixon Affidavit is nothing more than an *ex post facto* justification for his staff's refusal to follow standard subpoena enforcement procedures. The Jackson-Dixon Affidavit is not attached as an exhibit to, or incorporated by reference in, the Amended Petition. Thus, when Judge Friedman issued his August 22, 2006 Order to Show Cause, he had no reason to review the year-old Jackson-Dixon Affidavit.

Where, as here, an amended pleading "was complete in and of itself and did not refer to or adopt the counts of the prior complaint, that amended complaint superseded the original complaint. <u>The effect of this was to withdraw the prior complaint, which thereupon became *functus officio*</u>." *Phillips v. Murchison*, 194 F. Supp. 620, 622 (S.D.N.Y. 1961) (emphasis added). Thus, "[a]n amended complaint supersedes the original complaint <u>and renders it of no legal effect</u> unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord, e.g.*, *Chem. Bank v. Affiliated FM Ins. Co.*, No. 87 Civ. 0150 (VLB), 1994 WL 719681, at *11 (S.D.N.Y. Dec. 28, 1994) ("As a general rule, the amended complaint then supersedes and replaces the original complaint."), *aff'd*, No. 87 Civ. 0150 (SHS), 1996 WL 445362 (S.D.N.Y.

---

[7] In any event, Rule 11(a) merely involves the formal filing requirements of pleadings and other papers, such as the inclusion of signatures and addresses. Rule 11's reference to affidavits in the section merely "eliminated any requirement that the pleadings be verified" in the absence of a specific verification requirement. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1331 (3d ed. 2004). The section has nothing to do with whether an affidavit may be required for some other reason, such as to justify extraordinary relief, of the type sought by Petitioner.

Aug. 7, 1996). Because the Amended Petition is a freestanding pleading that replaces and supersedes the prior pleading and all its exhibits, that Original Petition, including the Jackson-Dixon Affidavit, are of no continuing legal effect, and this would not have been relied on by Judge Friedman when, a year later, he issued the August 22, 2006 Order to Show Cause regarding the Amended Petition.

Even if the Amended Petition had brought the Jackson-Dixon Affidavit to Judge Friedman's attention, her year-old testimony would have been irrelevant to the issues raised by the Amended Petition.[8] By the Inspector General's own admission, the Jackson-Dixon Affidavit merely asserts (in mostly conclusory terms) that, <u>as of September 2005</u>, "(1) the investigation [was then being] conducted pursuant to a legitimate purpose . . ., (2) that the [demands made in the <u>Original</u> Petition were] relevant to the purpose . . . and (3) that the records [then being] sought had not been produced in a usable form." Opp. 6. Even if these entirely conclusory allegations had established a *prima facie* case in support of the Original Petition filed in September 2005 (which they certainly did not), the Jackson-Dixon Affidavit is essentially irrelevant to the Amended Petition filed a year later:

- Subsequent to the filing of the Original Petition and the Jackson-Dixon Affidavit, in Petitioner's words, "important issues" were resolved[9] and "additional issues" arose, including "1) Respondents' apparent failure to take reasonable and necessary

---

[8] Petitioner is critical of Respondents' December 14, 2006 opening brief because it "did not address either the contents of or claimed deficiencies of the Jackson-Dixon Affidavit." Opp. 7. Respondents, however, did identify the general deficiencies for Amended Petition purposes of all the affidavits submitted in support of the Original Petition. According to our opening brief, Petitioner's September 2005 affidavits are "almost entirely irrelevant to the six demands for relief found in the Amended Petition, none of which are contained in the Original Petition." Mem. 8 n.3. In typical fashion, despite criticizing Respondents for not proving a negative, the Inspector General's opposition brief does not identify a single Amended Petition demand for relief that is found in the Jackson-Dixon Affidavit.

[9] At the December 12, 2006 status conference, Mr. Sadoff conceded that subsequent to the Original Petition, "there was a concerted effort made to resolve quite a number of issues. There were electronic search terms that were agreed to, there were searches that were conducted and there were some issues that were resolved." 12/12/06 H. Tr. at 11-12. Indeed, after the Original Petition was filed, Respondents produced a number of witnesses for voluntary interviews, studies, reports and an additional 300,000 pages of records. Amended Pet. Resp. ¶ 52.

> measures to preserve and protect responsive electronic documents prior to May 30 . . . and, 2) the adequacy of the [sic] Bombardier's and NeCMSC's search for, retrieval and production of responsive documents." Amended Pet. ¶ 20;

- Indeed, none of the Amended Petition's six demands for relief are found anywhere in the Original Petition;[10]

- Even if the Jackson-Dixon Affidavit had adequately alleged that the investigation was being conducted "pursuant to a legitimate purpose in 2005," that year-old allegation cannot possibly establish adequate basis for different demands made a year later;

- With regard to what Petitioner now describes as the Jackson-Dixon Affidavit's claim that previously produced records were not received in "a usable form," (Opp. 6), Special Agent Jackson-Dixon alleged that in September 2005, "[i]n order to review [a] particular document, I had to open over 165 document folders." Original Pet. Ex. 8, ¶ 11(a). Because Respondents' October 2005 Response to the Original Petition refuted the Jackson-Dixon "multi-folder" document and claim (the Inspector General's staff was using the wrong program), the Amended Petition makes no reference to this issue. *See* Original Pet. Resp. 16-17; Drury Dec. ¶¶ 2-6; Hansen Dec. ¶ 3; and

- Aside from her silent attendance at one or two meetings, Special Agent Jackson-Dixon was not a participant in any of the events at issue in the Amended Petition and thus could not properly provide evidence, even if she had attempted to do so, regarding those issues.

*Fifth*, Petitioner argues that Respondents' Response to the Amended Petition "concedes" a number of "instances of non-compliance." Opp. 7. Once again, the Inspector General's citations do not support his claims:

- Respondents, of course, have never conceded that the subpoenas required, or the Inspector General is entitled to, the production of electronic documents in their "native format" (*see* Amended Pet. Resp. ¶¶ 156, 157) and, contrary to Petitioner's claim, have indeed "provided spreadsheets in their native format." *Compare* Opp. 7 *with* Amended Pet. Resp. ¶¶ 77, 162 & 164; Resp. Exs. 98, 104, 108, 110, 119.

---

[10] The Amended Petition demands (1) re-submission of all Respondents' electronic records in their "native format" so that their "authenticity" can be tested (Amended Pet. ¶¶ 21, 23); (2) still another "report" on NeCMSC's loss of server data on Memorial Day 2005 (*id.* ¶ 32); (3) a privilege log for records relating to a May 2006 subpoena served (without prior notice to NeCMSC's counsel) on a consultant to one of NeCMSC's law firms (*id.* ¶ 37(b)); (4) submission of certain NeCMSC server backup tapes to an expert retained by the Inspector General (*id.* ¶¶ 37(c) & (d)); (5) a description of "lost records" (*id.* ¶ 38); and (6) a "certificate of compliance." *Id.* ¶ 39.

- The "Index to Bombardier's Productions" ("Ex. C" to Resp. Ex. 130) cited by the Inspector General does not show that "prior to October 2005, Bombardier produced in a non-searchable, non native format more than 167,000 pages of emails". Opp. 8. That index instead demonstrates that prior to October 2005, Bombardier <u>did</u> <u>not</u> produce <u>any</u> "non-native format" emails." *Compare* Opp. at 8 *with* Resp. Ex. 130, Ex. C at 1-2.

- It is not true, as Petitioner now claims, that "Items 3-5" on page 2 of the "Index to NeCMSC's Productions" (Ex. C to Resp. Ex. 131) reveal that "NeCMSC produced, in a non-searchable, not native format more than 310,000 pages of documents created as searchable electronic documents." Opp. 8. "Items 3-5" of that index refer to "NeCMSC server-based" Daily Inspection Reports ("DIRs"), which, as Respondents have repeatedly explained to Mr. Sadoff (including most recently on December 12, 2006), <u>were</u> <u>produced</u> in their "native" TIFF format. As long ago as October 2005, Respondents provided the Inspector General with affidavits confirming that in their "native" form, DIRs are either paper records or TIFF images. Douglas Dec. ¶ 25; Hebert Dec. ¶ 2(c). Thus, as Petitioner has known for well over a year, NeCMSC's production of any electronic DIR records was indeed in their <u>native TIFF format</u>.

- It is also not true that Respondents "concede" that NeCMSC's Fall 2005 use of two server drives was an "instance[] of noncompliance with the Subpoenas." Opp. 7-8. Rather than any concession, the Response paragraphs cited by Petitioner state that "there was <u>nothing improper</u> about NeCMSC's use of the Memorial Day server drives in the ordinary course of its business," because, as previously confirmed by outside data retrieval experts, there was <u>no recoverable data</u> on those drives. Amended Pet. Resp. ¶¶ 112-114.

- Nor is it correct that Respondents "concede" that "they have not provided a description of 'lost' documents." Opp. 8. As is generally the case with the Inspector General's use of citations, the portion of the Response supposedly containing this concession states quite the opposite: "NeCMSC and Bombardier, in good faith, informed Petitioner of any known incident involving the loss of potentially responsive records." Amended Pet. Resp. ¶ 153. *Accord id. ¶* 155 ("both NeCMSC and Bombardier have already provided the Inspector General with notice of, and information regarding, any significant loss of potentially responsive files").

In short, Petitioner has no meritorious answer to Respondents' showing that the Amended Petition should be dismissed with prejudice because Petitioner has declined to file either the required supporting affidavit or even provide evidence at any hearing on the merits. *See* Petitioner's Sch. Motion at 7; 12/12/06 H. Tr. at 9-10.

**B.     The Amended Petition Does Not Allege that Its Demands
         are Relevant to a Specified Investigative Purpose**

Respondents' opening brief demonstrated that the Amended Petition should also be denied because Petitioner has failed to allege with particularity that any of his six demands are relevant to a legitimate and continuing investigative purpose. Mem. 9-11. Respondents showed, and the Inspector General does not dispute, that subpoena enforcement proceedings turn on whether enforcement is reasonable under the totality of the circumstances, *see, e.g.*, *Dow Chem. Co. v. Allen*, 672 F.2d 1262, 1267 (7th Cir. 1982), and that this analysis requires a balancing, under which "this court must weigh against <u>the relevance of the requested material</u> the burden that would be placed on [the subpoena recipient] in producing it," *In re Admin. Subpoena*, 253 F.3d 256, 268 (6th Cir. 2001). Because Petitioner has not articulated the specific investigatory need underlying any of his six current requests, he is not, as a matter of law, entitled to enforcement.

Petitioner ignored this fundamental requirement in his reply in support of the Amended Petition. And he ignores it again in his opposition to this motion. While the opposition continues to make conclusory assertions that Petitioner has "a legitimate purpose" for his investigation (Opp. 3), the Inspector General once again offers <u>no</u> explanation how the six particular categories of materials he requests are likely to further any such purportedly "legitimate purpose." Because this argument remains entirely unaddressed despite having been raised by Respondents both in their opposition to the Amended Petition and in this motion, the Amended Petition should be denied on this ground.

Not only are the bases for Petitioner's requests wholly absent from Petitioner's pleadings, to the extent his staff has offered any informal justifications, these continually change over time. For example, the Amended Petition's demand that all electronic records be re-submitted in their

-11-

"native format" is necessary to "authenticate" the documents. Mem. 10; Amended Pet. ¶¶ 21, 23. On December 12, 2006, therefore, Respondents offered to permit Petitioner's staff to authenticate up to fifty records of their choosing by reviewing them in their "native" paper or electronic formats. *Id.* This offer was rejected on the ground that Petitioner now wants to conduct full-text searches of electronic records.

Because Petitioner offers no response to Respondents' demonstration that he has failed to make the requisite particularized showing of his grounds for his requests, and because his continuing conduct demonstrates the impossibility of making the required reasonableness assessment in the absence of such a particularized showing, the Amended Petition should be denied.

C.    **Petitioner's Native Format Argument Was Untimely Filed**

Respondents have demonstrated that Petitioner's demand for re-submission of electronic documents in their "native format" was not timely made because Petitioner's "native format" argument was made in an "Insert" filed after the Court-imposed August 8, 2006 deadline, without leave or even any comprehensible explanation. Mem. 11-12. In addition, contrary to the requirements of Local Civil Rule 7(c), the Inspector General's proposed order to show cause was not filed until August 11, 2006. Amended Pet. Resp. ¶ 17; Dkt. 11.

This is but one instance of the Inspector General's continuing disregard of the rules and procedures of this Court. In addition to filing his unauthorized "Insert" and proposed order, Petitioner (a) without prior notice to Respondents, secured (again without any supporting affidavit), an *ex parte* document preservation order, which this Court had to subsequently modify (Amended Pet. Resp. ¶ 17); (b) without leave of Court filed an over length "Reply" to the Amended Petition Response (Reply 4 n.5); (c) filed an unauthorized reply in the companion *Knorr* proceeding (Civil No. 1:06-ms-30423) (12/12/06 H. Tr. at 37-38); and (c) simultaneously

with the expiration deadline for his opposition to Respondents' consolidation motion (Dkt. 53), filed a motion for more time to submit that pleading.[11]

With regard to the Inspector General's unauthorized filing of his "Insert", his only justification is an unsupported assertion that Respondents "raise[] form over substance." Opp. 9. But it is Petitioner who has no "substan[tive]" argument, because, having already given two unsworn, inconsistent explanations for failing to file a timely "native format" argument, his current opposition offers yet a third, which is just as confusing and inconsistent as the others. Petitioner now says that, for unspecified reasons, he was "unable to include" the "native format" argument "[w]hen [he] was assembling [his] Amended Petition and other filings on August 8." Opp. 9. Further, he asserts that he "re-constructed the missing argument," suggesting (but not stating expressly) that it had already been completed by the initial due date but for some unstated reason became impossible to "include" in the filing. The one (and only) thing that is clear after all these explanations is that Petitioner has consistently refrained from making any claim that his failure to file the "native format" argument on time was due to any articulable, excusable reason that could not have been avoided with due care.

Petitioner's "native format" request is thus untimely. That request should be denied for this additional reason.

---

[11] Despite Petitioner's persistent failure to meet deadlines, he has declined each and every one of Respondents' timely requests for an extension of time in which to file their papers. E.g. Dkt. 19. The Inspector General, moreover, has made other inconsistent representations to this Court. *Compare* 11/20/06 Motion to Schedule hearing on Petition at 2 n.1 (Dkt. 44) ("Consolidating the Bombardier Enforcement Action and the Knorr Enforcement Action will promote judicial economy") *with* Petitioner's Opposition to Respondents' Motion to Consolidate at 2 ("consolidation would not be appropriate"). Although purportedly served on January 3, 2007, the Court's docket does not presently indicate that the Inspector General's Opposition to the Consolidation Motion was filed that day as this Court's January 3, 2007 order required.

## **CONCLUSION**

For the foregoing reasons, and those in Respondents' opening brief, Respondents respectfully request that the Amended Petition be dismissed with prejudice.

Dated: January 8, 2007

Respectfully submitted,

| JONES DAY | WINSTON & STRAWN LLP |
|---|---|
| By: */s/* Philip Le B. Douglas<br>Philip Le B. Douglas (# 311944)<br>Attorneys for Bombardier Inc. and<br>Northeast Corridor Maintenance<br>Services Company<br>222 East 41st Street<br>New York, New York 10017-6702<br>(212) 326-3939 | By: */s/* Timothy M. Broas<br>Timothy M. Broas (# 391145)<br>Attorneys for Northeast Corridor Maintenance<br>Services Company<br>1700 K Street, N.W.<br>Washington, D.C. 20036-3817<br>(202) 282-5000 |
| Of counsel:<br>Michael S. Fried, Esq. | Of counsel:<br>Franklin R. Parker, Esq. |